IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 04-1244GAO

| | |
|---|---|
| GMAC MORTGAGE CORPORATION,<br>  Plaintiff, | )<br>)<br>) |
| vs. | )<br>) |
| JEFFREY L. BAYKO, SR., LISA J.<br>BAYKO, HELEN E. BAYKO,<br>MICHAEL J. BAYKO, BANKNORTH<br>GROUP, HANS R. HAILEY, CHARLES<br>D. ROTONDI, COMMONWEALTH OF<br>MASSACHUSETTS DEPARTMENT<br>OF REVENUE, THE UNITED STATES<br>OF AMERICA, GARY EVANS,<br>CHRISTINE ANN FARO, AND JOHN<br>AQUINO,<br>  Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**BANKNORTH, N.A.'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

## I.  STATEMENT OF FACTS

This Memorandum, together with the Exhibits and Affidavit referred to herein, is respectfully submitted in support of Defendant, Banknorth, N.A.'s, ("Banknorth"), Motion for Summary Judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure. Banknorth requests entry of an Order granting summary judgment in its favor on its claim to the surplus funds held by Plaintiff, GMAC. Banknorth's claim is in the amount of $16,156.25 as of the date of the foreclosure of the Plaintiff's Mortgage.

The undisputed facts and law, as demonstrated herein, establish that Defendant, Banknorth, has priority, pursuant to I.R.C. §6323 and G.L. c. 62C, §50(a), over all claimants to the interpleaded funds by virtue of a Mortgage dated April 24, 1997 as recorded in the Essex

248501-1

County Registry of Deeds in Book 14068, Page 475 from Defendants, Jeffrey L. Bayko, Sr., Lisa J. Bayko (A copy of the Mortgage is attached hereto and incorporated by reference herein as Exhibit A).

The junior lienholders are:

a. The Defendants, Michael J. Bayko and Helen E. Bayko, are the holders of a third Mortgage dated July 19, 2002, and recorded August 12, 2002 in the Essex County Registry of Deeds at Book 21193, Page 386 in the original principal balance of $6,3000.00. (See Exhibit B).

b. The Defendant, Hans R. Hailey, is the holder of an Attorney's Lien dated February 6, 2002 and recorded February 10, 2003 in the Essex County Registry of Deeds at Book 20139, Page 71. (See Exhibit C).

c. The Defendant, Charles D. Rotondi, is the holder of an Attorney's Lien dated February 11, 2003 and recorded March 20, 2003 in the Essex County Registry of Deeds at Book 20391, Page 444. (See Exhibit D).

d. The Defendant, Commonwealth of Massachusetts Department of Revenue, is the holder of a state tax lien dated and recorded on April 4, 2003 in the Essex County Registry of Deeds at Book 20521, Page 207 in the original amount of $8,463.64. (See Exhibit E).

e. The Defendant, The United States of America, is the holder of a federal tax lien dated May 1, 2003 and recorded on June 3, 2003 in the Essex County Registry of Deeds at Book 20949, Page 90 in the original amount of $47,196.80. (See Exhibit F).

 f. Upon information and belief, the Defendant, Gary Evans, is supposed to receive $66,000.00 to be held in escrow pursuant to the terms of a Separation Agreement dated and recorded May 24, 2002 in the Essex County Registry of Deeds at Book 21764, Page 59. (See Exhibit G).

 g. The Defendant, Christine Ann Faro, is the holder of an Attorney's Lien dated and recorded October 2, 2003 in the Essex County Registry of Deeds at Book 21911, Page 222. (See Exhibit H).

 h. Upon information and belief, the Defendant, John Aquino is a Chapter 7 Trustee who has abandoned his interest in the real estate.

The undisputed facts establish that the aforementioned liens are junior to Banknorth's second Mortgage. The undisputed facts also establish that the interpleaded funds held by Plaintiff, GMAC, are excess proceeds from the foreclosure of a first Mortgage given by Defendants, Jeffrey L. Bayko, Sr. and Lisa J. Bayko, to GMAC.

## II. LAW AND ARGUMENT

### A. SUMMARY JUDGMENT SHOULD BE GRANTED IN FAVOR OF BANKNORTH, IN THIS ACTION, SINCE THERE EXISTS NO GENUINE ISSUE OF MATERIAL FACT AND JUDGMENT SHOULD BE ENTERED FOR BANKNORTH AS A MATTER OF LAW.

The First Circuit Court of Appeals has noted that "[t]he purpose of summary judgment is to go behind the pleadings and determine whether any further exploration of facts is really necessary." Packish v. McMurtie, 697 F.2d 23, 27 (1st. Cir. 1983). In the seminal decision of Celotex Corp. v. Catrett, 477 U.S. 317 (1986), the Supreme Court held that summary judgment would be granted against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof

at trial. Celotex, 477 U.S. at 324. See also, Kourouvacilis v. General Motors Corp., 410 Mass. 706, 711-712 (1991)(Supreme Judicial Court of Massachusetts adopts Celotex standard).

To survive a motion for summary judgment, the opposing party must demonstrate that there is a genuine issue of material fact requiring a trial. Fed. R. Civ. P. 56(c); Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 585-586 (1986). In Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986), the Supreme Court held that the standard for summary judgment "mirrors the standard for directed verdict under the Federal Rule of Civil Procedure 59(a)." Id. at 250. That is, "the inquiry under each is the same: whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251-52; accord Aponte-Santiago v. Lopez-Rivera, 957 F.2d 40, 41 (1st Cir. 1992). In deciding whether a genuine issue of material fact exists under Rule 56, the Court held that:

> [t]he mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]. Id.

In other words, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 citing First Nat. Bank of Ariz. v. Cities Service Co., 391 U.S. 253, 289 (1968).

Consequently, to avoid summary judgment, the opposing party "must produce at least some evidence reasonably affording an inference supporting the existence of a triable issue of fact [with respect to the element which the opposing party must establish at trial]." Santiago v. Group Brasil, Inc. 830 F.2d 413, 416 (1st Cir. 1987)(emphasis added). In the case at hand, there are no "genuine issues" for trial in regards to Banknorth's priority claim to the surplus funds. As

there are no issues as to any material facts, summary judgment should be granted to Banknorth as a matter of law.

**B.    BANKNORTH, AS HOLDER OF SECOND MORTGAGE RECORDED APRIL 24, 1997 HAS A PRIORITY POSITION OVER ALL OTHER DEFENDANTS**

The courts have long held that liens and other interests terminated by foreclosure attach to the surplus in order of the priority they held prior to the foreclosure. In 1995, Appeals Court for Massachusetts, Essex County, held in <u>First Colonial Bank for Savings v. Robert H. Bergeron and Ford Consumer Finance Company, Inc.</u>, 38 Mass. App. Ct. 136 (1995) that "... junior mortgagee had equitable lien on surplus proceeds and was entitled to enforce its equitable lien." Once the first Mortgagee foreclosed, GMAC, it became the trustee of the surplus funds for the benefit of the junior Mortgagees. Those remaining liens are satisfied by order of priority. (<u>Id</u> at 138, "liens and other interests terminated by foreclosure attach to the surplus in order of priority they enjoyed prior to the foreclosure.") In the present case, Banknorth has established that it is the priority lienholder, and thus entitled to be paid first out of the surplus funds being held by the Plaintiff. As evident by Exhibits 1-F, it is clear that Banknorth is a priority lien holder.

**B.    BANKNORTH, AS HOLDER OF SECOND MORTGAGE RECORDED APRIL 24, 1997 HAS A PRIORITY POSITION OVER FEDERAL AND STATE TAX LIENS**

Under the rule of <u>United States v. Britain</u>, 347 US 81,98 Led 520, 74 S Ct 367 (1954), priority among the lien holder here should be determined by the "first in time is the first in right". When applying this rule to the present situation, the Banknorth mortgage takes priority over the federal tax liens as it occurred first in time. <u>United States of America v. Rahar's Inn, Inc</u>, 243 F.Supp. 459, 460 (1965). As to the liens of Defendants Commonwealth of Massachusetts Department of Revenue and The United States of America, Banknorth's bona fide mortgage liens for an amount advanced prior to the recording of notice of federal tax liens gives

Banknorth priority. Therefore, as there is no dispute as to any material fact, Summary Judgment should be granted to Banknorth as a matter of law.

## REQUEST FOR ORAL ARGUMENT

Banknorth respectfully requests a hearing on its Motion for Summary Judgment.

## CONCLUSION

THEREFORE, Defendant, Banknorth requests;

1. That the Plaintiff be allowed to deposit surplus funds into the Court.

2. That it be paid $16,156.25 (the amount it was owed on the date of the foreclosure) from the proceeds being held by the Plaintiff, GMAC.

3. That it be paid it's costs and legal fees, pursuant to the terms of the subject mortgage, for defending this interpleader action, reasonably anticipated to be in the amount of $3,500.00

4. For such other relief as the Court deems just and appropriate.

                                              Respectfully submitted,
                                              **BANKNORTH, N.A.**,
                                              By its attorney,

Dated: November __, 2004               _____
                                              Michele A. Rooke
                                              Doherty, Wallace, Pillsbury and Murphy, P.C.
                                              1414 Main Street, Suite 1900
                                              Springfield, MA 01144-1900
                                              Tel: (413) 733-3111
                                              Fax: (413) 734-3910
                                              BBO No.: 643632

## CERTIFICATE OF SERVICE

I, Michele A. Rooke, hereby certify that I served a copy of the foregoing document on the parties to the case by mailing a copy of the same postage prepaid to:

| | |
|---|---|
| David M. Rosen, Esquire<br>Harmon Law Offices, P.C.<br>P.O. Box 610389<br>Newton Highlands, MA 02461-0389 | Commonwealth of Massachusetts<br>Department of Revenue<br>Collections Bureau<br>P.O. Box 7021<br>Boston, MA 02204 |
| Jeffrey L. Bayko, Sr.<br>c/o Attorney Gary Evans<br>58 Main Street<br>Topsfield, MA 01983 | The United States of America<br>Internal Revenue Services<br>P.O. Box 9112<br>Stop 20800<br>Boston, MA 02203 |
| Lisa J. Bayko<br>c/o Attorney Charles D. Rotondi<br>79 State Street<br>Newburyport, MA 01950 | Gary Evans<br>58 Main Street<br>Topsfield, MA 01983 |
| Helen E. Bayko<br>c/o Attorney Timothy Sullivan<br>451 Andover Street, Suite 185<br>North Andover, MA 01845 | Christine Ann Faro<br>79 State Street<br>Newburyport, MA 01950 |
| Michael J. Bayko<br>c/o Attorney Timothy Sullivan<br>451 Andover Street, Suite 185<br>North Andover, MA 01845 | John Aquino<br>Anderson & Aquino, LLP<br>260 Franklin Street<br>Boston, MA 02110 |
| Hans R. Hailey<br>225 Friend Street<br>Boston, MA 02114 | Attorney Charles D. Rotondi<br>79 State Street<br>Newburyport, MA 01950 |

Dated: November ___, 2004              _____
                                       Michele A. Rooke

DEFENDANT'S EXHIBIT A

**RECORDATION REQUESTED BY:**

Family Bank, FSB
153 Merrimack Street
Haverhill, MA 01830

**WHEN RECORDED MAIL TO:**

Family Bank, FSB
PO Box 1377
Lewiston, ME 04243-1377

04/24/97 9:09 inst. 106
BK 14068 PG 47

SPACE ABOVE THIS LINE IS FOR RECORDER'S USE O

# MORTGAGE

THIS MORTGAGE IS DATED APRIL 18, 1997, between Lisa J. Bayko and Jeffrey L. Bayko, whose address is Graham Avenue, Newbury, MA 01951 (referred to below as "Grantor"); and Family Bank, FSB, whose addr is 153 Merrimack Street, Haverhill, MA 01830 (referred to below as "Lender").

**GRANT OF MORTGAGE.** For valuable consideration, Grantor grants to Lender with MORTGAGE COVENANTS all of Grantor's right, title, interest in and to the following described real property, together with all existing or subsequently erected or affixed buildings, improvements fixtures; all easements, rights of way, and appurtenances; all water, water rights, watercourses and ditch rights (including stock in utilities with ditc irrigation rights); and all other rights, royalties, and profits relating to the real property, including without limitation all minerals, oil, gas, geothermal similar matters, **located in Essex County, Commonwealth of Massachusetts (the "Real Property"):**

**SEE EXHIBIT "A"**

The Real Property or its address is commonly known as 7A Graham Avenue, Newbury, MA 01951.

Grantor presently assigns to Lender all of Grantor's right, title, and interest in and to all leases of the Property and all Rents from the Property. addition, Grantor grants to Lender a Uniform Commercial Code security interest in the Personal Property and Rents.

**DEFINITIONS.** The following words shall have the following meanings when used in this Mortgage. Terms not otherwise defined in this Mortgage s have the meanings attributed to such terms in the Uniform Commercial Code. All references to dollar amounts shall mean amounts in lawful mone the United States of America.

**Credit Agreement.** The words "Credit Agreement" mean the revolving line of credit agreement dated April 18, 1997, between Lender and Gra. **with a maximum principal credit limit of $15,000.00.** The maturity date of this Mortgage is May 6, 2017. The credit agreemer an open-end credit plan as defined in Massachusetts General Laws, Chapter 140D, Section 1.

**Existing Indebtedness.** The words "Existing Indebtedness" mean the indebtedness described below in the Existing Indebtedness section of Mortgage.

**Grantor.** The word "Grantor" means Lisa J. Bayko and Jeffrey L. Bayko. The Grantor is the mortgagor under this Mortgage.

**Guarantor.** The word "Guarantor" means and includes without limitation each and all of the guarantors, sureties, and accommodation partie connection with the Indebtedness.

**Improvements.** The word "Improvements" means and includes without limitation all existing and future improvements, buildings, structu mobile homes affixed on the Real Property, facilities, additions, replacements and other construction on the Real Property.

**Indebtedness.** The word "Indebtedness" means all principal and interest payable under the Credit Agreement and any amounts expended advanced by Lender to discharge obligations of Grantor or expenses incurred by Lender to enforce obligations of Grantor under this Mortga together with interest on such amounts as provided in this Mortgage. Specifically, without limitation, this Mortgage secures a revolving l of credit, which obligates Lender to make advances to Grantor so long as Grantor complies with all the terms of the Credit Agreeme The maximum amount of the line of credit which may be secured at any one time is $15,000.00.

**Lender.** The word "Lender" means Family Bank, FSB, its successors and assigns. The Lender is the mortgagee under this Mortgage.

**Mortgage.** The word "Mortgage" means this Mortgage between Grantor and Lender, and includes without limitation all assignments and secu interest provisions relating to the Personal Property and Rents.

**Personal Property.** The words "Personal Property" mean all equipment, fixtures, and other articles of personal property now or hereafter owr by Grantor, and now or hereafter attached or affixed to the Real Property; together with all accessions, parts, and additions to, all replacements and all substitutions for, any of such property; and together with all proceeds (including without limitation all insurance proceeds and refunds premiums) from any sale or other disposition of the Property.

**Property.** The word "Property" means collectively the Real Property and the Personal Property.

**Real Property.** The words "Real Property" mean the property, interests and rights described above in the "Grant of Mortgage" section.

**Related Documents.** The words "Related Documents" mean and include without limitation all promissory notes, credit agreements, lo agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, and all other instruments, agreements a documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**Rents.** The word "Rents" means all present and future rents, revenues, income, issues, royalties, profits, and other benefits derived from t Property.

**THIS MORTGAGE, INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY INTEREST IN THE RENTS AND PERSONAL PROPERTY, GIVEN TO SECURE (1) PAYMENT OF THE INDEBTEDNESS AND (2) PERFORMANCE OF ALL OBLIGATIONS OF GRANTOR UNDER TH MORTGAGE AND THE RELATED DOCUMENTS. THIS MORTGAGE IS GIVEN AND ACCEPTED ON THE FOLLOWING TERMS:**

**PAYMENT AND PERFORMANCE.** Except as otherwise provided in this Mortgage, Grantor shall pay to Lender all amounts secured by this Mortga as they become due, and shall strictly perform all of Grantor's obligations under this Mortga

**RECORDATION REQUESTED BY:**
Family Bank, FSB
153 Merrimack Street
Haverhill, MA 01830

**WHEN RECORDED MAIL TO:**
Family Bank, FSB
PO Box 1377
Lewiston, ME 04243-1377

SPACE ABOVE THIS LINE IS FOR RECORDER'S USE ONLY

## MORTGAGE

THIS MORTGAGE IS DATED APRIL 18, 1997, between Lisa J. Bayko and Jeffrey L. Bayko, whose address is 7A Graham Avenue, Newbury, MA 01951 (referred to below as "Grantor"); and Family Bank, FSB, whose address is 153 Merrimack Street, Haverhill, MA 01830 (referred to below as "Lender").

**GRANT OF MORTGAGE.** For valuable consideration, Grantor grants to Lender with MORTGAGE COVENANTS all of Grantor's right, title, and interest in and to the following described real property, together with all existing or subsequently erected or affixed buildings, improvements and fixtures; all easements, rights of way, and appurtenances; all water, water rights, watercourses and ditch rights (including stock in utilities with ditch or irrigation rights); and all other rights, royalties, and profits relating to the real property, including without limitation all minerals, oil, gas, geothermal and similar matters, located in **Essex County, Commonwealth of Massachusetts** (the "Real Property"):

**SEE EXHIBIT "A"**

The Real Property or its address is commonly known as 7A Graham Avenue, Newbury, MA 01951.

Grantor presently assigns to Lender all of Grantor's right, title, and interest in and to all leases of the Property and all Rents from the Property. In addition, Grantor grants to Lender a Uniform Commercial Code security interest in the Personal Property and Rents.

**DEFINITIONS.** The following words shall have the following meanings when used in this Mortgage. Terms not otherwise defined in this Mortgage shall have the meanings attributed to such terms in the Uniform Commercial Code. All references to dollar amounts shall mean amounts in lawful money of the United States of America.

  **Credit Agreement.** The words "Credit Agreement" mean the revolving line of credit agreement dated April 18, 1997, between Lender and Grantor with a **maximum principal credit limit of $15,000.00**. The maturity date of this Mortgage is May 6, 2017. The credit agreement is an open-end credit plan as defined in Massachusetts General Laws, Chapter 140D, Section 1.

  **Existing Indebtedness.** The words "Existing Indebtedness" mean the indebtedness described below in the Existing Indebtedness section of this Mortgage.

  **Grantor.** The word "Grantor" means Lisa J. Bayko and Jeffrey L. Bayko. The Grantor is the mortgagor under this Mortgage.

  **Guarantor.** The word "Guarantor" means and includes without limitation each and all of the guarantors, sureties, and accommodation parties in connection with the Indebtedness.

  **Improvements.** The word "Improvements" means and includes without limitation all existing and future improvements, buildings, structures, mobile homes affixed on the Real Property, facilities, additions, replacements and other construction on the Real Property.

  **Indebtedness.** The word "Indebtedness" means all principal and interest payable under the Credit Agreement and any amounts expended or advanced by Lender to discharge obligations of Grantor or expenses incurred by Lender to enforce obligations of Grantor under this Mortgage, together with interest on such amounts as provided in this Mortgage. **Specifically, without limitation, this Mortgage secures a revolving line of credit, which obligates Lender to make advances to Grantor so long as Grantor complies with all the terms of the Credit Agreement. The maximum amount of the line of credit which may be secured at any one time is $15,000.00.**

  **Lender.** The word "Lender" means Family Bank, FSB, its successors and assigns. The Lender is the mortgagee under this Mortgage.

  **Mortgage.** The word "Mortgage" means this Mortgage between Grantor and Lender, and includes without limitation all assignments and security interest provisions relating to the Personal Property and Rents.

  **Personal Property.** The words "Personal Property" mean all equipment, fixtures, and other articles of personal property now or hereafter owned by Grantor, and now or hereafter attached or affixed to the Real Property; together with all accessions, parts, and additions to, all replacements of, and all substitutions for, any of such property; and together with all proceeds (including without limitation all insurance proceeds and refunds of premiums) from any sale or other disposition of the Property.

  **Property.** The word "Property" means collectively the Real Property and the Personal Property.

  **Real Property.** The words "Real Property" mean the property, interests and rights described above in the "Grant of Mortgage" section.

  **Related Documents.** The words "Related Documents" mean and include without limitation all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

  **Rents.** The word "Rents" means all present and future rents, revenues, income, issues, royalties, profits, and other benefits derived from the Property.

THIS MORTGAGE, INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY INTEREST IN THE RENTS AND PERSONAL PROPERTY, IS GIVEN TO SECURE (1) PAYMENT OF THE INDEBTEDNESS AND (2) PERFORMANCE OF ALL OBLIGATIONS OF GRANTOR UNDER THIS MORTGAGE AND THE RELATED DOCUMENTS. THIS MORTGAGE IS GIVEN AND ACCEPTED ON THE FOLLOWING TERMS:

**PAYMENT AND PERFORMANCE.** Except as otherwise provided in this Mortgage, Grantor shall pay to Lender all amounts secured by this Mortgage as they become due, and shall strictly perform all of Grantor's obligations under this Mortgage.

**POSSESSION AND MAINTENANCE OF THE PROPERTY.** Grantor agrees that Grantor's possession and use of the Property shall be governed by the following provisions:

  **Possession and Use.** Until in default, Grantor may remain in possession and control of and operate and manage the Property and collect the Rents from the Property.

  **Duty to Maintain.** Grantor shall maintain the Property in tenantable condition and promptly perform all repairs, replacements, and maintenance necessary to preserve its value.

  **Hazardous Substances.** The terms "hazardous waste," "hazardous substance," "disposal," "release," and "threatened release," as used in this Mortgage, shall have the same meanings as set forth in the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., or other applicable state or Federal laws, rules, or regulations adopted pursuant to any of the foregoing. The terms "hazardous waste" and "hazardous substance" shall also include, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos. Grantor represents and warrants to Lender that: (a) During the period of Grantor's ownership of the Property, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any hazardous waste or substance by any person on, under, about or from the Property; (b) Grantor has no knowledge of, or reason to believe that there has been, except as previously disclosed to and acknowledged by Lender in writing, (i) any use, generation, manufacture, storage, treatment, disposal, release, or threatened release of any hazardous waste or substance on, under, about or from the Property by any prior owners or occupants of the Property or (ii) any actual or threatened litigation or claims of any kind by any person relating to such matters; and (c) Except as previously disclosed to and acknowledged by Lender in writing, (i) neither Grantor nor any tenant, contractor, agent or other authorized user of the Property shall use, generate, manufacture, store, treat, dispose of, or release any hazardous waste or substance on, under, about or from the Property and (ii) any such activity shall be conducted in compliance with all applicable federal, state, and local laws, regulations and ordinances, including without limitation those laws,

regulations, and ordinances described above. Grantor authorizes Lender and its agents to enter upon the Property to make such inspections and tests, at Grantor's expense, as Lender may deem appropriate to determine compliance of the Property with this section of the Mortgage. In addition, Grantor represents and warrants that the Property does not contain urea formaldehyde foam insulation or urea formaldehyde resin in violation of any Massachusetts state laws. Any inspections or tests made by Lender shall be for Lender's purposes only and shall not be construed to create any responsibility or liability on the part of Lender to Grantor or to any other person. The representations and warranties contained herein are based on Grantor's due diligence in investigating the Property for hazardous waste and hazardous substances. Grantor hereby (a) releases and waives any future claims against Lender for indemnity or contribution in the event Grantor becomes liable for cleanup or other costs under any such laws, and (b) agrees to indemnify and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Mortgage or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release occurring prior to Grantor's ownership or interest in the Property, whether or not the same was or should have been known to Grantor. The provisions of this section of the Mortgage, including the obligation to indemnify, shall survive the payment of the Indebtedness and the satisfaction and reconveyance of the lien of this Mortgage and shall not be affected by Lender's acquisition of any interest in the Property, whether by foreclosure or otherwise.

**Nuisance, Waste.** Grantor shall not cause, conduct or permit any nuisance nor commit, permit, or suffer any stripping of or waste on or to the Property or any portion of the Property. Without limiting the generality of the foregoing, Grantor will not remove, or grant to any other party the right to remove, any timber, minerals (including oil and gas), soil, gravel or rock products without the prior written consent of Lender.

**Removal of Improvements.** Grantor shall not demolish or remove any Improvements from the Real Property without the prior written consent of Lender. As a condition to the removal of any Improvements, Lender may require Grantor to make arrangements satisfactory to Lender to replace such Improvements with Improvements of at least equal value.

**Lender's Right to Enter.** Lender and its agents and representatives may enter upon the Real Property at all reasonable times to attend to Lender's interests and to inspect the Property for purposes of Grantor's compliance with the terms and conditions of this Mortgage.

**Compliance with Governmental Requirements.** Grantor shall promptly comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the use or occupancy of the Property. Grantor may contest in good faith any such law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Grantor has notified Lender in writing prior to doing so and so long as, in Lender's sole opinion, Lender's interests in the Property are not jeopardized. Lender may require Grantor to post adequate security or a surety bond, reasonably satisfactory to Lender, to protect Lender's interest.

**Duty to Protect.** Grantor agrees neither to abandon nor leave unattended the Property. Grantor shall do all other acts, in addition to those acts set forth above in this section, which from the character and use of the Property are reasonably necessary to protect and preserve the Property.

**DUE ON SALE – CONSENT BY LENDER.** Lender may, at its option, declare immediately due and payable all sums secured by this Mortgage upon the sale or transfer, without the Lender's prior written consent, of all or any part of the Real Property, or any interest in the Real Property. A "sale or transfer" means the conveyance of Real Property or any right, title or interest therein; whether legal, beneficial or equitable; whether voluntary or involuntary; whether by outright sale, deed, installment sale contract, land contract, contract for deed, leasehold interest with a term greater than three (3) years, lease-option contract, or by sale, assignment, or transfer of any beneficial interest in or to any land trust holding title to the Real Property, or by any other method of conveyance of Real Property interest. If any Grantor is a corporation, partnership or limited liability company, transfer also includes any change in ownership of more than twenty-five percent (25%) of the voting stock, partnership interests or limited liability company interests, as the case may be, of Grantor. However, this option shall not be exercised by Lender if such exercise is prohibited by federal law or by Massachusetts law.

**TAXES AND LIENS.** The following provisions relating to the taxes and liens on the Property are a part of this Mortgage.

**Payment.** Grantor shall pay when due (and in all events prior to delinquency) all taxes, payroll taxes, special taxes, assessments, water charges and sewer service charges levied against or on account of the Property, and shall pay when due all claims for work done on or for services rendered or material furnished to the Property. Grantor shall maintain the Property free of all liens having priority over or equal to the interest of Lender under this Mortgage, except for the lien of taxes and assessments not due, except for the Existing Indebtedness referred to below, and except as otherwise provided in the following paragraph.

**Right To Contest.** Grantor may withhold payment of any tax, assessment, or claim in connection with a good faith dispute over the obligation to pay, so long as Lender's interest in the Property is not jeopardized. If a lien arises or is filed as a result of nonpayment, Grantor shall within fifteen (15) days after the lien arises or, if a lien is filed, within fifteen (15) days after Grantor has notice of the filing, secure the discharge of the lien, or if requested by Lender, deposit with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender in an amount sufficient to discharge the lien plus any costs and attorneys' fees or other charges that could accrue as a result of a foreclosure or sale under the lien. In any contest, Grantor shall defend itself and Lender and shall satisfy any adverse judgment before enforcement against the Property. Grantor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings.

**Evidence of Payment.** Grantor shall upon demand furnish to Lender satisfactory evidence of payment of the taxes or assessments and shall authorize the appropriate governmental official to deliver to Lender at any time a written statement of the taxes and assessments against the Property.

**Notice of Construction.** Grantor shall notify Lender at least fifteen (15) days before any work is commenced, any services are furnished, or any materials are supplied to the Property, if any mechanic's lien, materialmen's lien, or other lien could be asserted on account of the work, services, or materials. Grantor will upon request of Lender furnish to Lender advance assurances satisfactory to Lender that Grantor can and will pay the cost of such improvements.

**PROPERTY DAMAGE INSURANCE.** The following provisions relating to insuring the Property are a part of this Mortgage.

**Maintenance of Insurance.** Grantor shall procure and maintain policies of fire insurance with standard extended coverage endorsements on a replacement basis for the full insurable value covering all Improvements on the Real Property in an amount sufficient to avoid application of any coinsurance clause, and with a standard mortgagee clause in favor of Lender. Policies shall be written by such insurance companies and in such form as may be reasonably acceptable to Lender. Grantor shall deliver to Lender certificates of coverage from each insurer containing a stipulation that coverage will not be cancelled or diminished without a minimum of thirty (30) days' prior written notice to Lender and not containing any disclaimer of the insurer's liability for failure to give such notice. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Grantor or any other person. Should the Real Property at any time become located in an area designated by the Director of the Federal Emergency Management Agency as a special flood hazard area, Grantor agrees to obtain and maintain Federal Flood Insurance for the full unpaid principal balance of the loan, up to the maximum policy limits set under the National Flood Insurance Program, or as otherwise required by Lender, and to maintain such insurance for the term of the loan.

**Application of Proceeds.** Grantor shall promptly notify Lender of any loss or damage to the Property. Lender may make proof of loss if Grantor fails to do so within fifteen (15) days of the casualty. Whether or not Lender's security is impaired, Lender may, at its election, apply the proceeds to the reduction of the Indebtedness, payment of any lien affecting the Property, or the restoration and repair of the Property. If Lender elects to apply the proceeds to restoration and repair, Grantor shall repair or replace the damaged or destroyed Improvements in a manner satisfactory to Lender. Lender shall, upon satisfactory proof of such expenditure, pay or reimburse Grantor from the proceeds for the reasonable cost of repair or restoration if Grantor is not in default hereunder. Any proceeds which have not been disbursed within 180 days after their receipt and which Lender has not committed to the repair or restoration of the Property shall be used first to pay any amount owing to Lender under this Mortgage, then to prepay accrued interest, and the remainder, if any, shall be applied to the principal balance of the Indebtedness. If Lender holds any proceeds after payment in full of the Indebtedness, such proceeds shall be paid to Grantor.

**Unexpired Insurance at Sale.** Any unexpired insurance shall inure to the benefit of, and pass to, the purchaser of the Property covered by this Mortgage at any trustee's sale or other sale held under the provisions of this Mortgage, or at any foreclosure sale of such Property.

**Compliance with Existing Indebtedness.** During the period in which any Existing Indebtedness described below is in effect, compliance with the insurance provisions contained in the instrument evidencing such Existing Indebtedness shall constitute compliance with the insurance provisions under this Mortgage, to the extent compliance with the terms of this Mortgage would constitute a duplication of insurance requirement. If any proceeds from the insurance become payable on loss, the provisions in this Mortgage for division of proceeds shall apply only to that portion of the proceeds not payable to the holder of the Existing Indebtedness.

**EXPENDITURES BY LENDER.** If Grantor fails to comply with any provision of this Mortgage, including any obligation to maintain Existing Indebtedness in good standing as required below, or if any action or proceeding is commenced that would materially affect Lender's interests in the Property, Lender on Grantor's behalf may, but shall not be required to, take any action that Lender deems appropriate. Any amount that Lender expends in so doing will bear interest at the rate provided for in the Credit Agreement from the date incurred or paid by Lender to the date of repayment by Grantor. All such expenses, at Lender's option, will (a) be payable on demand, (b) be added to the balance of the credit line and be apportioned among and be payable with any installment payments to become due during either (i) the term of any applicable insurance policy or (ii) the remaining term of the Credit Agreement, or (c) be treated as a balloon payment which will be due and payable at the Credit Agreement's maturity. This Mortgage also will secure payment of these amounts. The rights provided for in this paragraph shall be in addition to any other rights or any remedies to which Lender may be entitled on account of the default. Any such action by Lender shall not be construed as curing the default so as to bar Lender from any remedy

| 04-18-1997 | MORTGAGE | Page 3 |
|---|---|---|
| Loan No 8510326156 | (Continued) | |

that it otherwise would have had.

**WARRANTY; DEFENSE OF TITLE.** The following provisions relating to ownership of the Property are a part of this Mortgage.

**Title.** Grantor warrants that: (a) Grantor holds good and marketable title of record to the Property in fee simple, free and clear of all liens and encumbrances other than those set forth in the Real Property description or in the Existing Indebtedness section below or in any title insurance policy, title report, or final title opinion issued in favor of, and accepted by, Lender in connection with this Mortgage, and (b) Grantor has the full right, power, and authority to execute and deliver this Mortgage to Lender.

**Defense of Title.** Subject to the exception in the paragraph above, Grantor warrants and will forever defend the title to the Property against the lawful claims of all persons. In the event any action or proceeding is commenced that questions Grantor's title or the interest of Lender under this Mortgage, Grantor shall defend the action at Grantor's expense. Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of Lender's own choice, and Grantor will deliver, or cause to be delivered, to Lender such instruments as Lender may request from time to time to permit such participation.

**Compliance With Laws.** Grantor warrants that the Property and Grantor's use of the Property complies with all existing applicable laws, ordinances, and regulations of governmental authorities.

**EXISTING INDEBTEDNESS.** The following provisions concerning existing indebtedness (the "Existing Indebtedness") are a part of this Mortgage.

**Existing Lien.** The lien of this Mortgage securing the Indebtedness may be secondary and inferior to the lien securing payment of an existing obligation with an account number of 8230043345 to Family Bank, FSB described as: Mortgage Loan dated May 20, 1993, and recorded in Book 11897 at Page 525. The existing obligation has a current principal balance of approximately $94,611.15 and is in the original principal amount of $99,000.00. Grantor expressly covenants and agrees to pay, or see to the payment of, the Existing Indebtedness and to prevent any default on such indebtedness, any default under the instruments evidencing such indebtedness, or any default under any security documents for such indebtedness.

**No Modification.** Grantor shall not enter into any agreement with the holder of any mortgage, deed of trust, or other security agreement which has priority over this Mortgage by which that agreement is modified, amended, extended, or renewed without the prior written consent of Lender. Grantor shall neither request nor accept any future advances under any such security agreement without the prior written consent of Lender.

**CONDEMNATION.** The following provisions relating to condemnation of the Property are a part of this Mortgage.

**Application of Net Proceeds.** If all or any part of the Property is condemned by eminent domain proceedings or by any proceeding or purchase in lieu of condemnation, Lender may at its election require that all or any portion of the net proceeds of the award be applied to the Indebtedness or the repair or restoration of the Property. The net proceeds of the award shall mean the award after payment of all reasonable costs, expenses, and attorneys' fees incurred by Lender in connection with the condemnation.

**Proceedings.** If any proceeding in condemnation is filed, Grantor shall promptly notify Lender in writing, and Grantor shall promptly take such steps as may be necessary to defend the action and obtain the award. Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of its own choice, and Grantor will deliver or cause to be delivered to Lender such instruments as may be requested by it from time to time to permit such participation.

**IMPOSITION OF TAXES, FEES AND CHARGES BY GOVERNMENTAL AUTHORITIES.** The following provisions relating to governmental taxes, fees and charges are a part of this Mortgage:

**Current Taxes, Fees and Charges.** Upon request by Lender, Grantor shall execute such documents in addition to this Mortgage and take whatever other action is requested by Lender to perfect and continue Lender's lien on the Real Property. Grantor shall reimburse Lender for all taxes, as described below, together with all expenses incurred in recording, perfecting or continuing this Mortgage, including without limitation all taxes, fees, documentary stamps, and other charges for recording or registering this Mortgage.

**Taxes.** The following shall constitute taxes to which this section applies: (a) a specific tax upon this type of Mortgage or upon all or any part of the Indebtedness secured by this Mortgage; (b) a specific tax on Grantor which Grantor is authorized or required to deduct from payments on the Indebtedness secured by this type of Mortgage; (c) a tax on this type of Mortgage chargeable against the Lender or the holder of the Credit Agreement; and (d) a specific tax on all or any portion of the Indebtedness or on payments of principal and interest made by Grantor.

**Subsequent Taxes.** If any tax to which this section applies is enacted subsequent to the date of this Mortgage, this event shall have the same effect as an Event of Default (as defined below), and Lender may exercise any or all of its available remedies for an Event of Default as provided below unless Grantor either (a) pays the tax before it becomes delinquent, or (b) contests the tax as provided above in the Taxes and Liens section and deposits with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender.

**SECURITY AGREEMENT; FINANCING STATEMENTS.** The following provisions relating to this Mortgage as a security agreement are a part of this Mortgage.

**Security Agreement.** This instrument shall constitute a security agreement to the extent any of the Property constitutes fixtures or other personal property, and Lender shall have all of the rights of a secured party under the Uniform Commercial Code as amended from time to time.

**Security Interest.** Upon request by Lender, Grantor shall execute financing statements and take whatever other action is requested by Lender to perfect and continue Lender's security interest in the Rents and Personal Property. In addition to recording this Mortgage in the real property records, Lender may, at any time and without further authorization from Grantor, file executed counterparts, copies or reproductions of this Mortgage as a financing statement. Grantor shall reimburse Lender for all expenses incurred in perfecting or continuing this security interest. Upon default, Grantor shall assemble the Personal Property in a manner and at a place reasonably convenient to Grantor and Lender and make it available to Lender within three (3) days after receipt of written demand from Lender.

**Addresses.** The mailing addresses of Grantor (debtor) and Lender (secured party), from which information concerning the security interest granted by this Mortgage may be obtained (each as required by the Uniform Commercial Code), are as stated on the first page of this Mortgage.

**FURTHER ASSURANCES; ATTORNEY-IN-FACT.** The following provisions relating to further assurances and attorney-in-fact are a part of this Mortgage.

**Further Assurances.** At any time, and from time to time, upon request of Lender, Grantor will make, execute and deliver, or will cause to be made, executed or delivered, to Lender or to Lender's designee, and when requested by Lender, cause to be filed, recorded, refiled, or rerecorded, as the case may be, at such times and in such offices and places as Lender may deem appropriate, any and all such mortgages, deeds of trust, security deeds, security agreements, financing statements, continuation statements, instruments of further assurance, certificates, and other documents as may, in the sole opinion of Lender, be necessary or desirable in order to effectuate, complete, perfect, continue, or preserve (a) the obligations of Grantor under the Credit Agreement, this Mortgage, and the Related Documents, and (b) the liens and security interests created by this Mortgage on the Property, whether now owned or hereafter acquired by Grantor. Unless prohibited by law or agreed to the contrary by Lender in writing, Grantor shall reimburse Lender for all costs and expenses incurred in connection with the matters referred to in this paragraph.

**Attorney-in-Fact.** If Grantor fails to do any of the things referred to in the preceding paragraph, Lender may do so for and in the name of Grantor and at Grantor's expense. For such purposes, Grantor hereby irrevocably appoints Lender as Grantor's attorney-in-fact for the purpose of making, executing, delivering, filing, recording, and doing all other things as may be necessary or desirable, in Lender's sole opinion, to accomplish the matters referred to in the preceding paragraph.

**FULL PERFORMANCE.** If Grantor pays all the Indebtedness when due, terminates the credit line account, and otherwise performs all the obligations imposed upon Grantor under this Mortgage, Lender shall execute and deliver to Grantor a suitable satisfaction of this Mortgage and suitable statements of termination of any financing statement on file evidencing Lender's security interest in the Rents and the Personal Property. Grantor will pay, if permitted by applicable law, any reasonable termination fee as determined by Lender from time to time.

**DEFAULT.** Each of the following, at the option of Lender, shall constitute an event of default ("Event of Default") under this Mortgage: (a) Grantor commits fraud or makes a material misrepresentation at any time in connection with the credit line account. This can include, for example, a false statement about Grantor's income, assets, liabilities, or any other aspects of Grantor's financial condition. (b) Grantor does not meet the repayment terms of the credit line account. (c) Grantor's action or inaction adversely affects the collateral for the credit line account or Lender's rights in the collateral. This can include, for example, failure to maintain required insurance, waste or destructive use of the dwelling, failure to pay taxes, death of all persons liable on the account, transfer of title or sale of the dwelling, creation of a lien on the dwelling without Lender's permission, foreclosure by the holder of another lien, or the use of funds or the dwelling for prohibited purposes.

**RIGHTS AND REMEDIES ON DEFAULT.** This Mortgage is upon the STATUTORY CONDITION for any breach of which Lender, the mortgagee, shall have the STATUTORY POWER OF SALE. In addition, upon the occurrence of any Event of Default and at any time thereafter, Lender, at its option, may exercise any one or more of the following rights and remedies, in addition to any other rights or remedies provided by law:

**Accelerate Indebtedness.** Lender shall have the right at its option without notice to Grantor to declare the entire Indebtedness immediately due and payable, including any prepayment penalty which Grantor would be required to pay.

**Foreclosure.** Lender may invoke the STATUTORY POWER OF SALE, in which case Lender shall mail a copy of a notice of sale to Grantor and

| 04-18-1997 | MORTGAGE | Page 4 |
|---|---|---|
| Loan No 851032615 | (Continued) | |

to any other person required by applicable law, in the manner provided by applicable law. Lender shall publish the notice of sale, and the Property shall be sold in the manner prescribed by applicable law.

**UCC Remedies.** With respect to all or any part of the Personal Property, Lender shall have all the rights and remedies of a secured party under the Uniform Commercial Code.

**Collect Rents.** Lender shall have the right, without notice to Grantor, to take possession of the Property and collect the Rents, including amounts past due and unpaid, and apply the net proceeds, over and above Lender's costs, against the Indebtedness. In furtherance of this right, Lender may require any tenant or other user of the Property to make payments of rent or use fees directly to Lender. If the Rents are collected by Lender, then Grantor irrevocably designates Lender as Grantor's attorney-in-fact to endorse instruments received in payment thereof in the name of Grantor and to negotiate the same and collect the proceeds. Payments by tenants or other users to Lender in response to Lender's demand shall satisfy the obligations for which the payments are made, whether or not any proper grounds for the demand existed. Lender may exercise its rights under this subparagraph either in person, by agent, or through a receiver.

**Appoint Receiver.** Lender shall have the right to have a receiver appointed to take possession of all or any part of the Property, with the power to protect and preserve the Property, to operate the Property preceding foreclosure or sale, and to collect the Rents from the Property and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Property exceeds the Indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver.

**Deficiency Judgment.** If permitted by applicable law, Lender may obtain a judgment for any deficiency remaining in the Indebtedness due to Lender after application of all amounts received from the exercise of the rights provided in this section.

**Tenancy at Sufferance.** If Grantor remains in possession of the Property after the Property is sold as provided above or Lender otherwise becomes entitled to possession of the Property upon default of Grantor, Grantor shall become a tenant at sufferance of Lender or the purchaser of the Property and shall, at Lender's option, either (a) pay a reasonable rental for the use of the Property, or (b) vacate the Property immediately upon the demand of Lender.

**Other Remedies.** Lender shall have all other rights and remedies provided in this Mortgage or the Credit Agreement or available at law or in equity.

**Sale of the Property.** To the extent permitted by applicable law, Grantor hereby waives any and all right to have the property marshalled. In exercising its rights and remedies, Lender shall be free to sell all or any part of the Property together or separately, in one sale or by separate sales. Lender shall be entitled to bid at any public sale on all or any portion of the Property.

**Notice of Sale.** Lender shall give Grantor reasonable notice of the time and place of any public sale of the Personal Property or of the time after which any private sale or other intended disposition of the Personal Property is to be made. Reasonable notice shall mean notice given at least fourteen (14) days before the time of the sale or disposition.

**Waiver; Election of Remedies.** A waiver by any party of a breach of a provision of this Mortgage shall not constitute a waiver of or prejudice the party's rights otherwise to demand strict compliance with that provision or any other provision. Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or take action to perform an obligation of Grantor under this Mortgage after failure of Grantor to perform shall not affect Lender's right to declare a default and exercise its remedies under this Mortgage.

**Attorneys' Fees; Expenses.** If Lender institutes any suit or action to enforce any of the terms of this Mortgage, Lender shall be entitled to recover such sum as the court may adjudge reasonable as attorneys' fees at trial and on any appeal. Whether or not any court action is involved, all reasonable expenses incurred by Lender that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the Indebtedness payable on demand and shall bear interest from the date of expenditure until repaid at the rate provided for in the Credit Agreement. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses whether or not there is a lawsuit, including attorneys' fees for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals and any anticipated post-judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal fees, and title insurance, to the extent permitted by applicable law. Grantor also will pay any court costs, in addition to all other sums provided by law.

**NOTICES TO GRANTOR AND OTHER PARTIES.** Any notice under this Mortgage, including without limitation any notice of default and any notice of sale to Grantor, shall be in writing, may be be sent by telefacsimile, and shall be effective when actually delivered, or when deposited with a nationally recognized overnight courier, or, if mailed, shall be deemed effective when deposited in the United States mail first class, certified or registered mail, postage prepaid, directed to the addresses shown near the beginning of this Mortgage. Any party may change its address for notices under this Mortgage by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. All copies of notices of foreclosure from the holder of any lien which has priority over this Mortgage shall be sent to Lender's address, as shown near the beginning of this Mortgage. For notice purposes, Grantor agrees to keep Lender informed at all times of Grantor's current address.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Mortgage:

**Amendments.** This Mortgage, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Mortgage. No alteration of or amendment to this Mortgage shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Applicable Law.** This Mortgage has been delivered to Lender and accepted by Lender in the Commonwealth of Massachusetts. This Mortgage shall be governed by and construed in accordance with the laws of the Commonwealth of Massachusetts.

**Caption Headings.** Caption headings in this Mortgage are for convenience purposes only and are not to be used to interpret or define the provisions of this Mortgage.

**Merger.** There shall be no merger of the interest or estate created by this Mortgage with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

**Multiple Parties.** All obligations of Grantor under this Mortgage shall be joint and several, and all references to Grantor shall mean each and every Grantor. This means that each of the persons signing below is responsible for all obligations in this Mortgage.

**Release of Estate of Homestead.** Grantor hereby releases any estate of homestead as to all Indebtedness secured by this Mortgage.

**Severability.** If a court of competent jurisdiction finds any provision of this Mortgage to be invalid or unenforceable as to any person or circumstance, such finding shall not render that provision invalid or unenforceable as to any other persons or circumstances. If feasible, any such offending provision shall be deemed to be modified to be within the limits of enforceability or validity; however, if the offending provision cannot be so modified, it shall be stricken and all other provisions of this Mortgage in all other respects shall remain valid and enforceable.

**Successors and Assigns.** Subject to the limitations stated in this Mortgage on transfer of Grantor's interest, this Mortgage shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Property becomes vested in a person other than Grantor, Lender, without notice to Grantor, may deal with Grantor's successors with reference to this Mortgage and the Indebtedness by way of forbearance or extension without releasing Grantor from the obligations of this Mortgage or liability under the Indebtedness.

**Time Is of the Essence.** Time is of the essence in the performance of this Mortgage.

**Waivers and Consents.** Lender shall not be deemed to have waived any rights under this Mortgage (or under the Related Documents) unless such waiver is in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by any party of a provision of this Mortgage shall not constitute a waiver of or prejudice the party's right otherwise to demand strict compliance with that provision or any other provision. No prior waiver by Lender, nor any course of dealing between Lender and Grantor, shall constitute a waiver of any of Lender's rights or any of Grantor's obligations as to any future transactions. Whenever consent by Lender is required in this Mortgage, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required.

EACH GRANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS MORTGAGE, AND EACH GRANTOR AGREES TO ITS TERMS. THIS MORTGAGE IS EXECUTED UNDER SEAL.

GRANTOR:

X _____   X _____
  Lisa J. Bayko                   Jeffrey L. Bayko

| 04-18-1997 | MORTGAGE | Page 5 |
|---|---|---|
| Loan No 851032* | (Continued) | |

Signed, acknowledged and delivered in the presence of:

X _Jay H. Nassar_
　Witness

X _____
　Witness

## INDIVIDUAL ACKNOWLEDGMENT

COMMONWEALTH OF _Massachusetts_ )
　　　　　　　　　　　　　　　　) ss
COUNTY OF _Essex_ )

On this day before me, the undersigned Notary Public, personally appeared Lisa J. Bayko and Jeffrey L. Bayko, to me known to be the individuals described in and who executed the Mortgage, and acknowledged that they signed the Mortgage as their free and voluntary act and deed, for the uses and purposes therein mentioned.

Given under my hand and official seal this __18th__ day of __April__, 19 _97_.

By _Jay H. Nassar_　　　　　　　Residing at _11 Orchard Ln, Topsfield MA 01983_

Notary Public in and for the Commonwealth of _Massachusetts_  My commission expires _My Commission expires Aug. 24, 2001_

(Affix Notarial Seal)

LASER PRO, Reg. U.S. Pat. & T.M. Off., Ver. 3.22b (c) 1997 CFI ProServices, Inc. All rights reserved. [MA-G03 BAYKO.LN L3.OVL]

DEFENDANT'S EXHIBIT
B

2003070800013 Bk:21193 Pg:386
07/08/2003 08:13:00 MTG Pg 1/2

## MORTGAGE DEED

I, JEFFREY L. BAYKO, formerly of 7A Graham Avenue, Newbury, Essex County, Massachusetts for consideration paid, grant to MICHAEL J. BAYKO and HELEN E. BAYKO, both of Newburyport, Essex County, Massachusetts, with **MORTGAGE COVENANTS** to secure the payment of SIXTY-THREE HUNDRED AND 00/100 ($6,300.00) DOLLARS together with interest thereon at the rate of Six (6.00%) Percent per annum, all as provided in the undersigned's Note of May 9, 2003, the land in Newburyport, Essex County, Massachusetts known as 7A Graham Avenue and more fully described on Exhibit "A" attached hereto and made a part hereof.

This Mortgage is upon the STATUTORY CONDITION, for any breach of which the Mortgagee shall have the statutory power of sale, all as more fully described in an Extract - from General Laws (Ter. Ed.), Chapter 183, Sections 18, 19, 20 and 21 appended hereto as Exhibit "B".

WITNESS my hand and seal this ___ day of May 2003.

_____   _____
WITNESS                    JEFFREY L. BAYKO

please return to:
Evans, Evans and Bingham
58 Main St
Topsfield, MA 01983

### COMMONWEALTH OF MASSACHUSETTS

ESSEX, SS.                                    May 25th, 2003

Then personally appeared the above-named JEFFREY L. BAYKO who acknowledged his execution of the foregoing instrument to be their free acts and deeds, before me,

_____
NOTARY PUBLIC
My Commission expires:

Gary Evan Evans
NOTARY PUBLIC
My commission expires Dec. 26, 2008

20030708000013 Bk:21193 Pg:387
07/08/2003 08:13:00 MTG Pg 2/2

# EXHIBIT "A"

A certain parcel of land in said Newbury constituting and being Lot numbered 39 on a certain plan entitled "Montgomery Park", Frederick P. Hall, Surveyor, dated 1897 and recorded with Essex South District Registry of Deeds, Book 1593, Page 1, bounded and described as follows:

SOUTHERLY: by Graham Avenue, fifty (50) feet;

WESTERLY: by Lot numbered 40, as shown on said plan, one hundred (100) feet;

NORTHERLY: by Lot numbered 22, as shown on said plan, fifty (50) feet; and

EASTERLY: by Lot numbered 38, as shown on said plan, one hundred (100) feet.

This being a portion of the same premises conveyed to Jeffrey L. Bayko and Lisa J. Bayko, husband and wife as tenants by the entirety by deed of Michael T. Bayko and Helen E. Bayko, recorded April 26, 1985 with the Essex South District Registry of Deeds Book 7731, Page 545.




# COMMONWEALTH OF MASSACHUSETTS

ESSEX, SS.                                         PROBATE AND FAMILY COURT
                                                   NO. 01D 0875 DV1

| LISA J. BAYKO, |
| Plaintiff |
| |
| v. |
| |
| JEFFREY L. BAYKO, SR., |
| Defendant |

## NOTICE OF ATTORNEY'S LIEN

Pursuant to General Laws chapter 221, section 50, notice is hereby given by Hans R. Hailey, Esquire, counsel for the defendant Jeffrey L. Bayko in the above described action, of the attorney's lien upon the judgment, decree or other order in his client's favor entered or made in such proceeding, and upon the proceeds derived therefrom specifically including the interest of Jeffrey L. Bayko in the property known as and located at 7A Graham Avenue in Newbury, Massachusetts, more particularly described in a deed recorded in Essex Registry of Deeds in Book 7731, Page 545.

Date: February 6, 2003

_Hans R. Hailey_
Hans R. Hailey
Law Offices of Hans R. Hailey
11 Beacon Street
Boston, Massachusetts 02108
Tel. (617) 723-4010

**DEFENDANT'S EXHIBIT**
D

## COMMONWEALTH OF MASSACHUSETTS

ESSEX, SS.                                             PROBATE AND FAMILY COURT
                                                       DOCKET NO. 01D 0875 DV1

LISA J. BAYKO, )
  Plaintiff )
 )                                                     **NOTICE OF ATTORNEY'S LIEN**
v. )
 )
JEFFREY L. BAYKO, SR., )
  Defendant )

2003032000542 Bk:20391 Pg:444
03/20/2003 07:52:00 OTHER Pg 1/1

Pursuant to General Laws Chapter 221, Sec. 50, notice is hereby given by Charles D. Rotondi, counsel for the plaintiff Lisa J. Bayko in the above-described action, of the attorney's lien upon the judgment, decree or other order in his client's favor entered or made in such proceeding, and upon the proceeds derived therefrom specifically including the interest of Lisa J. Bayko in the property known as and located at 7A Graham Avenue in Newbury, Massachusetts, more particularly described in a deed recorded in Essex Registry of Deeds in Book 7731, Page 545.

Date: 2/11/03

Charles D. Rotondi
79 State Street
Newburyport, MA 01950
(978) 462-9393
BBO #431260

CHARLES D. ROTONDI
Attorney at Law
79 State Street
Newburyport, MA 01950




**COMMONWEALTH OF MASSACHUSETTS**
**DEPARTMENT OF REVENUE**

**DEFENDANT'S EXHIBIT** E

Lien Number: 0441 1000 1613
Taxpayer ID Number:
Spouse's ID Number:

# NOTICE OF MASSACHUSETTS TAX LIEN

2003040400086 Bk:20521 Pg:207
04/04/2003 08:53:00 NML Pg 1/1

PLACE OF FILING
Registry of Deeds: ESSEX COUNTY/SALEM, MA
Secretary of State: BOSTON, MA

JEFFREY L. BAYKO
7A Graham Ave
Newbury, Ma
19511

Pursuant to the provisions of Section 50 of Chapter 62c of the General Laws, notice is hereby given that there have been assessed against the following-named taxpayer taxes (including interest and penalties) which remain unpaid, and that the amount of said taxes is a lien in favor of the Commonwealth of Massachusetts upon all property and rights to property belonging to said taxpayer.

| Tax Type | Period End Date | Assessment Date | Assessment Amounts | Statutory Additions | Balance Due |
| --- | --- | --- | --- | --- | --- |
| INCOME | 12/31/00 | 08/18/02 | $5,313.48 | $2,779.91 | $8,093.39 |
|  | 12/31/01 | 08/16/02 | $449.00 | $66.25 | $370.25 |
|  |  |  |  | TOTAL: | $8,463.64 |

MDOR-Collections Bureau
P. O. Box 7021
\_\_\_\_\_, MA 02204

Tax Examiner: Stacey Oneil                Deputy Commissioner  *[signature]*

**DEFENDANT'S EXHIBIT F**

| Form 668 (Y)(c) | 498 | Department of the Treasury - Internal Revenue Service |
|---|---|---|
| (Rev. October 2000) | | **Notice of Federal Tax Lien** |

| Area: SMALL BUSINESS/SELF EMPLOYED AREA #1 Lien Unit Phone: (617) 316-2575 | Serial Number 40323104 | For Optional Use by Recording Office |
|---|---|---|

As provided by section 6321, 6322, and 6323 of the Internal Revenue Code, we are giving a notice that taxes (including interest and penalties) have been assessed against the following-named taxpayer. We have made a demand for payment of this liability, but it remains unpaid. Therefore, there is a lien in favor of the United States on all property and rights to property belonging to this taxpayer for the amount of these taxes, and additional penalties, interest, and costs that may accrue.

2003060300897 Bk:20949 Pg:90
06/03/2003 17:17:00 FTL Pg 1/1

Name of Taxpayer  JEFFREY L BAYKO

Residence  7A GRAHAM AVE
NEWBURY, MA 01951

**IMPORTANT RELEASE INFORMATION:** For each assessment listed below, unless notice of the lien is refiled by the date given in column (e), this notice shall, on the day following such date, operate as a certificate of release as defined in IRC 6325(a).

| Kind of Tax (a) | Tax Period Ending (b) | Identifying Number (c) | Date of Assessment (d) | Last Day for Refiling (e) | Unpaid Balance of Assessment (f) |
|---|---|---|---|---|---|
| 1040 | 12/31/2000 | 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 | 09/23/2002 | 10/23/2012 | 46072.35 |
| 1040 | 12/31/2001 | 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 | 09/23/2002 | 10/23/2012 | 1124.45 |

Place of Filing  Registry of Deeds
Southern Essex County
Salem, MA  01970

Total $ 47196.80

This notice was prepared and signed at Boston, MA, on this, the 01st day of May, 2003.

| Signature for MICHAEL HONEY | Title REVENUE OFFICER (781) 835-4231 | 21-07-2730 |
|---|---|---|

(NOTE: Certificate of officer authorized by law to take acknowledgment is not essential to the validity of Notice of Federal Tax lien Rev. Rul. 71-466, 1971 - 2 C.B. 409)

Part 1 - Kept By Recording Office

Form 668(Y)(c) (Rev. 10-00)