*A-1*

# **IIIIII AndoverLaw, P.C.®**

FILED
IN CLERKS OFFICE

2004 NOV 29  P 3: 27

U.S. DISTRICT COURT
DISTRICT OF MASS

451 Andover Street, Suite 185
North Andover, MA 01845
TEL (978) 794-0360
FAX (978) 794-5457

November 26, 2004

Clerk of Court
United States District Court
District of Massachusetts
John Joseph Moakley U.S. Courthouse
1 Courthouse Way
Boston, MA 02210

> Re:  *Formerly* GMAC Mortgage Corporation v. Bayko, et al.
>      Essex Superior Court Civil Action No. ESCV 2004-01855
>
>      *Removed To:* GMAC Mortgage Corporation v. Bayko, et al.
>      Massachusetts District Court CA No. 04-12448-GAO

Dear Sir or Madam:

On November 24, 2004, I filed a package which included Michael J. Bayko and Helen E. Bayko's Verified Motion for Partial Summary Judgment. As this case originated in the Massachusetts Superior Court, the motion was filed with the only opposition received in accordance with Superior Court Rule 9A. (In Mass. Superior Court motions served on other parties, objections returned to moving party, the motions are then filed in a single package with the Court.)

Today,  I received a late opposition to our motion for summary judgment from BankNorth. (I hereby waive any objection to the late service.)  Please file the enclosed "Banknorth, N.A.'s Opposition to Defendant's Michael J. Bayko aand Helen E. Bayyko's [sic] Partial Motion for Summary Judgment"  with Michael J. Bayko and Helen E. Bayko's Verfied Motion for Partial Summary Judgment.

Thank you for your attention to this matter.

Sincerely,

Timothy D. Sullivan, Esq.
TDS:dab
Enc.
cc: w/o enclosure
    Attorney David M. Rosen
    Harmon Law Offices, P.C.
    P.O. Box 610389

    Jeffrey Bayko
    c/o Attorney Gary Evans
    58 Main Street



Newton Highlands, MA 02461-0389

Lisa Bayko
c/o Attorney Christine Faro
79 State Street
Newburyport, MA 01950

Attorney Hans Hailey
225 Friend Street
Boston, MA 02114

Department of Revenue
Collections Bureau
P.O. Box 55486
51 Sleeper Street
Boston, MA 02205-5486

Attorney Gary Evans
58 Main Street
Topsfield, MA 01983

Attorney John Aquino
Anderson & Aquino, LLP
260 Franklin Street
Boston, MA 02110

Topsfield, MA 01983

Attorney Michele Rooke
Doherty, Wallace, Pillsbury & Murphy
One Monarch Place
1414 Main Street, Suite 1900
Springfield, MA 01144-1900

Attorney Charles Rotondi
79 State Street
Newburyport, MA 01950

Attorney Barbara Healy Smith
Assistant United States Attorney
U.S. Courthouse
One Courthouse Way, Suite 9200
Boston, MA 02110

Attorney Christine Faro
79 State Street
Newburyport, MA 01950

# COMMONWEALTH OF MASSACHUSETTS

FILED
IN CLERK'S OFFICE

ESSEX, ss

SUPERIOR COURT DEPARTMENT 3: 34
OF THE TRIAL COURT
CIVIL ACTION # ESCV2004-01855 COURT
DISTRICT OF MASS.

GMAC MORTGAGE CORPORATION,       )
                  Plaintiff      )
                                 )
v.                               )
JEFFREY L. BAYKO, SR. LISA J. BAYKO )
HELEN E. BAYKO, MICHAEL J. BAYKO, )
BANKNORTH GROUP, HANS R. HAILEY, )
CHARLES D. ROTONDI, COMMONWEALTH )
OF MASSACHUSETTS DEPARTMENT OF   )
REVENUE, THE UNITED STATES OF    )
AMERICA, GARY EVANS, CHRISTINE ANN )
FARO, AND JOHN AQUINO,           )
                  Defendants,    )
                                 )

## VERIFIED MOTION FOR PARTIAL SUMMARY JUDGMENT

1.  Defendants, Michael J. Bayko and Helen E. Bayko, hold secured interests on the proceeds of the real property located at 7A Graham Ave., Newbury, Massachusetts. GMAC Mortgage Corporation, the first mortgage holder has asked this Honorable Court to determine the priorities and order payment.   Wherefore, the Defendants submit the following evidence of their claims and ask for judgment.

<u>July 19, 2002 Mortgage</u>
(recorded August 12, 2002)

2.  Michael J. Bayko and Helen E. Bayko seek principal in the amount of $46,360.00, interest in the amount of $6,258.60, and attorneys' fees in the amount of $12,124.66.

<u>Principal</u>

3.  The principal amount due on the July 19, 2002 Promissory Note is $46,360.00.  This is

evidenced by an acknowledged Promissory Note dated July 19, 2002 and a certified copy of Mortgage Deed, recorded at the Essex Registry of Deeds, Southern District, August 12, 2002 at 8:49 A.M at Book 19056, Page 153. **(Exhibit 1, July 19, 2002 Promissory Note) (Exhibit 2, Certified Copy of Mortgage Deed dated July 19, 2002)** Michael J. Bayko and Helen E. Bayko certify by this Verified Motion that no payments have been made on this note.

Interest

4.      Interest due through October 19, 2004 is $6,258.60.  This is based on the Six (6%) Percent per annum quoted in the Promissory Note.  The Note does not clearly indicate whether interest is compound; therefore, the calculation is based on simple interest.)  **(See Exhibit 1)**

Attorneys' Fees

5.      In August of 2003, it became apparent that the former marital home would be sold either at auction or by agreement.  Most of the funds advanced by Michael J. Bayko and Helen E. Bayko were used by their son to pay child support and attorneys' fees related to the divorce of Jeffrey Bayko and Lisa Bayko.  In fact, the second mortgage can be precisely traced from Mr. and Mrs. Bayko's bank account to the DOR in an amount necessary to pay back child support and get Jeffrey out of jail.  Nevertheless, Lisa Bayko took the position that Michael J. Bayko and Helen E. Bayko should be enjoined from enforcing their mortgages.   August 13, 2003, Lisa Bayko filed an "Emergency Ex-Parte Motion to Revoke Mortgages" in the closed divorce of Lisa J. Bayko and Jeffrey L. Bayko, Sr. (Essex Probate and Family Court Docket # 01D 0875 DV1).  The motion sought to invalidate Michael and Helen Bayko's mortgages without joining them or even noticing them.
The Probate and Family Court denied that motion.

6.      Next, she filed a "Complaint in Equity to Set Aside Fraudulent Conveyance to Declare the Mortgages Between Jeffrey L. Bayko and Helen & Michael Bayko Null and to Enforce the Terms of a Judgment of This Court".  That Complaint was followed September 3, 2003, by Lisa Bayko's thirteen page "Motion for Injunctive Relief to Enjoin Defendants Helen Bayko and Michale [sic] Bayko from Enforcing Mortgages and to Revoke Mortgages" in the Essex County Probate and Family Court (Docket # 03E 0076 GC1).

7.      Ms. Bayko refused offers to close the sale and escrow the funds pending litigation, the preliminary injunction was denied, and the foreclosure sale went through.

8.      In the intervening months, numerous motions were filed and several hearings held before the Probate and Family Court. Finally, the Probate and Family Court acted on Michael J. and Helen E. Bayko's Motion to Dismiss (originally served on September 8, **2003** and repeatedly reasserted). On September 15, **2004**, the Probate and Family Court dismissed the equity complaint.

9.      During the course of more than a year of litigation, Defendants, Michael J. Bayko and Helen E. Bayko, incurred and paid attorney's fees and costs in the amount of $10,124.66. This does not include attorneys' fees and costs related to this Interpleader action. If the Interpleader is uncontested, fees and costs for drafting and filing an Answer and Motion for Summary Judgment and for appearing at a hearing to determine the various anticipated claims are estimated to be an additional $2,000.00.

May 9, 2003 Note
(recorded July 8, 2003)

Principal

10.     The principal amount due on the May 9, 2003 Promissory Note is $6,300.00. This is evidenced by an acknowledged Promissory Note dated May 9, 2003 and a certified copy of Mortgage Deed, Recorded at the Essex Registry of Deeds, Southern District, July 8, 2003 at 8:13 A.M in Book 21193 at page 386 **(Exhibit 3, May 9, 2003 Promissory Note) (Exhibit 4, Certified Copy of Mortgage Deed)** Michael J. Bayko and Helen E. Bayko certify by this Verified Motion that no payments have been made on this note.

Interest

11.     Interest due through October 9, 2004 is $535.50. This is based on the Six (6%) Percent per annum quoted in the Promissory Note. The note does not clearly indicate whether interest is compound; therefore, the calculation is based on simple interest. **(See Exhibit 1)**

WHEREFORE, Defendants, Michael J. Bayko and Helen E. Bayko, respectfully request that this Court grant them Judgment on their mortgages and distribute funds owed to them and secured by their mortgages.

Specifically, Michael J. Bayko and Helen E. Bayko seek $71,578.76 plus interest from the date

of this pleading and their attorney's fees and costs for this phase of the collection process:

a.    $46,360.00 being the principal on their July 19, 2002 Note and Mortgage. (Recorded August 12, 2002.)

b.    Interest to the date of payment as provided in their July 19, 2002 Note and Mortgage.  (Interest to date is currently $6,258.60.)

c.    Attorneys' fees and costs as provided in their July 19, 2002 Note and Mortgage. (Attorneys' fees and costs paid to date, before including the costs related to this Interpleader Action are: $10,124.66.  These fees are related to litigation brought by Defendant Lisa Bayko beginning in August of 2003 all of which were ultimately dismissed or otherwise disposed of in September of 2004 by the Probate and Family Court.)

d.    $6,300 being the principal on their May 9, 2003 promissory note and mortgage recorded July 8, 2003.

e.    Interest from the date of the Note to the date of final payment.  (Interest to date is currently $535.50.)

f.    Attorneys' fees and costs for responding to this Interpleader ($2,000 estimate included).

Respectfully submitted,                                    Dated: October 26, 2004
Michael J. Bayko and Helen E. Bayko
by their attorney,

Timothy D. Sullivan, Esq.
AndoverLaw, P.C.
451 Andover Street, Suite 185
North Andover, MA 01845
(978) 794-0360
BBO No. 563244

## VERIFICATION

We, Michael J. Bayko and Helen E. Bayko, do hereby declare that we have read the foregoing Motion and know the contents thereof.  The same is true to our knowledge and belief.

We declare under penalty of perjury that the foregoing s true and correct and that this declaration was executed on this 26 day of October, 2004 in Essex County, Massachusetts.

_____
Michael J. Bayko

_____
Helen E. Bayko

## CERTIFICATE OF SERVICE

I, Timothy D. Sullivan, Esq. do hereby certify that on this 26th day of October, 2004, I served a the foregoing Verified Motion for Partial Summary Judgment, by mail a copy first class mail, postage prepaid to: Attorney David M. Rosen, Harmon Law Offices, P.C., P.O. Box 610389, Newton Highlands, MA 02461-0389, attorney for GMAC Mortgage Corporation; Jeffrey L. Bayko, Sr. c/o Attorney Gary Evans, 58 Main Street, Topsfield, MA 01983; Lisa Bayko c/o Attorney Charles D. Rotondi, 79 State Street, Newburyport, MA 01950; Banknorth Group, P.O. Box 1503, Orleans, MA 02653; Attorney Hans Hailey, 225 Friend Street, Boston, MA 02114; Attorney Charles D. Rotondi, 79 State Street, Newburyport, MA 01950; Commonwealth of Massachusetts Department of Revenue, Collections Bureau, P.O. Box 7021, Boston, MA 02204; United States of America, Internal Revenue Service, P.O. Box 9112, Stop 20800, Boston, MA 02203; Attorney Gary Evans, 58 Main Street, Topsfield, MA 01983; Attorney Christine Faro, 79 State Street, Newburyport, MA 01950; and Attorney John Aquino, Anderson & Aquino, LLP, 260 Franklin Street, Boston, MA 02110.

_____
Timothy D. Sullivan, Esq.

SCANNED
DATE:
BY:

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO.  04-1244GAO

04-cv-12448 GA0

GMAC MORTGAGE CORPORATION,      )
   Plaintiff,                   )
                                 )
vs.                                )
                                 )
                                 )
JEFFREY L. BAYKO, SR., LISA J.     )
BAYKO, HELEN E. BAYKO,             )
MICHAEL J. BAYKO, BANKNORTH        )
GROUP, HANS R. HAILEY, CHARLES     )
D. ROTONDI, COMMONWEALTH OF        )
MASSACHUSETTS DEPARTMENT           )
OF REVENUE, THE UNITED STATES      )
OF AMERICA, GARY EVANS,            )
CHRISTINE ANN FARO, AND JOHN       )
AQUINO,                            )
   Defendants.                   )

**BANKNORTH, N.A.'S OPPOSITION TO
DEFENDANT'S LISA J. BAYKO',
CHRISTINE ANN FARO AND
CHARLES ROTONDI'S MOTION FOR
SUMMARY JUDGMENT**

## INTRODUCTION

On or about April 18, 2997 the Defendant's Lisa J. Bayko and Jeffrey L. Bayko

entered into a mortgage agreement with Family Savings Bank (Banknorth, NA,

"Banknorth",  is successor in interest to Family Savings Bank).  The mortgage was

secured by property located at 7A Graham Avenue, Newbury, MA.  ("Property").  Said

mortgage was recorded on <u>April 24, 1997</u> in the Essex County Registry of Deeds at Book

14068, Page 475 in the original amount of $15,000.00.  (Exhibit and B).

It is uncontested that Plaintiff, ("GMAC"), foreclosed on the Property on March

12, 2004 by public auction.  After satisfaction of the first Mortgage with GMAC, there

were excess sale proceeds in the stated amount of $186,742.59.  As of the date of the

foreclosure, Banknorth, NA was owed $16,156.25, which it is entitled to by virtue of its

recorded second Mortgage and <u>priority position</u> over junior lien holders on record. (See G.L. c. 62C, §50(a).) (See Exhibit A).

Banknorth, NA opposes the Defendant's Motion for Summary Judgment in so much as it may assert a priority claim over the senior mortgage of Banknorth, NA.

## LAW AND ARGUMENT

<u>Banknorth, NA Mortgage has Priority over Other Lien Holders by Virtue of its Senior Position at the Registry of Deeds</u>.

Banknorth's Mortgage has priority over any remaining lien holders on the Property, by virtue of being in <u>senior</u> position at the Registry at the time of foreclosure upon the Property.   The recording of the Banknorth mortgage takes place well over five years before the next recording.   It is clear, that Banknorth's recorded second mortgage takes priority over all other potential claims and lien holders.

The excess proceeds from the foreclosure of the first Mortgage with GMAC are sufficient to pay the amount owed Banknorth as of the date of the foreclosure.  There is no basis in law or equity that would entitle the holder of any junior lien to any of the proceeds owed by Banknorth by virtue of its priority position as Mortgagee on the Property.

Upon review of the various pleadings and motions it appears that, Defendant's Lisa J. Bayko and Jeffrey L. Bayko engaged in a contested and prolonged divorce. Banknorth asserts that it should be satisfied first from the surplus immediately and released from this action to avoid what it likely to be prolonged litigation over the remaining funds.

## REQUEST FOR ORAL ARGUMENT

Banknorth respectfully requests a hearing on its Motion for Summary Judgment.

## CONCLUSION

The Defendant's Motion for Summary Judgment be denied, in so much as it asserts any priority over Banknorth, NA.

The Defendant,
**BANKNORTH, N.A.,**
By its attorney,

Dated: November 29, 2004

Michele A. Rooke
Doherty, Wallace, Pillsbury and Murphy, P.C.
One Monarch Place
1414 Main Street, Suite 1900
Springfield, MA 01144-1900
Tel: (413) 733-3111
Fax: (413) 734-3910
BBO No.: 643632

247741-1

# CERTIFICATE OF SERVICE

I, Michele A. Rooke, hereby certify that I served a copy of the foregoing document on the parties to the case by mailing a copy of the same postage prepaid to:

**David M. Rosen, Esquire**
**Harmon Law Offices, P.C.**
**P.O. Box 610389**
**Newton Highlands, MA  02461-0389**

**Commonwealth of Massachusetts**
**Department of Revenue**
**Collections Bureau**
**P.O. Box 7021**
**Boston, MA  02204**

**Jeffrey L. Bayko, Sr.**
**c/o Attorney Gary Evans**
**58 Main Street**
**Topsfield, MA  01983**

**The United States of America**
**Internal Revenue Services**
**P.O. Box 9112**
**Stop 20800**
**Boston, MA  02203**

**Lisa J. Bayko**
**c/o Attorney Charles D. Rotondi**
**79 State Street**
**Newburyport, MA  01950**

**Gary Evans**
**58 Main Street**
**Topsfield, MA  01983**

**Helen E. Bayko**
**c/o Attorney Timothy Sullivan**
**451 Andover Street, Suite 185**
**North Andover, MA  01845**

**Christine Ann Faro**
**79 State Street**
**Newburyport, MA  01950**

**Michael J. Bayko**
**c/o Attorney Timothy Sullivan**
**451 Andover Street, Suite 185**
**North Andover, MA  01845**

**John Aquino**
**Anderson & Aquino, LLP**
**260 Franklin Street**
**Boston, MA  02110**

**Hans R. Hailey**
**225 Friend Street**
**Boston, MA  02114**

**Attorney Charles D. Rotondi**
**79 State Street**
**Newburyport, MA  01950**

Dated: November 29, 2004

_____
Michele A. Rooke

DEFENDANT'S
EXHIBIT
A

RECORDATION REQUESTED BY:

Family Bank, FSB
153 Merrimack Street
Haverhill, MA 01830

WHEN RECORDED MAIL TO:

Family Bank, FSB
PO Box 1377
Lewiston, ME 04243-1377

04/24/97  9:09 inst. 106
BK 14068 PG 47



SPACE ABOVE THIS LINE IS FOR RECORDER'S USE O

## MORTGAGE

THIS MORTGAGE IS DATED APRIL 18, 1997, between Lisa J. Bayko and Jeffrey L. Bayko, whose address is Graham Avenue, Newbury, MA 01951 (referred to below as "Grantor"); and Family Bank, FSB, whose addn is 153 Merrimack Street, Haverhill, MA 01830 (referred to below as "Lender").

GRANT OF MORTGAGE. For valuable consideration, Grantor grants to Lender with MORTGAGE COVENANTS all of Grantor's right, title, interest in and to the following described real property, together with all existing or subsequently erected or affixed buildings, improvements fixtures; all easements, rights of way, and appurtenances; all water, water rights, watercourses and ditch rights (including stock in utilities with ditc irrigation rights); and all other rights, royalties, and profits relating to the real property, including without limitation all minerals, oil, gas, geothermal similar matters, **located in Essex County, Commonwealth of Massachusetts** (the "Real Property"):

## SEE EXHIBIT "A"

The Real Property or its address is commonly known as 7A Graham Avenue, Newbury, MA 01951.

Grantor presently assigns to Lender all of Grantor's right, title, and interest in and to all leases of the Property and all Rents from the Property. addition, Grantor grants to Lender a Uniform Commercial Code security interest in the Personal Property and Rents.

DEFINITIONS. The following words shall have the following meanings when used in this Mortgage. Terms not otherwise defined in this Mortgage have the meanings attributed to such terms in the Uniform Commercial Code. All references to dollar amounts shall mean amounts in lawful mone the United States of America.

Credit Agreement. The words "Credit Agreement" mean the revolving line of credit agreement dated April 18, 1997, between Lender and Gra with a maximum principal credit limit of $15,000.00. The maturity date of this Mortgage is May 6, 2017. The credit agreeme an open-end credit plan as defined in Massachusetts General Laws, Chapter 140D, Section 1.

Existing Indebtedness. The words "Existing Indebtedness" mean the indebtedness described below in the Existing Indebtedness section of Mortgage.

Grantor. The word "Grantor" means Lisa J. Bayko and Jeffrey L. Bayko. The Grantor is the mortgagor under this Mortgage.

Guarantor. The word "Guarantor" means and includes without limitation each and all of the guarantors, sureties, and accommodation partie connection with the Indebtedness.

Improvements. The word "Improvements" means and includes without limitation all existing and future improvements, buildings, structu mobile homes affixed on the Real Property, facilities, additions, replacements and other construction on the Real Property.

Indebtedness. The word "Indebtedness" means all principal and interest payable under the Credit Agreement and any amounts expended advanced by Lender to discharge obligations of Grantor or expenses incurred by Lender to enforce obligations of Grantor under this Mortga together with interest on such amounts as provided in this Mortgage. Specifically, without limitation, this Mortgage secures a revolving l of credit, which obligates Lender to make advances to Grantor so long as Grantor complies with all the terms of the Credit Agreeme The maximum amount of the line of credit which may be secured at any one time is $15,000.00.

Lender. The word "Lender" means Family Bank, FSB, its successors and assigns. The Lender is the mortgagee under this Mortgage.

Mortgage. The word "Mortgage" means this Mortgage between Grantor and Lender, and includes without limitation all assignments and secu interest provisions relating to the Personal Property and Rents.

Personal Property. The words "Personal Property" mean all equipment, fixtures, and other articles of personal property now or hereafter owr by Grantor, and now or hereafter attached or affixed to the Real Property; together with all accessions, parts, and additions to, all replacemen and all substitutions for, any of such property; and together with all proceeds (including without limitation all insurance proceeds and refunds premiums) from any sale or other disposition of the Property.

Property. The word "Property" means collectively the Real Property and the Personal Property.

Real Property. The words "Real Property" mean the property, interests and rights described above in the "Grant of Mortgage" section.

Related Documents. The words "Related Documents" mean and include without limitation all promissory notes, credit agreements, lc agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, and all other instruments, agreements a documents, whether now or hereafter existing, executed in connection with the Indebtedness.

Rents. The word "Rents" means all present and future rents, revenues, income, issues, royalties, profits, and other benefits derived from t Property.

THIS MORTGAGE, INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY INTEREST IN THE RENTS AND PERSONAL PROPERTY, GIVEN TO SECURE  (1) PAYMENT OF THE INDEBTEDNESS AND  (2) PERFORMANCE OF ALL OBLIGATIONS OF GRANTOR UNDER TH MORTGAGE AND THE RELATED DOCUMENTS. THIS MORTGAGE IS GIVEN AND ACCEPTED ON THE FOLLOWING TERMS:

PAYMENT AND PERFORMANCE. Except as otherwise provided in this Mortgage, Grantor shall pay to Lender all amounts secured by this Mortga as they become due, and shall strictly perform all of Grantor's obligations under this Mortgage.

RECORDATION REQUESTED BY: 
 Family Bank, FSB
 153 Merrimack Street
 Haverhill, MA 01830

WHEN RECORDED MAIL TO:
 Family Bank, FSB
 PO Box 1377
 Lewiston, ME 04243-1377

SPACE ABOVE THIS LINE IS FOR RECORDER'S USE ONLY

# MORTGAGE

THIS MORTGAGE IS DATED APRIL 18, 1997, between Lisa J. Bayko and Jeffrey L. Bayko, whose address is 7A Graham Avenue, Newbury, MA 01951 (referred to below as "Grantor"); and Family Bank, FSB, whose address is 153 Merrimack Street, Haverhill, MA 01830 (referred to below as "Lender").

GRANT OF MORTGAGE. For valuable consideration, Grantor grants to Lender with MORTGAGE COVENANTS all of Grantor's right, title, and interest in and to the following described real property, together with all existing or subsequently erected or affixed buildings, improvements and fixtures; all easements, rights of way, and appurtenances; all water, water rights, watercourses and ditch rights (including stock in utilities with ditch or irrigation rights); and all other rights, royalties, and profits relating to the real property, including without limitation all minerals, oil, gas, geothermal and similar matters, located in Essex County, Commonwealth of Massachusetts (the "Real Property"):

SEE EXHIBIT "A"

The Real Property or its address is commonly known as 7A Graham Avenue, Newbury, MA 01951.

Grantor presently assigns to Lender all of Grantor's right, title, and interest in and to all leases of the Property and all Rents from the Property   In addition, Grantor grants to Lender a Uniform Commercial Code security interest in the Personal Property and Rents.

DEFINITIONS. The following words shall have the following meanings when used in this Mortgage. Terms not otherwise defined in this Mortgage shall have the meanings attributed to such terms in the Uniform Commercial Code. All references to dollar amounts shall mean amounts in lawful money of the United States of America.

Credit Agreement. The words "Credit Agreement" mean the revolving line of credit agreement dated April 18, 1997, between Lender and Grantor with a maximum principal credit limit of $15,000.00. The maturity date of this Mortgage is May 6, 2017. The credit agreement is an open-end credit plan as defined in Massachusetts General Laws, Chapter 140D, Section 1.

Existing Indebtedness. The words "Existing Indebtedness" mean the indebtedness described below in the Existing Indebtedness section of this Mortgage.

Grantor. The word "Grantor" means Lisa J. Bayko and Jeffrey L. Bayko. The Grantor is the mortgagor under this Mortgage.

Guarantor. The word "Guarantor" means and includes without limitation each and all of the guarantors, sureties, and accommodation parties in connection with the Indebtedness.

Improvements. The word "Improvements" means and includes without limitation all existing and future improvements, buildings, structures, mobile homes affixed on the Real Property, facilities, additions, replacements and other construction on the Real Property.

Indebtedness. The word "Indebtedness" means all principal and interest payable under the Credit Agreement and any amounts expended or advanced by Lender to discharge obligations of Grantor or expenses incurred by Lender to enforce obligations of Grantor under this Mortgage, together with interest on such amounts as provided in this Mortgage. Specifically, without limitation, this Mortgage secures a revolving line of credit, which obligates Lender to make advances to Grantor as long as Grantor complies with all the terms of the Credit Agreement. The maximum amount of the line of credit which may be secured at any one time is $15,000.00.

Lender. The word "Lender" means Family Bank, FSB, its successors and assigns. The Lender is the mortgagee under this Mortgage.

Mortgage. The word "Mortgage" means this Mortgage between Grantor and Lender, and includes without limitation all assignments and security interest provisions relating to the Personal Property and Rents.

Personal Property. The words "Personal Property" mean all equipment, fixtures, and other articles of personal property now or hereafter owned by Grantor, and now or hereafter attached or affixed to the Real Property; together with all accessions, parts, and additions to, all replacements of, and all substitutions for, any of such property; and together with all proceeds (including without limitation all insurance proceeds and refunds of premiums) from any sale or other disposition of the Property.

Property. The word "Property" means collectively the Real Property and the Personal Property.

Real Property. The words "Real Property" mean the property, interests and rights described above in the "Grant of Mortgage" section.

Related Documents. The words "Related Documents" mean and include without limitation all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

Rents. The word "Rents" means all present and future rents, revenues, income, issues, royalties, profits, and other benefits derived from the Property.

THIS MORTGAGE, INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY INTEREST IN THE RENTS AND PERSONAL PROPERTY, IS GIVEN TO SECURE (1) PAYMENT OF THE INDEBTEDNESS AND (2) PERFORMANCE OF ALL OBLIGATIONS OF GRANTOR UNDER THIS MORTGAGE AND THE RELATED DOCUMENTS. THIS MORTGAGE IS GIVEN AND ACCEPTED ON THE FOLLOWING TERMS:

PAYMENT AND PERFORMANCE. Except as otherwise provided in this Mortgage, Grantor shall pay to Lender all amounts secured by this Mortgage as they become due, and shall strictly perform all of Grantor's obligations under this Mortgage.

POSSESSION AND MAINTENANCE OF THE PROPERTY. Grantor agrees that Grantor's possession and use of the Property shall be governed by the following provisions:

Possession and Use. Until in default, Grantor may remain in possession and control of and operate and manage the Property and collect the Rents from the Property.

Duty to Maintain. Grantor shall maintain the Property in tenantable condition and promptly perform all repairs, replacements, and maintenance necessary to preserve its value.

Hazardous Substances. The terms "hazardous waste," "hazardous substance," "disposal," "release," and "threatened release," as used in this Mortgage, shall have the same meanings as set forth in the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., or other applicable state or Federal laws, rules, or regulations adopted pursuant to any of the foregoing. The terms "hazardous waste" and "hazardous substance" shall also include, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos. Grantor represents and warrants to Lender that: (a) During the period of Grantor's ownership of the Property, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any hazardous waste or substance by any person on, under, about or from the Property; (b) Grantor has no knowledge of, or reason to believe that there has been, except as previously disclosed to and acknowledged by Lender in writing, (i) any use, generation, manufacture, storage, treatment, disposal, release, or threatened release of any hazardous waste or substance on, under, about or from the Property by any prior owners or occupants of the Property or (ii) any actual or threatened litigation or claims of any kind by any person relating to such matters; and (c) Except as previously disclosed to and acknowledged by Lender in writing, (i) neither Grantor nor any tenant, contractor, agent or other authorized user of the Property shall use, generate, manufacture, store, treat, dispose of, or release any hazardous waste or substance on, under, about or from the Property and (ii) any such activity shall be conducted in compliance with all applicable federal, state, and local laws, regulations and ordinances, including without limitation those laws,


regulations, and ordinances described above. Grantor authorizes Lender and its agents to enter upon the Property to make such inspections and tests, at Grantor's expense, as Lender may deem appropriate to determine compliance of the Property with this section of the Mortgage. In addition, Grantor represents and warrants that the Property does not contain urea formaldehyde foam insulation or urea formaldehyde resin in violation of any Massachusetts state laws. Any inspections or tests made by Lender shall be for Lender's purposes only and shall not be construed to create any responsibility or liability on the part of Lender to Grantor or to any other person. The representations and warranties contained herein are based on Grantor's due diligence in investigating the Property for hazardous waste and hazardous substances. Grantor hereby (a) releases and waives any future claims against Lender for indemnity or contribution in the event Grantor becomes liable for cleanup or other costs under any such laws, and (b) agrees to indemnify and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Mortgage or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release occurring prior to Grantor's ownership or interest in the Property, whether or not the same was or should have been known to Grantor. The provisions of this section of the Mortgage, including the obligation to indemnify, shall survive the payment of the indebtedness and the satisfaction and reconveyance of the lien of this Mortgage and shall not be affected by Lender's acquisition of any interest in the Property, whether by foreclosure or otherwise.

**Nuisance, Waste.** Grantor shall not cause, conduct or permit any nuisance nor commit, permit, or suffer any stripping of or waste on or to the Property or any portion of the Property. Without limiting the generality of the foregoing, Grantor will not remove, or grant to any other party the right to remove, any timber, minerals (including oil and gas), soil, gravel or rock products without the prior written consent of Lender.

**Removal of Improvements.** Grantor shall not demolish or remove any improvements from the Real Property without the prior written consent of Lender. As a condition to the removal of any improvements, Lender may require Grantor to make arrangements satisfactory to Lender to replace such improvements with improvements of at least equal value.

**Lender's Right to Enter.** Lender and its agents and representatives may enter upon the Real Property at all reasonable times to attend to Lender's interests and to inspect the Property for purposes of Grantor's compliance with the terms and conditions of this Mortgage.

**Compliance with Governmental Requirements.** Grantor shall promptly comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the use or occupancy of the Property. Grantor may contest in good faith any such law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Grantor has notified Lender in writing prior to doing so and so long as, in Lender's sole opinion, Lender's interests in the Property are not jeopardized. Lender may require Grantor to post adequate security or a surety bond, reasonably satisfactory to Lender, to protect Lender's interest.

**Duty to Protect.** Grantor agrees neither to abandon nor leave unattended the Property. Grantor shall do all other acts, in addition to those acts set forth above in this section, which from the character and use of the Property are reasonably necessary to protect and preserve the Property.

**DUE ON SALE – CONSENT BY LENDER.** Lender may, at its option, declare immediately due and payable all sums secured by this Mortgage upon the sale or transfer, without the Lender's prior written consent, of all or any part of the Real Property, or any interest in the Real Property. A "sale or transfer" means the conveyance of Real Property or any right, title or interest therein; whether legal, beneficial or equitable; whether voluntary or involuntary; whether by outright sale, deed, installment sale contract, land contract, contract for deed, leasehold interest with a term greater than three (3) years, lease-option contract, or by sale, assignment, or transfer of any beneficial interest in or to any land trust holding title to the Real Property, or by any other method of conveyance of Real Property interest. If any Grantor is a corporation, partnership or limited liability company, transfer also includes any change in ownership of more than twenty-five percent (25%) of the voting stock, partnership interests or limited liability company interests, as the case may be, of Grantor. However, this option shall not be exercised by Lender if such exercise is prohibited by federal law or by Massachusetts law.

**TAXES AND LIENS.** The following provisions relating to the taxes and liens on the Property are a part of this Mortgage.

**Payment.** Grantor shall pay when due (and in all events prior to delinquency) all taxes, payroll taxes, special taxes, assessments, water charges and sewer service charges levied against or on account of the Property, and shall pay when due all claims for work done on or for services rendered or material furnished to the Property. Grantor shall maintain the Property free of all liens having priority over or equal to the interest of Lender under this Mortgage, except for the lien of taxes and assessments not due, except for the Existing Indebtedness referred to below, and except as otherwise provided in the following paragraph.

**Right To Contest.** Grantor may withhold payment of any tax, assessment, or claim in connection with a good faith dispute over the obligation to pay, so long as Lender's interest in the Property is not jeopardized. If a lien arises or is filed as a result of nonpayment, Grantor shall within fifteen (15) days after the lien arises or, if a lien is filed, within fifteen (15) days after Grantor has notice of the filing, secure the discharge of the lien, or if requested by Lender, deposit with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender in an amount sufficient to discharge the lien plus any costs and attorneys' fees or other charges that could accrue as a result of a foreclosure or sale under the lien. In any contest, Grantor shall defend itself and Lender and shall satisfy any adverse judgment before enforcement against the Property. Grantor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings.

**Evidence of Payment.** Grantor shall upon demand furnish to Lender satisfactory evidence of payment of the taxes or assessments and shall authorize the appropriate governmental official to deliver to Lender at any time a written statement of the taxes and assessments against the Property.

**Notice of Construction.** Grantor shall notify Lender at least fifteen (15) days before any work is commenced, any services are furnished, or any materials are supplied to the Property, if any mechanic's lien, materialmen's lien, or other lien could be asserted on account of the work, services, or materials. Grantor will upon request of Lender furnish to Lender advance assurances satisfactory to Lender that Grantor can and will pay the cost of such improvements.

**PROPERTY DAMAGE INSURANCE.** The following provisions relating to insuring the Property are a part of this Mortgage.

**Maintenance of Insurance.** Grantor shall procure and maintain policies of fire insurance with standard extended coverage endorsements on a replacement basis for the full insurable value covering all improvements on the Real Property in an amount sufficient to avoid application of any coinsurance clause, and with a standard mortgagee clause in favor of Lender. Policies shall be written by such insurance companies and in such form as may be reasonably acceptable to Lender. Grantor shall deliver to Lender certificates of coverage from each insurer containing a stipulation that coverage will not be cancelled or diminished without a minimum of thirty (30) days' prior written notice to Lender and not containing any disclaimer of the insurer's liability for failure to give such notice. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Grantor or any other person. Should the Real Property at any time become located in an area designated by the Director of the Federal Emergency Management Agency as a special flood hazard area, Grantor agrees to obtain and maintain Federal Flood Insurance for the full unpaid principal balance of the loan, up to the maximum policy limits set under the National Flood Insurance Program, or as otherwise required by Lender, and to maintain such insurance for the term of the loan.

**Application of Proceeds.** Grantor shall promptly notify Lender of any loss or damage to the Property. Lender may make proof of loss if Grantor fails to do so within fifteen (15) days of the casualty. Whether or not Lender's security is impaired, Lender may, at its election, apply the proceeds to the reduction of the Indebtedness, payment of any lien affecting the Property, or the restoration and repair of the Property. If Lender elects to apply the proceeds to restoration and repair, Grantor shall repair or replace the damaged or destroyed Improvements in a manner satisfactory to Lender. Lender shall, upon satisfactory proof of such expenditure, pay or reimburse Grantor from the proceeds for the reasonable cost of repair or restoration if Grantor is not in default hereunder. Any proceeds which have not been disbursed within 180 days after their receipt and which Lender has not committed to the repair or restoration of the Property shall be used first to pay any amount owing to Lender under this Mortgage, then to prepay accrued interest, and the remainder, if any, shall be applied to the principal balance of the Indebtedness. If Lender holds any proceeds after payment in full of the Indebtedness, such proceeds shall be paid to Grantor.

**Unexpired Insurance at Sale.** Any unexpired insurance shall inure to the benefit of, and pass to, the purchaser of the Property covered by this Mortgage at any trustee's sale or other sale held under the provisions of this Mortgage, or at any foreclosure sale of such Property.

**Compliance with Existing Indebtedness.** During the period in which any Existing Indebtedness described below is in effect, compliance with the insurance provisions contained in the instrument evidencing such Existing Indebtedness shall constitute compliance with the insurance provisions under this Mortgage, to the extent compliance with the terms of this Mortgage would constitute a duplication of insurance requirement. If any proceeds from the insurance become payable on loss, the provisions in this Mortgage for division of proceeds shall apply only to that portion of the proceeds not payable to the holder of the Existing Indebtedness.

**EXPENDITURES BY LENDER.** If Grantor fails to comply with any provision of this Mortgage, including any obligation to maintain Existing Indebtedness in good standing as required below, or if any action or proceeding is commenced that would materially affect Lender's interests in the Property, Lender on Grantor's behalf may, but shall not be required to, take any action that Lender deems appropriate. Any amount that Lender expends in so doing will bear interest at the rate provided for in the Credit Agreement from the date incurred or paid by Lender to the date of repayment by Grantor. All such expenses, at Lender's option, will (a) be payable on demand, (b) be added to the balance of the credit line and be apportioned among and be payable with any installment payments to become due during either (i) the term of any applicable insurance policy or (ii) the remaining term of the Credit Agreement, or (c) be treated as a balloon payment which will be due and payable at the Credit Agreement's maturity. This Mortgage also will secure payment of these amounts. The rights provided for in this paragraph shall be in addition to any other rights or any remedies to which Lender may be entitled on account of the default. Any such action by Lender shall not be construed as curing the default so as to bar Lender from any remedy

04-18-1997
Loan No 8510326156

**MORTGAGE**
(Continued)

Page 3

that it otherwise would have had.

**WARRANTY; DEFENSE OF TITLE.** The following provisions relating to ownership of the Property are a part of this Mortgage.

**Title.** Grantor warrants that: (a) Grantor holds good and marketable title of record to the Property in fee simple, free and clear of all liens and encumbrances other than those set forth in the Real Property description or in the Existing Indebtedness section below or in any title insurance policy, title report, or final title opinion issued in favor of, and accepted by, Lender in connection with this Mortgage, and (b) Grantor has the full right, power, and authority to execute and deliver this Mortgage to Lender.

**Defense of Title.** Subject to the exception in the paragraph above, Grantor warrants and will forever defend the title to the Property against the lawful claims of all persons. In the event any action or proceeding is commenced that questions Grantor's title or the interest of Lender under this Mortgage, Grantor shall defend the action at Grantor's expense. Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of Lender's own choice, and Grantor will deliver, or cause to be delivered, to Lender such instruments as Lender may request from time to time to permit such participation.

**Compliance With Laws.** Grantor warrants that the Property and Grantor's use of the Property complies with all existing applicable laws, ordinances, and regulations of governmental authorities.

**EXISTING INDEBTEDNESS.** The following provisions concerning existing Indebtedness (the "Existing Indebtedness") are a part of this Mortgage.

**Existing Lien.** The lien of this Mortgage securing the Indebtedness may be secondary and inferior to the lien securing payment of an existing obligation with an account number of 8230043346 to Family Bank, FSB described as: Mortgage Loan dated May 20, 1993, and recorded in Book 11897 at Page 525. The existing obligation has a current principal balance of approximately $94,611.15 and is in the original principal amount of $99,000.00. Grantor expressly covenants and agrees to pay, or see to the payment of, the Existing Indebtedness and to prevent any default on such indebtedness, any default under the instruments evidencing such indebtedness, or any default under any security documents for such indebtedness.

**No Modification.** Grantor shall not enter into any agreement with the holder of any mortgage, deed of trust, or other security agreement which has priority over this Mortgage by which that agreement is modified, amended, extended, or renewed without the prior written consent of Lender. Grantor shall neither request nor accept any future advances under any such security agreement without the prior written consent of Lender.

**CONDEMNATION.** The following provisions relating to condemnation of the Property are a part of this Mortgage.

**Application of Net Proceeds.** If all or any part of the Property is condemned by eminent domain proceedings or by any proceeding or purchase in lieu of condemnation, Lender may at its election require that all or any portion of the net proceeds of the award be applied to the Indebtedness or the repair or restoration of the Property. The net proceeds of the award shall mean the award after payment of all reasonable costs, expenses, and attorneys' fees incurred by Lender in connection with the condemnation.

**Proceedings.** If any proceeding in condemnation is filed, Grantor shall promptly notify Lender in writing, and Grantor shall promptly take such steps as may be necessary to defend the action and obtain the award. Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of its own choice, and Grantor will deliver or cause to be delivered to Lender such instruments as may be requested by it from time to time to permit such participation.

**IMPOSITION OF TAXES, FEES AND CHARGES BY GOVERNMENTAL AUTHORITIES.** The following provisions relating to governmental taxes, fees and charges are a part of this Mortgage:

**Current Taxes, Fees and Charges.** Upon request by Lender, Grantor shall execute such documents in addition to this Mortgage and take whatever other action is requested by Lender to perfect and continue Lender's lien on the Real Property. Grantor shall reimburse Lender for all taxes, as described below, together with all expenses incurred in recording, perfecting or continuing this Mortgage, including without limitation all taxes, fees, documentary stamps, and other charges for recording or registering this Mortgage.

**Taxes.** The following shall constitute taxes to which this section applies: (a) a specific tax upon this type of Mortgage or upon all or any part of the Indebtedness secured by this Mortgage; (b) a specific tax on Grantor which Grantor is authorized or required to deduct from payments on the Indebtedness secured by this type of Mortgage; (c) a tax on this type of Mortgage chargeable against the Lender or the holder of the Credit Agreement; and (d) a specific tax on all or any portion of the Indebtedness or on payments of principal and interest made by Grantor.

**Subsequent Taxes.** If any tax to which this section applies is enacted subsequent to the date of this Mortgage, this event shall have the same effect as an Event of Default (as defined below), and Lender may exercise any or all of its available remedies for an Event of Default as provided below unless Grantor either: (a) pays the tax before it becomes delinquent, or (b) contests the tax as provided above in the Taxes and Liens section and deposits with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender.

**SECURITY AGREEMENT; FINANCING STATEMENTS.** The following provisions relating to this Mortgage as a security agreement are a part of this Mortgage.

**Security Agreement.** This instrument shall constitute a security agreement to the extent any of the Property constitutes fixtures or other personal property, and Lender shall have all of the rights of a secured party under the Uniform Commercial Code as amended from time to time.

**Security Interest.** Upon request by Lender, Grantor shall execute financing statements and take whatever other action is requested by Lender to perfect and continue Lender's security interest in the Rents and Personal Property. In addition to recording this Mortgage in the real property records, Lender may, at any time and without further authorization from Grantor, file executed counterparts, copies or reproductions of this Mortgage as a financing statement. Grantor shall reimburse Lender for all expenses incurred in perfecting or continuing this security interest. Upon default, Grantor shall assemble the Personal Property in a manner and at a place reasonably convenient to Grantor and Lender and make it available to Lender within three (3) days after receipt of written demand from Lender.

**Addresses.** The mailing addresses of Grantor (debtor) and Lender (secured party), from which information concerning the security interest granted by this Mortgage may be obtained (each as required by the Uniform Commercial Code), are as stated on the first page of this Mortgage.

**FURTHER ASSURANCES; ATTORNEY-IN-FACT.** The following provisions relating to further assurances and attorney-in-fact are a part of this Mortgage.

**Further Assurances.** At any time, and from time to time, upon request of Lender, Grantor will make, execute and deliver, or will cause to be made, executed or delivered, to Lender or to Lender's designee, and when requested by Lender, cause to be filed, recorded, refiled, or rerecorded, as the case may be, at such times and in such offices and places as Lender may deem appropriate, any and all such mortgages, deeds of trust, security deeds, security agreements, financing statements, continuation statements, instruments of further assurance, certificates, and other documents as may, in the sole opinion of Lender, be necessary or desirable in order to effectuate, complete, perfect, continue, or preserve (a) the obligations of Grantor under the Credit Agreement, this Mortgage, and the Related Documents, and (b) the liens and security interests created by this Mortgage on the Property, whether now owned or hereafter acquired by Grantor. Unless prohibited by law or agreed to the contrary by Lender in writing, Grantor shall reimburse Lender for all costs and expenses incurred in connection with the matters referred to in this paragraph.

**Attorney-in-Fact.** If Grantor fails to do any of the things referred to in the preceding paragraph, Lender may do so for and in the name of Grantor and at Grantor's expense. For such purposes, Grantor hereby irrevocably appoints Lender as Grantor's attorney-in-fact for the purpose of making, executing, delivering, filing, recording, and doing all other things as may be necessary or desirable, in Lender's sole opinion, to accomplish the matters referred to in the preceding paragraph.

**FULL PERFORMANCE.** If Grantor pays all the Indebtedness when due, terminates the credit line account, and otherwise performs all the obligations imposed upon Grantor under this Mortgage, Lender shall execute and deliver to Grantor a suitable satisfaction of this Mortgage and suitable statements of termination of any financing statement on file evidencing Lender's security interest in the Rents and the Personal Property. Grantor will pay, if permitted by applicable law, any reasonable termination fee as determined by Lender from time to time.

**DEFAULT.** Each of the following, at the option of Lender, shall constitute an event of default ("Event of Default") under this Mortgage: (a) Grantor commits fraud or makes a material misrepresentation at any time in connection with the credit line account. This can include, for example, a false statement about Grantor's income, assets, liabilities, or any other aspects of Grantor's financial condition. (b) Grantor does not meet the repayment terms of the credit line account. (c) Grantor's action or inaction adversely affects the collateral for the credit line account or Lender's rights in the collateral. This can include, for example, failure to maintain required insurance, waste or destructive use of the dwelling, failure to pay taxes, death of all persons liable on the account, transfer of title or sale of the dwelling, creation of a lien on the dwelling without Lender's permission, foreclosure by the holder of another lien, or the use of funds or the dwelling for prohibited purposes.

**RIGHTS AND REMEDIES ON DEFAULT.** This Mortgage is upon the **STATUTORY CONDITION** for any breach of which Lender, the mortgagee, shall have the **STATUTORY POWER OF SALE.** In addition, upon the occurrence of any Event of Default and at any time thereafter, Lender, at its option, may exercise any one or more of the following rights and remedies, in addition to any other rights or remedies provided by law:

**Accelerate Indebtedness.** Lender shall have the right at its option without notice to Grantor to declare the entire Indebtedness immediately due and payable, including any prepayment penalty which Grantor would be required to pay.

**Foreclosure.** Lender may invoke the **STATUTORY POWER OF SALE,** in which case Lender shall mail a copy of a notice of sale to Grantor and

04-18-1997
Loan No 8510326150

  **MORTGAGE**
(Continued)  

Page 6

to any other person required by applicable law, in the manner provided by applicable law. Lender shall publish the notice of sale, and the Property shall be sold in the manner prescribed by applicable law.

**UCC Remedies.** With respect to all or any part of the Personal Property, Lender shall have all the rights and remedies of a secured party under the Uniform Commercial Code.

**Collect Rents.** Lender shall have the right, without notice to Grantor, to take possession of the Property and collect the Rents, including amounts past due and unpaid, and apply the net proceeds, over and above Lender's costs, against the Indebtedness. In furtherance of this right, Lender may require any tenant or other user of the Property to make payments of rent or use fees directly to Lender. If the Rents are collected by Lender, then Grantor irrevocably designates Lender as Grantor's attorney-in-fact to endorse instruments received in payment thereof in the name of Grantor and to negotiate the same and collect the proceeds. Payments by tenants or other users to Lender in response to Lender's demand shall satisfy the obligations for which the payments are made, whether or not any proper grounds for the demand existed. Lender may exercise its rights under this subparagraph either in person, by agent, or through a receiver.

**Appoint Receiver.** Lender shall have the right to have a receiver appointed to take possession of all or any part of the Property, with the power to protect and preserve the Property, to operate the Property preceding foreclosure or sale, and to collect the Rents from the Property and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Property exceeds the Indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver.

**Deficiency Judgment.** If permitted by applicable law, Lender may obtain a judgment for any deficiency remaining in the Indebtedness due to Lender after application of all amounts received from the exercise of the rights provided in this section.

**Tenancy at Sufferance.** If Grantor remains in possession of the Property after the Property is sold as provided above or Lender otherwise becomes entitled to possession of the Property upon default of Grantor, Grantor shall become a tenant at sufferance of Lender or the purchaser of the Property and shall, at Lender's option, either (a) pay a reasonable rental for the use of the Property, or (b) vacate the Property immediately upon the demand of Lender.

**Other Remedies.** Lender shall have all other rights and remedies provided in this Mortgage or the Credit Agreement or available at law or in equity.

**Sale of the Property.** To the extent permitted by applicable law, Grantor hereby waives any and all right to have the property marshalled. In exercising its rights and remedies, Lender shall be free to sell all or any part of the Property together or separately, in one sale or by separate sales. Lender shall be entitled to bid at any public sale on all or any portion of the Property.

**Notice of Sale.** Lender shall give Grantor reasonable notice of the time and place of any public sale of the Personal Property or of the time after which any private sale or other intended disposition of the Personal Property is to be made. Reasonable notice shall mean notice given at least fourteen (14) days before the time of the sale or disposition.

**Waiver; Election of Remedies.** A waiver by any party of a breach of a provision of this Mortgage shall not constitute a waiver of or prejudice the party's rights otherwise to demand strict compliance with that provision or any other provision. Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or take action to perform an obligation of Grantor under this Mortgage after failure of Grantor to perform shall not affect Lender's right to declare a default and exercise its remedies under this Mortgage.

**Attorneys' Fees; Expenses.** If Lender institutes any suit or action to enforce any of the terms of this Mortgage, Lender shall be entitled to recover such sum as the court may adjudge reasonable as attorneys' fees at trial and on any appeal. Whether or not any court action is involved, all reasonable expenses incurred by Lender that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the Indebtedness payable on demand and shall bear interest from the date of expenditure until repaid at the rate provided for in the Credit Agreement. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses whether or not there is a lawsuit, including attorneys' fees for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals and any anticipated post-judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal fees, and title insurance, to the extent permitted by applicable law. Grantor also will pay any court costs, in addition to all other sums provided by law.

**NOTICES TO GRANTOR AND OTHER PARTIES.** Any notice under this Mortgage, including without limitation any notice of default and any notice of sale to Grantor, shall be in writing, may be be sent by telefacsimile, and shall be effective when actually delivered, or when deposited with a nationally recognized overnight courier, or, if mailed, shall be deemed effective when deposited in the United States mail first class, certified or registered mail, postage prepaid, directed to the addresses shown near the beginning of this Mortgage. Any party may change its address for notices under this Mortgage by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. All copies of notices of foreclosure from the holder of any lien which has priority over this Mortgage shall be sent to Lender's address, as shown near the beginning of this Mortgage. For notice purposes, Grantor agrees to keep Lender informed at all times of Grantor's current address.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Mortgage:

**Amendments.** This Mortgage, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Mortgage. No alteration of or amendment to this Mortgage shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Applicable Law.** This Mortgage has been delivered to Lender and accepted by Lender in the Commonwealth of Massachusetts. This Mortgage shall be governed by and construed in accordance with the laws of the Commonwealth of Massachusetts.

**Caption Headings.** Caption headings in this Mortgage are for convenience purposes only and are not to be used to interpret or define the provisions of this Mortgage.

**Merger.** There shall be no merger of the interest or estate created by this Mortgage with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

**Multiple Parties.** All obligations of Grantor under this Mortgage shall be joint and several, and all references to Grantor shall mean each and every Grantor. This means that each of the persons signing below is responsible for all obligations in this Mortgage.

**Release of Estate of Homestead.** Grantor hereby releases any estate of homestead as to all Indebtedness secured by this Mortgage.

**Severability.** If a court of competent jurisdiction finds any provision of this Mortgage to be invalid or unenforceable as to any person or circumstance, such finding shall not render that provision invalid or unenforceable as to any other persons or circumstances. If feasible, any such offending provision shall be deemed to be modified to be within the limits of enforceability or validity; however, if the offending provision cannot be so modified, it shall be stricken and all other provisions of this Mortgage in all other respects shall remain valid and enforceable.

**Successors and Assigns.** Subject to the limitations stated in this Mortgage on transfer of Grantor's interest, this Mortgage shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Property becomes vested in a person other than Grantor, Lender, without notice to Grantor, may deal with Grantor's successors with reference to this Mortgage and the Indebtedness by way of forbearance or extension without releasing Grantor from the obligations of this Mortgage or liability under the Indebtedness.

**Time is of the Essence.** Time is of the essence in the performance of this Mortgage.

**Waivers and Consents.** Lender shall not be deemed to have waived any rights under this Mortgage (or under the Related Documents) unless such waiver is in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by any party of a provision of this Mortgage shall not constitute a waiver of or prejudice the party's right otherwise to demand strict compliance with that provision or any other provision. No prior waiver by Lender, nor any course of dealing between Lender and Grantor, shall constitute a waiver of any of Lender's rights or any of Grantor's obligations as to any future transactions. Whenever consent by Lender is required in this Mortgage, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required.

**EACH GRANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS MORTGAGE, AND EACH GRANTOR AGREES TO ITS TERMS. THIS MORTGAGE IS EXECUTED UNDER SEAL.**

GRANTOR:

X _____     X _____
Lisa J. Beyko                  Jeffrey L. Beyko

04-18-1997
Loan No 851032

**MORTGAGE**
(Continued)

Page 5

Signed, acknowledged and delivered in the presence of:

X _____
   Witness

X _____
   Witness

---

## INDIVIDUAL ACKNOWLEDGMENT

COMMONWEALTH OF Massachusetts )
                                ) ss
COUNTY OF Essex                )

On this day before me, the undersigned Notary Public, personally appeared Lisa J. Bayko and Jeffrey L. Bayko, to me known to be the individuals described in and who executed the Mortgage, and acknowledged that they signed the Mortgage as their free and voluntary act and deed, for the uses and purposes therein mentioned.

Given under my hand and official seal this ___18th___ day of ___April___, 19 97.

By _____     Residing at 11 Orchard La, Topsfield MA 0198

Notary Public in and for the Commonwealth of Massachusetts   My commission expires My Commission Expires Nov. 24, 2001

(Affix Notarial Seal)

LASER PRO, Reg. U.S. Pat. & T.M. Off., Ver. 3.22b (c) 1997 CFI ProServices, Inc. All rights reserved. [MA-G03 BAYKO.LN L3.OVL]



COMMONWEALTH OF MASSACHUSETTS
DEPARTMENT OF THE TRIAL COURT

ESSEX, ss.

SUPERIOR COURT DEPARTMENT
CIVIL ACTION NO. ESCV2004-01855

GMAC MORTGAGE CORPORATION,    )
  Plaintiff,                             )
                                  )
vs.                                 )
                                  )
JEFFREY L. BAYKO, SR., LISA J.    )
BAYKO, HELEN E. BAYKO,        )
MICHAEL J. BAYKO, BANKNORTH    )    **BANKNORTH, N.A.'S AFFIDAVIT IN**
GROUP, HANS R. HAILEY, CHARLES   )    **SUPPORT OF MOTION FOR**
D. ROTONDI, COMMONWEALTH OF   )    **SUMMARY JUDGMENT**
MASSACHUSETTS DEPARTMENT     )
OF REVENUE, THE UNITED STATES   )
OF AMERICA, GARY EVANS,       )
CHRISTINE ANN FARO, AND JOHN   )
AQUINO,                           )
  Defendants.                 )

I, Heather McCubrey, being duly sworn, hereby depose and say:

1.      I am a Bank Officer for the Defendant, Banknorth, N.A., and I am familiar with the facts of this matter.

2.      On or about April 18, 1997, Jeffrey L. Bayko, Sr. and Lisa J. Bayko, entered into a Mortgage Agreement with Family Savings Bank. This Mortgage was secured by property located at 7A Graham Avenue, Newbury, Massachusetts.

3.      On April 24, 1997, Family Savings Bank recorded said Mortgage in the Essex County Registry of Deeds in Book 14068, Page 475.

4.      Banknorth, N.A. is successor in interest to Family Savings Bank.

5.      Upon information and belief, on or about March 12, 2004, the property was foreclosed upon and sold by public auction by GMAC.

247333-1

6.    Upon information and belief, after satisfaction of all debt owed to GMAC, there is a surplus of $186,742.59 from the proceeds of that foreclosure sale.

7.    Banknorth, N.A. is the holder of the senior mortgage on the subject property.

8.    Banknorth, N.A. has priority over any remaining lien holders on the Property, by virtue of being in senior position at the registry.

9.    Banknorth, N.A.'s claim is in the present amount of $16,156.25 plus attorneys fees and costs anticipated to be approximately $3,500.00.

*Signed under the pains and penalties of perjury this* ___19th___ *day of November 2004.*

Heather McCubrey
**BANKNORTH, N.A.**

SARAH SMITH
Notary Public, Maine
Commission Expires July 14, 2011

11-19-31



COMMONWEALTH OF MASSACHUSETTS
DEPARTMENT OF THE TRIAL COURT

ESSEX, ss.                                      SUPERIOR COURT DEPARTMENT
                                                CIVIL ACTION NO. ESCV2004-01855

GMAC MORTGAGE CORPORATION,              )
   Plaintiff,                            )
                                        )
vs.                                     )
                                        )
JEFFREY L. BAYKO, SR., LISA J.          )
BAYKO, HELEN E. BAYKO,                  )
MICHAEL J. BAYKO, BANKNORTH             )     **BANKNORTH, N.A.'S AFFIDAVIT IN**
GROUP, HANS R. HAILEY, CHARLES          )     **SUPPORT OF MOTION FOR**
D. ROTONDI, COMMONWEALTH OF             )     **SUMMARY JUDGMENT**
MASSACHUSETTS DEPARTMENT                )
OF REVENUE, THE UNITED STATES           )
OF AMERICA, GARY EVANS,                 )
CHRISTINE ANN FARO, AND JOHN            )
AQUINO,                                 )
   Defendants.                           )

I, Heather McCubrey, being duly sworn, hereby depose and say:

1.    I am a Bank Officer for the Defendant, Banknorth, N.A., and I am familiar with the facts of this matter.

2.    On or about April 18, 1997, Jeffrey L. Bayko, Sr. and Lisa J. Bayko, entered into a Mortgage Agreement with Family Savings Bank. This Mortgage was secured by property located at 7A Graham Avenue, Newbury, Massachusetts.

3.    On April 24, 1997, Family Savings Bank recorded said Mortgage in the Essex County Registry of Deeds in Book 14068, Page 475.

4.    Banknorth, N.A. is successor in interest to Family Savings Bank.

5.    Upon information and belief, on or about March 12, 2004, the property was foreclosed upon and sold by public auction by GMAC.

247333-1

6.    Upon information and belief, after satisfaction of all debt owed to GMAC, there is a surplus of $186,742.59 from the proceeds of that foreclosure sale.

7.    Banknorth, N.A. is the holder of the senior mortgage on the subject property.

8.    Banknorth, N.A. has priority over any remaining lien holders on the Property, by virtue of being in senior position at the registry.

9.    Banknorth, N.A.'s claim is in the present amount of $16,156.25 plus attorneys fees and costs anticipated to be approximately $3,500.00.

*Signed under the pains and penalties of perjury this* ___19th___ *day of November 2004.*

Heather McCubrey
**BANKNORTH, N.A.**

SARAH SMITH
Notary Public, Maine
My Commission Expires July 14, 2011
11-19-31

## CERTIFICATE OF SERVICE

I, Michele A. Rooke, hereby certify that I served a copy of the foregoing document on the parties to the case by mailing a copy of the same postage prepaid to:

David M. Rosen, Esquire
Harmon Law Offices, P.C.
P.O. Box 610389
Newton Highlands, MA 02461-0389

Jeffrey L. Bayko, Sr.
c/o Attorney Gary Evans
58 Main Street
Topsfield, MA 01983

Lisa J. Bayko
c/o Attorney Charles D. Rotondi
79 State Street
Newburyport, MA 01950

Helen E. Bayko
c/o Attorney Timothy Sullivan
451 Andover Street, Suite 185
North Andover, MA 01845

Michael J. Bayko
c/o Attorney Timothy Sullivan
451 Andover Street, Suite 185
North Andover, MA 01845

Hans R. Hailey
225 Friend Street
Boston, MA 02114

Commonwealth of Massachusetts
Department of Revenue
Collections Bureau
P.O. Box 7021
Boston, MA 02204

The United States of America
Internal Revenue Services
P.O. Box 9112
Stop 20800
Boston, MA 02203

Gary Evans
58 Main Street
Topsfield, MA 01983

Christine Ann Faro
79 State Street
Newburyport, MA 01950

John Aquino
Anderson & Aquino, LLP
260 Franklin Street
Boston, MA 02110

Attorney Charles D. Rotondi
79 State Street
Newburyport, MA 01950

Dated: November 22, 2004

_____
Michele A. Rooke

247333-1                                    3