IN THE UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 04-12448GAO

```
_____
                                         )
GMAC MORTGAGE CORPORATION,               )
        Plaintiff                        )
v.                                       )
                                         )
JEFFREY L. BAYKO, SR., LISA J. BAYKO,    )
HELEN E. BAYKO, MICHAEL J. BAYKO,        )
BANKNORTH GROUP, HANS R. HAILEY,         )
CHARLES D. ROTONDI, COMMONWEALTH         )
OF MASSACHUSETTS DEPARTMENT OF           )
REVENUE, THE UNITED STATES OF            )
AMERICA, GARY EVANS, CHRISTINE ANN       )
FARO, AND JOHN AQUINO,                   )
        Defendants                       )
_____)
```

OPPOSITION
TO
COMMONWEALTH OF MASSACHUSETTS
MOTION TO DISMISS ENTIRE CASE

SUMMARY OF CASE

Michael and Helen Bayko are both in their eighties. When their son, Jeffrey Bayko, married Lisa Bayko they gave him the land next to their house to build on. Before she filed divorce, Lisa Bayko asked for and received an easement over their land for her driveway.

In the aftermath of an incredibly nasty divorce, Michael and Helen Bayko loaned their son money which he used to pay his child support and attorneys' fees. They prudently secured these loans with mortgages on his only asset, his interest in his home. (*See generally, Lisa J. Bayko v. Jeffrey L. Bayko, Sr., Essex Probate and Family Court Docket # 01D 0875 DV1.*)

Lisa Bayko and her attorneys (acting on their own behalf as parties seeking to collect on attorneys' liens) originally tried to revoke the elders' mortgages by means ex-parte motion in the divorce. (The elders have never been a party to the divorce.) On August 21, 2003, the trial judge, John C. Cronin, J., denied their motion and found that the matter would be better decided in an equity action 'which is alleged to be pending'.

In fact, there was an equity action pending. On, or about, August 13, 2003, Lisa J. Bayko filed a suit in equity titled <u>Complaint in Equity to Set Aside Fraudulent Conveyance, to Declare the Mortgages Between Jeffrey L. Bayko and Helen & Michael Bayko Null and Void and to Enforce Terms of a Judgement of This Court.</u>  *See Lisa J. Bayko v. Jeffrey L. Bayko, Sr., Helen Bayko & Michael Bayko, Essex Probate and Family Court Docket No. 03 # 0076GC1*.  Michael and Helen Bayko were served a Summons and properly joined in the equity case.

August 27, 2003, Michael and Helen Bayko raised the defense of subject matter jurisdiction by serving a Motion to Dismiss upon Lisa Bayko. They attempted to have it heard by the Probate and Family Court at the first hearing scheduled for other motions on September 10, 2003. They renewed their motion to dismiss at subsequent hearings and, slightly more than a year later, September 15, 2004, the Probate and Family Court dismissed the case for lack of subject matter jurisdiction. The judge further ordered that GMAC file an Interpleader in Superior Court.

Lisa Bayko had subpoenaed records from Michael and Helen Bayko to the original September 10, 2003 hearing. A chalk summarizing those records and prepared for the September 10, 2003 hearing is attached hereto as Exhibit A. It is important to note that from that date forward, Lisa Bayko's fraudulent transfer claim has morphed into a vague, semi-articulated assertion that Lisa Bayko's unrecorded claim for future child support, a claim based on a Settlement Agreement that Michael and Helen Bayko were never a party to, somehow trumps Michael and Helen Bayko's mortgages.

Nevertheless, matters related to the divorce between Jeffrey and Lisa continued. They came to a

boil in late August and early September of 2004. As Judge Cronin was on medical leave, Judge Peter DiGangi heard a Contempt against Jeffrey in his divorce case. From the record it appears that Jeffrey did not appear. Judge DiGangi, in his frustration, briefly held Jeffrey's attorney Gary Evans in contempt. In addition, one week after Judge Cronin determined the Probate and Family Court lacked jurisdiction to determine the validity of these mortgages, Judge DiGangi issued an Order on the Complaint for Contempt finding the Bayko mortgages invalid. (This was done without notice to Michael and Helen Bayko, in a matter where they have never been parties. The Order is currently on appeal.)

In compliance with Judge Cronin's Order of Dismissal, GMAC immediately filed a Complaint for Interpleader in the Essex County Superior Court. That case was removed to the United States District Court by the Internal Revenue Service as the above captioned matter.

Although there are already voluminous and somewhat confusing pleadings in this matter, what we are left with is a remainder which GMAC holds (approximately $186,000). It appears undisputed that, following their divorce, this is divided into two halves representing the interests of Jeffrey Bayko and Lisa Bayko as tenants-in-common.

What is of most interest to Michael and Helen Bayko is the $93,000 allocable to Jeffrey Bayko.

Massachusetts is a 'race notice' state. Priority is established by the principal of 'first in time - first in right'. Federal law for tax liens follows that principal. *Horizon Bank and Trust Company v. Paul Flaherty, et al, , United States District Court, D. Mass., Docket # 03-11524-WGY (2004).*

The first in time - first in right principal makes BankNorth the next claimant with a lien of approximately $15,000 (currently $16,126). This is a joint mortgage and would normally be split between the parties. However, that issue is somewhat clouded by the fact that the United States has claimed that the equitable principal of 'marshalling' should be invoked to pay

BankNorth entirely out of Lisa Bayko's share.  See *Memorandum of the United States in Response to Three Motions for Summary Judgement, by Which the United States: (A) Concurs, in Part, In the Motion of BankNorth; (B) Partially Opposes the Motion of Lisa J. Bayko; and (C) Partially Opposes the Motion of Helen and Michael Bayko*, Docket # 28 herein.

The next in time is Michael and Helen Bayko's mortgage recorded August 12, 2002 with a principal face amount of $46,360.  There are three possible clouds to this interest.  First, in its motion here, the United States would like the opportunity to further examine the Bayko claim and determine the *bona fides* of the transaction.  Second, although no cognizable claim has been made to date, Lisa Bayko and her attorneys Christine Ann Faro, Esq. and Charles Rotondi, Esq. have repeatedly suggested that they may have some unrecorded claim to the funds arising out of the divorce.  Finally, there is the issue, discussed above, of the Essex Probate and Family Court declaring the mortgages invalid (where the mortgagees were not parties, had no notice and after the same Court had already determined it had no subject matter jurisdiction).

Next,  is an attorney's lien filed February 10, 2003 by Atty. Hans Hailey.  In his Answer here, he claims $30,251.00.

After that, on April 4, 2003, the Commonwealth of Massachusetts filed a tax lien in the amount of $8,464.00.

Then, on June 8, 2003, the Internal Revenue Service filed a tax lien of $47,197.

There are additional liens that follow, including an additional mortgage held by Michael Bayko and Helen Bayko in the amount of $6,300.00 filed July 8, 2003.  However, if the above claims are satisfied, there will be nothing left beyond the Internal Revenue's claim.

In sum, from Michael and Helen Bayko's perspective, the legal system has already failed.  Their present inability to collect results from  legal problems which are properly between their son and

his ex-wife (in the divorce action) or between the United States and the Commonwealth (here). They properly secured their interest. Yet, they are already in the third court seeking their money. The legal fees and time involved are overwhelming, especially considering the sums involved. Further, they literally may not live to see the return of their money.

ARGUMENT

(Michael and Helen Bayko note that this motion was served immediately before Christmas. They start a little behind the curve here. Both the United States and the Commonwealth are represented by counsel who have extensively and repeatedly litigated the issues raised by this motion in this Court. We have had very little time to prepare.)

In prior cases regarding the balance between the Commonwealth's Eleventh Amendment immunity and the United States' statutory right to remand, it appears that the Court has been concerned primarily about the rights of the sovereigns. However, our government is a government of the people and by the people. The rights of Michael Bayko and Helen Bayko must be considered. As citizens, their rights can only be surrendered to the government by explicit intent and act of the framers of the Constitution or Congress, with notice and due process, and where there is a taking, compensation.

The first question is what rights do Michael and Helen Bayko have in this matter? They have property rights. "Property interests are not created by either the State or Federal Constitution; they are instead created and their dimensions defined by existing rules or understandings that stem from an independent source such as state law." *Doyle v. Dept. Of Industrial Accidents, 50 Mass.App.Ct. 42, 45 (2000).*

Michael and Helen hold notes secured by mortgage deeds, duly executed and recorded in compliance with Massachusetts General Laws, c. 183, §18, 19. Under Massachusetts title theory,

the mortgage deeds constitute a deed of conveyance which convey a fee interest in the real property. *Atlantic Savings Bank v. Metropolitan Bank and Trust Co.*, 9 Mass.App.Ct. 286, 288 (1980). Clearly, a fee interest in real property qualifies under Massachusetts law as a property interest.

Having established that Michael and Helen have a property right, the next question arises; is the sovereign taking their property? In this case, both the United States and the Commonwealth claim a right to proceeds. If they are both satisfied, in their separate courts, someone will be left short.

The answer might appear to be that GMAC wait until after this Court decides the rights of each party except the Commonwealth and then force a second case in state court. However, this is an unsatisfactory solution. If United States is paid on this Court's Judgment, GMAC will be left with insufficient funds to satisfy someone. Which party loses a fee interest in the real property?

<u>28 U.S.C. §1444 is unconstitutional as applied</u>

The question really comes down to whose rights are more fundamental? The citizen, the state, or the federal government?

First, rights are reserved for the citizen. The basic organization of our form of government reserves all rights to the citizens except those necessary for the administration of the government.

Among those rights, under the Fifth Amendment of the United States Constitution, the Fourteenth Amendment of the Constitution (applying the Fifth Amendment rights to the states), and Part 1, Article 10 of the Massachusetts Constitution, reserve for the citizen his fundamental right to hold property free from government taking without due process and just compensation.

Next, the sovereign rights of the states are preserved. Article II of the Articles of Confederation reserves to each state "its sovereignty, freedom and independence and every power, jurisdiction and right, which is not by this confederation expressly delegated to the United States, in Congress assembled." *Articles of Confederation, Article II*. Accepting the pattern of case law that has developed recently in this Court, in accordance with the Eleventh Amendment, the Commonwealth is immune from prosecution of a civil claim by a citizen against it in this Court. *See GE Capital Services v. Estate of Hilda Lugo, et al, Civ.A. No. 03-12172-JLT (D.Mass. 5/26/04); Horizon Bank & Trust Co. v. Flaherty, Civ.A. No. 03-11524 (D. Mass. Feb. 5, 2004); First Federal Savings Bank v. Ward, et al, Civ.A. No. 03-10168 (D.Mass. October 6, 2003)*, etc.

However, dismissal of the Commonwealth offers no solace if the priority of the United States' claims changes in a Massachusetts Court. The problem is circular.

Ignoring interest, contractual fees, and costs, trial here is likely to result in :

| | |
|---|---|
| Jeffrey Bayko's Share | $93,000 |
| BankNorth | $ 8,000 |
| Michael and Helen Bayko | $46,360 |
| Atty. Hans Hailey | $30,250 |
| United States | $ 8,390 |

However, Massachusetts filed its lien before the Internal Revenue Service. When Massachusetts brings its claims in its Court, it is likely to take the $8,390 which was awarded to the United States in the United States District Court. Where will that $8,390 come from? The only lien above that Massachusetts has priority over is The United States. Therefore, either The United States must pay over the $8,390 in accordance with the decision of the Massachusetts Court, or the Commonwealth will take from some other property interest.

Assuming arguendo that Atty. Hailey has a property interest (without any interest at this time in whether an attorney's lien rises to that level), some sovereign is taking private property without

just compensation.

"One principal from which [the Supreme Court] has not deviated is that just compensation 'is for the property, and not to the owner.'" *United States v. Bodcaw Co., 440 U.S. 202, 203 (1979).* As the Fifth Amendment prohibition applies to the Commonwealth pursuant to the Fourteenth Amendment, it matters not which sovereign takes. Either will have taken the property of a private party without compensation. (Remember that the government has no claim against the mortgagees. Presumably, they have paid their taxes.)

In a limited class of cases, involving actions to quiet title, foreclose on a mortgage, partition or condemn real estate, and interpleaders regarding mortgages or other liens, Congress specifically waived its immunity from suit in state courts. Each of these areas is traditionally governed primarily by state law. Congress has established no national system for the registration of land and generally looks to state law to determine the priority of liens. (Michael and Helen distinguish state law determining ownership and priorities in land from bankruptcy law which is the exclusive province of Congress pursuant to Art. 1, Section 8 of the Constitution.)

Michael and Helen Bayko do not question that Congress intended to limit the statutory waiver granted by *28 USC 2410* in such a manner as to allow the executive branch to essentially rescind the waiver in those cases which it would prefer to litigate in the federal Court. (Essentially, giving the Internal Revenue Service home court advantage on demand.)

However, having enacted *28 USC 2410*, Congress recognized that allowing this limited class of cases to be heard in state courts does not seriously jeopardize any important governmental function. In fact, most rights related to priority of interests in real property are better determined in the state court as it is better suited to review and find the law of its state.

Congress' secondary grant, to the executive branch, of a right to declare home court advantage does not rise to the Constitutional level of the Fifth and Fourteenth Amendment rights of the

citizen or the Eleventh Amendment rights of the state.

PLEA

Whereas, interpleader claims in the course of foreclosures are common and numerous variations and permutations are likely to arise in the normal course; and

Whereas, it is common for the federal and state taxing authorities to have an interest in these interpleader actions,
and

Whereas, the United States and the Commonwealth of Massachusetts cannot reach an agreement as to which court should hear these routine interpleader cases;
and

Whereas, the citizens of the United States have a Constitutional right (under both the Federal and Massachusetts Constitutions) to retain their property free from taking by the government without due process;
and

Whereas, Massachusetts has a constitutional right not to be brought before the United States District Court in an interpleader filed by a private party;
and

Whereas, Congress explicitly agreed to have a limited class of cases regarding the determination of the priority of liens in real property heard in state court;
and

Whereas, Congress does not appear to have intended to abrogate the constitutional rights of a

citizen or of a state and certainly did not amend the Constitution;

Michael and Helen Bayko ask that this Court find that Congress' grant to the Executive Branch of discretion to select its forum in *28 U.S.C. 1444* is unconstitutional as applied to interpleader cases in which the property rights of a citizen cannot be completely determined in Federal Court by reason of the sovereign immunity of the state;

and

remand this matter back to the Massachusetts Superior Court.

In the alternative, Michael and Helen Bayko ask this Court give them some forum in which to receive a fair hearing which resolves all claims regarding their property rights arising from or against their mortgage deed to the real property 7A Graham Ave. Newbury, Massachusetts.


Respectfully submitted,
Michael Bayko and Helen Bayko
by their attorney,

    /s/ Timothy D. Sullivan

Timothy D. Sullivan, Esq.
AndoverLaw, P.C.
451 Andover Street, Suite 185
North Andover, MA 01845
(978) 794-0360
BBO # 563244

## CHALK #1

| Date: | Cash/Check #: | Payable to Account: | Amount: | Purpose (if known): | Evidence: |
|---|---|---|---|---|---|
| 05-11-01 | Cashier Ck. | Attorney Galdi | $3,000.00 | -Ck. #20856 to: Falbo, Solari, Goldberg | Photocopy of BankCheck |
| 06-11-01 | #2758 | Jeffrey Bayko | $1,500.00 | -Retainer for Attny. Hailey ($1,500.00) | Photocopy of Check |
| 07-05-01 | #2764 | Jeffrey Bayko | $4,000.00 | -June bill for Attny. Hailey ($3,120.84) <br> -GMAC Chevy lease ($1,000.00) | Photocopy of Check |
| 07-13-01 | #2768 | Jeffrey Bayko | $2,000.00 |  | Photocopy of Check |
| 07-16-01 | Cash | Jeffrey Bayko | $2,500.00 | -Loan for Bankruptcy <br> -Child support payments (7/18, 7/21, 7/28: $370.00 total) <br> -Deposition: R.B. Greenfield ($130.00) | Entry in Checkbook |
| 08-02-01 | #2771 | Jeffrey Bayko | $4,000.00 | -April bill for Attny. Hailey ($3,120.83) | Photocopy of Check |
| 10-01-01 | Cash | Jeffrey Bayko | $2,000.00 | -Aug. bill for Attny. Hailey ($1,073.32) | Entry in Checkbook |
| 10-04-01 | Cash | Jeffrey Bayko | $2,000.00 | -Sept. bill for Attny. Hailey ($3,096.83) | Entry in Checkbook |
| 10-13-01 | Cash | Jeffrey Bayko | $2,000.00 | -Retainer for Attny. Evans ($2,000.00) | Entry in Checkbook |
| 10-17-01 | Cash | Jeffrey Bayko | $1,000.00 | -Child support payments (9/28-10-5: $300.00 total) <br> -Honda finance (9/21-10/21: $514.74) | Entry in Checkbook |

Chalk #1 (cont...)

| Date | Check# | Payee | Amount | Description | Source |
|---|---|---|---|---|---|
| 11-04-01 | #2791 | Jeffrey Bayko | $1,000.00 | -Oct. bill for Attny. Hailey ($933.33) | Photocopy of Check |
| 11-05-01 | Cash | Jeffrey Bayko | $4,900.00 | -GMAC Chevy lease ($974.93)<br>-Child support payments (11-3 - 12-1: $750.00) | Entry in Checkbook |
| 11-30-01 | #496 | Attorney Evans | $2,000.00 | -Bill for Attny. Evans ($2,000.00) | Photocopy of Check |
| 12-10-01 | #501 | Attorney Hailey | $3,381.66 | -Nov. bill for Attny. Hailey ($3,381.66) | Photocopy of Check |
| 01-16-02 | #509 | Attorney Hailey | $2,457.95 | -Dec. bill for Attny. Hailey ($2,457.95) | Photocopy of Check |
| 03-27-02 | Cash | Jeffrey Bayko | $100.00 | | Entry in Checkbook |
| 05-03-02 | Cash | Jeffrey Bayko | $160.00 | | Entry in Checkbook |
| 05-06-02 | Cash | Jeffrey Bayko | $100.00 | | Entry in Checkbook |
| 04-09-02 | #516 | Jeffrey Bayko (Actual Deposit: | $4,000.00 $3,100.00) | -Bill for Attny. Hailey ($1,930.00) | Photocopy of Check |

**TOTAL:** $49,199.61  
**ACTUAL NOTE:** $46,360.00 - July 19, 2002

**SEPARATE LOAN**

| Date | Type | Payee | Amount | Description | Source |
|---|---|---|---|---|---|
| 05-02-03 | Cashier Ck. (Loan from Parents) | Dept. of Revenue | $6,300.00 | -Ck #21817- Child Support ($6,300.00) | Copy of Bank Check |

2