IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF  MASSACHUSETTS

| | | |
|---|---|---|
| GMAC MORTGAGE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil No. 04-12448-GAO |
| | ) | |
| JEFFREY L. BAYKO, *et al.,* | ) | |
| | ) | |
| Defendants. | ) | |

**UNITED STATES' OPPOSITION TO THE COMMONWEALTH
OF MASSACHUSETTS' MOTION TO DISMISS ENTIRE PROCEEDING**

**QUESTION PRESENTED**

The United States and the Commonwealth Massachusetts have each waived

their sovereign immunity to suits in interpleader in state courts, with the federal waiver

conditioned upon the right to remove such an action to federal court.  The Eleventh

Amendment to the Constitution of the United States protects the states only from

actions against them *in personam* which are instituted by private persons in the federal

courts.  Does removal by the United States of an action *in rem* (or *quasi in rem*) to

determine competing interests in a fund of money trigger an Eleventh Amendment right

of the Commonwealth to be dismissed from the action, and, if so, must the action also

be dismissed?

**DISCUSSION**

I.    SUBJECT-MATTER AND ARTICLE III JURISDICTION

With the exception of the Eleventh Amendment issue, there is no challenge to

the propriety, including the timeliness, of the removal.  When the United States

removes an action under a removal statute provided expressly for the benefit of the

United States (such as 28 U.S.C. § § 1442 or 1444), jurisdiction of the action is not

predicated upon either a federal question or diversity of citizenship.  Rather, when the

United States exercises its unique removal authority, the statutory bases for subject-matter jurisdiction are the removal statutes themselves.  Sections 1442 and 1444 provide this Court with jurisdiction over this proceeding.  See, e.g., Hood v. United States, 256 F.2d 522, 525-26 (9th Cir. 1958) ("[T]he United States [has] the right to remove certain cases at its sole option without regard to the amount in controversy. . . . The trial court asserted jurisdiction.  We hold this conclusion correct, since the removal statute seems plain.").  See also E.C. Robinson Lumber Co. v Hughes, 355 F.Supp. 1363, 1367-68 (E.D. Mo. 1972) (district court, following a lengthy analysis of decisions construing Sections 2410 and 1444, denied the plaintiff's motion to remand).  In reaching its conclusion, the Robinson court relied on the explanation in Moore's Federal Practice of the Ninth Circuit's decision in Hood, quoting the following text:

> The Ninth Circuit view is clearly correct. . . .[T]here is no question that Congress has the constitutional power under Article III to confer removal jurisdiction upon the federal courts of any suit against the United States. . . .
>
> The right to remove under § 1444, unlike removal under § 1441, is not in any way keyed to original jurisdiction . . . ."
> 1A J. Moore, Federal Practice, ¶ 0.166 at 894-96.[1]

The court concluded that: "Title 28 U.S.C. § 1444 expressly grants the United States the substantive right of removal *and confers subject matter jurisdiction over such a proceeding in federal district court.*"  Robinson, 355 F.Supp. at 1368 (emphasis added). See also City of Miami Beach v. Smith, 551 F.2d 1370, 1373-74 n.5 (5th Cir. 1977) ("§ 1444 confers a substantive right to remove, independent of any other jurisdictional limitations").  Jurisdiction is appropriate in this Court pursuant to 28 U.S.C. §§ 1442 and

---

[1]  The quoted material may now be found at 16 Moore's Federal Practice § 107 App. 109, pp. 149-52 (3rd ed. 1997).

1444.[2]

This interpleader action, even without the Commonwealth as a party, fulfills the requirement of Article III of the Constitution of the United States that there be a genuine "case or controversy."  In this suit, the parties claiming an interest in the funds are: (1) the United States, asserting federal tax liens on all of the property and rights to property belonging to Jeffrey Bayko; (2) the Commonwealth asserting competing state tax liens; and (3) Lisa Bayko; (4) Helen Bayko; (5) Michael Bayko; (6) BankNorth Group; (7) Hans Hailey; (8) Charles Rotondi; (9) Gary Evans; (10) Christine Faro; and (11) John Aquino, each of whom may have a claim to the property.

## II.    THE RIGHT TO REMOVE IS A CONDITION OF THE UNITED STATES' WAIVER OF SOVEREIGN IMMUNITY

Absent a waiver of the immunity of the United States to the interpleader action, it could not have been joined as a defendant in the state court, nor would the present controversy be before this Court.[3]  It is elemental that "[s]overeign immunity is jurisdictional in nature . . . [and] the 'terms of [the United States'] consent to be sued in any court define that court's jurisdiction to entertain the suit.'" F.D.I.C. v. Meyer, 510 U.S. 471, 475 (1994), quoting United States v. Sherwood, 312 U.S. 584, 586 (1941).

In this case, the United States was made a defendant in the state court interpleader proceeding pursuant to 28 U.S.C. § 2410.  That statute waives sovereign immunity where "the United States claims a mortgage or other lien" on the interpled

---

[2]  The same analysis supports a conclusion that jurisdiction is conferred under 28 U.S.C. § 1442.  See Williams v. Brooks, 945 F.2d 1322 (5th Cir. 1991), where the Court of Appeals, acting sua sponte, found that the removal authority in § 1442(a)(1) was itself the source of jurisdiction in the district court to which a member of the House of Representatives had removed a defamation action brought against him in state court.  Id. at 1324-25, n.2.

[3]  There is a provision, peculiar to the federal tax enforcement statutes, that would have permitted the United States, had it not been joined (or been improperly joined), to have intervened in the state court action in order to assert its tax liens and then removed the case to this court pursuant to 28 U.S.C. § 1444.  See 26 U.S.C. § 7424.  Section 7424 is not applicable under the circumstances of this case.

property.  The waiver is expressly conditioned on the right of the United States to remove the action to the United States district court.  See Hood, 256 F.2d at 526 ("[t]he right to remove cannot be denied"); Hamlin v. Hamlin, 237 F.Supp. 299, 300 (N.D. Miss. 1964) ("[t]he plain language of the two quoted statutes [28 U.S.C. § § 1444 and 2410] makes it clear that the United States has an absolute right to remove . . .").  See also E.C. Robinson Lumber Co., 355 F.Supp. at 1368 (collecting decisions from a number of courts:  "[s]everal courts have recognized and expressly stated that 28 U.S.C. § 1444 gives the United States the unqualified option to remove an action originally brought in state court under § 2410").  Thus, in construing the waiver of sovereign immunity in Section 2410 "strictly in favor of the federal government," as our jurisprudence teaches, see, e.g., United States v. Horn, 29 F.3d 754, 762 (1st Cir. 1994), and cases cited there, the right of the United States to remove the action to this court must be deemed absolute, and the claim which joins the United States as a party may not be remanded over its objection.

III.    REMOVAL OF AN INTERPLEADER BY THE
        UNITED STATES DOES NOT IMPLICATE
        THE ELEVENTH AMENDMENT

As written, ratified, and applied, the Eleventh Amendment is a restriction only upon private parties attempting to invoke the judicial power of the United States against any of the several states.[4]  That restriction was recently clarified by the Supreme Court,

---

[4]  The Eleventh Amendment to the Constitution of the United States of America provides as follows:

> The Judicial power of the United States shall not be construed to
> extend to any suit in law or equity, commenced or prosecuted
> against one of the citizens of the United States by Citizens of
> another State, or by Citizens or Subjects of any Foreign State.

The Eleventh Amendment has been interpreted to preclude suits against a state in a federal court by citizens of the defendant state (unless the state has waived its immunity to suit in a federal forum).  See e.g., Port Authority Trans-Hudson Corp. v. Feeney, 495 U.S. 299, 304 (1990), and cases cited there.

and we now understand that the Eleventh Amendment is applicable only to *in personam* actions against the states.  Thus, where, as here, the court is concerned with adjudication of interests in property which is *in custodia legis* the Eleventh Amendment does not compel dismissal of a state-claimant from the action.  Additionally, nothing in the Eleventh Amendment purports to limit the power of the United States of America to bring the states into federal courts.

A.    *The Removal of an In Rem Interpleader Action Is*
*Beyond the Scope of Eleventh Amendment Protection.*

Less than a year ago, the Supreme Court in <u>Tennessee Student Assistance Corp. v. Hood</u>, 541 U.S. 440, 124 S.Ct. 1905 (2004) (hereinafter "TSAC") held that a bankruptcy court's exercise of its *in rem* jurisdiction to discharge a state-held student loan debt did not infringe state sovereignty under the Eleventh Amendment.  The Court, citing <u>California v. Deep Sea Research, Inc.</u>, 523 U.S. 491 (1998), noted that, like certain *in rem* admiralty actions in which the State did not possess the *res*, "[t]he discharge of a debt by a bankruptcy court is similarly an *in rem* proceeding," to which the Eleventh Amendment is not applicable.  <u>Id.</u> at 1910.

In support of its conclusion, the Court observed that upon the filing of a petition in bankruptcy, the bankruptcy court assumes exclusive jurisdiction over the debtor's property.  In a typical Chapter 7 proceeding, the bankruptcy court notifies creditors of the proceeding, and any creditor desiring to participate will file a proof of claim. Whether or not a creditor files a claim, once a discharge is issued the creditor will be unable to collect on any unsecured debts.  As the Court explained, "[t]he discharge order releases the debtor from personal liability with respect to any discharged debt by voiding any past or future judgments on the debt and by operating as an injunction to prohibit creditors from attempting to collect or to recover the debt."  <u>Id.</u>  The bankruptcy court's discharge order has this effect, the Supreme Court said, "because the court's

- 5 -

jurisdiction is premised on the debtor and his estate and not on the creditors."  Id.  The nature of the proceeding and the relief requested in the instant interpleader action, is so closely analogous to the bankruptcy discharge proceeding described in TSAC that the same result should be reached here.

The instant interpleader action is an ordinary or "straight" interpleader in which a disinterested plaintiff-stakeholder who seeks nothing more than to rid itself of the burden of possessing certain real or personal property in which it, for itself, claims no interest by placing the property in the actual, or constructive, possession of a court and allowing lienholders or other claimants to make their claims to the property.  The relief sought by the plaintiff is to have "the claimants compete in an effort to have [the interpled property] awarded."  General Atomic Co. v. Duke Power Co., 553 F.2d 53, 57 (10th Cir. 1977).  Once the Court has determined the claims of creditors or claimants to the fund, the plaintiff-stakeholder will be relieved of any further liability to them *on account of that fund*, just as, in a bankruptcy discharge proceeding, a debtor upon discharge is relieved of any further liability to its creditors with respect to those debts that had been discharged.[5]

The purpose of the ordinary interpleader action is merely "to administer a limited amount of property and [resolve] conflicting claims of several litigants to that property." General Atomic Co., 553 F.2d at 57.  Many federal and state courts, cognizant of this purpose, have recognized the *in rem* or *quasi in rem* nature of such interpleader actions.  The Tenth Circuit views an interpleader action as "an in rem or quasi in rem suit in its nature, [where t]he court holds the property and the claimants compete in an

---

[5]  Perhaps it may be argued that GMAC Mortgage seeks affirmative relief from the Commonwealth in that it desires an order that would effectively enjoin the Commonwealth from asserting further claims against it with respect to the fund.  But that is no different from the relief that the debtor in TSAC sought.  We doubt that, in the wake of TSAC the Supreme Court would characterize a "straight" interpleader, such as this one, as an *in personam* action.

effort to have it awarded." General Atomic Co., 553 F.2d at 57.  The Eastern District of
Arkansas has recognized that an interpleader suit has some of the attributes of an *in
rem* proceeding.  See Equifax, Inc. v. Luster, 463 F.Supp. 352 (E.D. Ark. 1978).  States
holding that interpleaders are *in rem* or *quasi in rem* proceedings include:  Alabama
(service by publication permitted for interpleaders under R. 4.3, Ala. R. Civ. P.);
Connecticut, Triangulum Associates v. Harrison Conference Center, 1991 WL 135318
(Conn. Super. Ct. 1991); Mississippi, Irvine v. Irvine, 241 Miss. 816, 133 So.2d 14
(1961); New Jersey (bank interpleader of satchel containing silver which had been
stored with bank was *in rem*), Union Trust & Hudson County Nat. Bank v. Kyle, 96 N.J.
Eq. 125, 124 A. 455 (Chancery, N.J. 1924); Texas (where the court has possession of
the fund, it has jurisdiction to determine who is entitled to it–the action is *quasi in rem*),
Bryant v. United Shortline, Inc. Assurance Services, N.A., 984 S.W.2d 292, 296 (Tx.
Civ. App. 1999), see also Bryant v. United Shortline, Inc. Assurance Services, N.A.,
972 S.W.2d 26, 29  (Texas 1998).[6]

   While many courts have acknowledged the *in rem* or *quasi in rem* nature of the
ordinary interpleader, some courts have misread New York Life Ins. Co. v. Dunlevy,
241 U.S. 518, 521 (1916), to stand for the proposition that *all* interpleader actions, even
"straight" interpleaders, are *in personam* actions.  In Dunlevy, the Supreme Court said
that a state-court action, denominated as an "interpleader," "was an attempt to bring
about a final and conclusive adjudication of [a claimant's] personal rights."  Id. at 521.
Dunlevy, however, did not involve a "straight" interpleader.  Rather, the facts of the case
suggest that it was an attempt to obtain a personal judgment against an absent

---

   [6] Some states, such as New York, have not answered the question definitively.
Compare Cerrone v. Trans World Airlines, 148 N.Y.S.2d 162 (Sup. Ct. N.Y. Cty. 1955) (action
to determine ownership of stock certificates physically present in forum state is *quasi in rem*)
with Hanna v. Stedman, 230 N.Y. 326, 130 N.E. 566 (1921), (an attempt by an insurer to satisfy
a personal liability to claimants was *in personam*).

claimant.  This significant distinction between the "interpleader" in <u>Dunlevy</u> and ordinary

interpleader was addressed by Judge Weinfeld in <u>Bache Halsey Stuart Shields, Inc. v.</u>

<u>Garmaise</u>, 519 F.Supp. 682 (S.D. New York 1981), where the district court rejected a

challenge to a stakeholder's reliance on 28 U.S.C. § 1655, a statute that has been

characterized as an "*in rem* service statute," to effect service in an interpleader action.[7]

> The old case of <u>New York Life Ins. Co. v. Dunlevy</u>, 241 U.S. 518, 36 S.Ct.
> 613, 60 L.Ed. 1140 (1916), is not an obstacle to this interpleader action.
> Although that case has been cited for the proposition that interpleader
> actions are in personam, the facts of that case, which was a state
> interpleader action involving state procedure, suggest that a personal
> judgment was being rendered against the absent claimant; the Supreme
> Court noted that the action was "not merely to discover property and apply
> it to debts." Id. at 521 (citing <u>Pennoyer v. Neff</u>, 95 U.S. 714, 24 L.Ed. 565
> (1877)).  On the contrary, the present action concerns a dispute as to a
> discrete res, the assets held by Bache, as to which the defendants assert
> claims.

<u>Id.</u> at n. 12.

Judge Weinfeld got it right, properly distinguishing the relief requested in <u>Dunlevy</u>

from that requested in an ordinary interpleader, such as the matter now before this

Court, where the plaintiff-stakeholder is little more than a bailee of the property subject

to the claims of creditors and owners.  In such a "straight" interpleader the relief sought

by the plaintiff is to have "the claimants compete in an effort to have [the interpled

property] awarded."  <u>General Atomic</u>, 553 F.2d at 57.  The plaintiff's discharge of its

duties vis-à-vis the *res* is incidental to the court's disposition of the property and a

corollary to the necessity of the distributing court to protect its own jurisdiction.  What

the cases teach us is that distribution, rather than discharge, is the essence of

interpleader.  So, while a complaint seeking interpleader relief may look to some like it

---

[7]  Like the District Court for the Southern District of New York, the Fifth Circuit has held
that service may be made upon claimants in an interpleader action pursuant to 28 U.S.C.
§ 1655.  <u>See</u> <u>United States v. Estate of Swan</u>, 441 F.2d 1082, 1086 (5th Cir. 1971).  <u>See</u> <u>also</u>
7 Wright, Miller & Kane, <u>Federal Practice and Procedure</u> § 1711 at 605-611 (3rd ed. 2001) for
an extended discussion of the nature of federal statutory interpleader under 28 U.S.C. § 1335.

seeks *in personam* relief, the discharge which is both sought and given, at least as to the parties who have been served and appeared in the action, is plainly *in rem*, as the purpose of the action is "merely to apply [the interpled property] to its debts." Compare Dunlevy, 241 U.S. at 521. Inasmuch as the Commonwealth has been served and is here, an adjudication of its claims to the fund can be made by this court in this proceeding as an *in rem* determination without implicating any right guaranteed by the Eleventh Amendment.[8]

As previously noted, once this Court has determined the claims of creditors or claimants to the fund, the plaintiff-stakeholder will be relieved of any further liability to them *solely on account of that fund*, just as, in a bankruptcy discharge proceeding, a debtor upon discharge is relieved of any further liability to its creditors with respect to

---

[8] The recent decision of the First Circuit in Metropolitan Property and Cas. Ins. Co. v. Shan Trac, Inc., 324 F.3d 20, 25 (1st Cir. 2003) does not preclude this analysis. Shan Trac involved the resolution of claims following a motor vehicle crash that left eight dead and five injured. Although the accident occurred in Nevada, the action was brought in the district court in Massachusetts, the insurer's place of business, with jurisdiction predicated on the federal interpleader statute, 28 U.S.C. § 1335, because there was sufficient diversity among the defendants and the amount of the fund exceeded the statutory minimum. The issue presented there was whether, by depositing a fund equal to the limits of its liability policy with the court, the plaintiff-insurer could escape further liability not only to those persons named and served in the action (who had settled with the insurer), but also to non-parties. The insurer sought, and obtained from the district court, a judgment which would preclude such non-parties forever from "'mak[ing] claim against Metropolitan under Part 5 of [the policy].'" Id. at 25. The Court of Appeals, relying on Dunlevy quite properly, vacated that portion of the judgment. Of course, non-parties could not be precluded from exercising all rights they may have had against the insurer, itself. Such an adjudication could have been made only upon the acquisition of *in personam* jurisdiction, and if such jurisdiction had been acquired, the persons to be precluded would no longer have been non-parties. That part of the Shan Trac opinion does not, in any way, undermine the portion of the opinion which affirms the district court's adjudication with respect to the fund which was actually interpled. The *per capita* allocation of the district court's judgment was affirmed, with the Court of Appeals' implicitly acknowledging that, as to the fund, the proceeding was either *in rem* or *quasi in rem*: "Of course, under the policy Metropolitan's payment to the policy maximum to some claimants may well exhaust any obligations it has to others . . .." 324 F.3d at 26.

Certainly, unlike both Dunlevy and Shan Trac, the plaintiff here does not seek an adjudication against the Commonwealth as an *absent* defendant. The facts here are plainly distinguished from those facts which caused those courts to characterize those actions as *in personam*.

those debts that had been discharged.  In light of <u>TSAC</u>, the instant interpleader action should be viewed by this Court as an *in rem* proceeding that is not barred by the Eleventh Amendment.[9]

> B.   *In Any Event, the Invocation of Federal Judicial Power*
>      *by the United States Is Beyond the Scope of Eleventh*
>      *Amendment Protection.*

There is nothing in the Eleventh Amendment which purports to limit the power of the United States of America, itself, conferred by statute and rooted in Article III of the Constitution, to bring the states into federal courts.  <u>See</u> <u>Parks v. United States</u>, 784 F.2d 20, 23-24 (1st Cir. 1986) (Eleventh Amendment does not limit the right of the United States to implead agency of the Commonwealth of Massachusetts in privately-commenced action for money damages); <u>Barrett v. United States</u>, 853 F.2d 124, 126-30 (2d Cir. 1988) (same as to impleading the State of New York in action under the Federal Tort Claims Act).  In <u>Parks</u>, the First Circuit rejected the claim of an Eleventh Amendment bar, observing that: "[i]t is well established that a defendant may, as a third-party plaintiff, implead a party that the plaintiff could not sue directly, the claim against the third-party defendant inuring to the benefit of the third-party plaintiff and not to the original plaintiff."  <u>Parks</u>, 784 F.2d at 24.  <u>See also</u> <u>United States v. Texas</u>, 143 U.S. 621, 642-46 (1892) (upholding the original jurisdiction of the Supreme Court, under Article III, over an action by the United States against a state); <u>United States v.</u>

---

[9]  <u>Cory v. White</u>, 457 U.S. 88 (1982), does not mandate a different result.  In <u>Cory</u>, the Supreme Court held that the Eleventh Amendment "bar[red] the statutory interpleader sought in this case."  <u>Cory</u>, however, was not a case where a stakeholder paid funds into the court and sought only a determination of the defendants' rights to the funds.  Rather, it was a suit brought by the executor of the estate of Howard Hughes seeking a determination whether Texas or California had the right to impose inheritance taxes on the estate.  Both of these states had claimed that Hughes was domiciled in their state when he died.  The Supreme Court viewed the suit as one seeking injunctive relief against a state, *i.e.*, the executor sought an order that would enjoin the officials of one of the states from applying their own state's law.  That issue goes well beyond the rights of parties to a surplus fund in a straightforward, post-fore-closure interpleader case such as this, and thus the Court's concerns in <u>Cory v. White</u>, do not apply here.  This case, as explained in the text, is more analogous to <u>TSAC</u>.

California, 328 F.2d 729, 732-34 (9th Cir. 1964) (reversing dismissal by the district court, and confirming that 28 U.S.C. § 1345 confers jurisdiction in the district courts of cases and controversies where the United States is a plaintiff including actions against states for which original jurisdiction is vested in the Supreme Court by Article III).

The Commonwealth now stands as a claimant in an interpleader action pending in the United States District Court for the District of Massachusetts.  The Common-wealth is in this court not because of the act of any private plaintiff, but because of the act of the most public of defendants, the United States of America.  It was the United States, acting pursuant to its authority conferred by the Congress in the provisions found in 28 U.S.C. § § 1442 and 1444, that invoked the federal judicial power and removed the action.  Removal here is analogous to the impleaders in Parks and Barrett, and is consistent with the right to join the Commonwealth as a defendant in an action originating in this Court.

The United States could have brought an action in this Court to foreclose the federal tax lien on the surplus funds.  There can be no dispute that in such a case, where the United States asks the district court to determine all claims of the parties to the fund, the court's jurisdiction and power are not limited by the Eleventh Amendment, and the claims of the Commonwealth would be properly determined.  What the United States requests the district court to do by its removal of this action is not, in any way, different from that which it would seek as a Plaintiff in the hypothetical foreclosure action described above.  Accordingly, this Court may properly conclude that, by removing this action, the United States has invoked federal judicial power in the same manner and to the same extent as though it were a plaintiff.  The jurisdiction and power of the district dourt to determine all claims of all parties, including the Commonwealth, to the fund in this action are not limited to any extent by the Eleventh Amendment.

## IV.   IN THE ALTERNATIVE, THE COMMONWEALTH HAS WAIVED ITS IMMUNITY, AND THE ACTION CAN PROCEED BECAUSE OF DERIVATIVE JURISDICTION

The Commonwealth does not argue that it was not properly joined as a defendant in the above-titled action.  The waiver of the Commonwealth's immunity to this lawsuit as originally commenced is beyond dispute.  And, having waived its immunity to a suit that was subject to removal to the United States District Court by the United States (which was, itself, joined under the federal statute waiving its immunity on the condition that the suit be subject to removal) the Commonwealth is now precluded from attempting to withdraw its waiver.  Cf. Lapides v. Board of Regents of the University System of Georgia, 535 U.S. 613 (2002) (state, which had explicitly waived immunity to action in state court, joined in a petition to remove the action to federal court could not rely on the Eleventh Amendment to later withdraw its immunity *for that action* in federal court).  Further, it follows that an action properly brought against the Commonwealth in a state court must, if otherwise properly removed, continue upon removal.

### A.   *The Commonwealth's Waiver of Immunity Must Be Interpreted To Contemplate Removal*

In moving to dismiss, the Commonwealth attempts to impose the condition that its general waiver of immunity does not extend to cases where the United States is named as a defendant and removes the case to federal court (although if the United States does not remove, the waiver continues in effect).  We are aware of no such limitation expressly set forth in any statute waiving the Commonwealth's immunity.  The Commonwealth's "consent to suit [must be] expressed by the terms of a statute, *or appear by necessary implication from them.*"  Bain v. City of Springfield, 424 Mass. 758, 763, 678 N.E.2d 155, 159 (1997) (emphasis added), *citing* C & M Construction Co. v. Commonwealth, 396 Mass. 390, 392, 486 N.E.2d 54 (1985) (finding that reasonable

construction of state anti-discrimination statute would allow for award of punitive damages in face of sovereign immunity claim).[10]

A waiver of the Commonwealth's sovereign immunity will not be construed by the Courts of the Commonwealth in a manner to render it ineffective. See Bates v. Director of the Office of Political and Campaign Finance, 436 Mass. 144, 763 N.E.2d 6 (2002). In Bates, the Supreme Judicial Court found that voter-enactment of a clean elections law by the process of referendum providing for limited public funding for elections necessarily waived the Commonwealth's sovereign immunity to a lawsuit to obtain such funding. It held that although the Commonwealth's sovereign immunity was not expressly waived in the text of the public-funding provision, an "abrogation" of such immunity was "inherent" in the statute so that "[t]he power to bind the Commonwealth to payments of public funds . . . is *required 'by necessary implication'* from the clean elections law." Bates, 436 Mass. at 173, 763 N.E.2d at 27 (emphasis added). The Court in Bates grounded its construction of the clean elections law on a principle of statutory construction found in the bedrock of Massachusetts jurisprudence – a statute should not be construed to be "ineffective." Id. at 173-74 ("[w]e will not impute to the voters who enacted the clean elections law an 'intention to pass an ineffective statute'"), *quoting* Boston Elevated Ry. Co. v. Commonwealth, 310 Mass. 528, 548, 39 N.E.2d 87, 105 (1942). See also MacInnis v. Morrissey, 298 Mass. 505, 509, 11 N.E.2d 472, 475 (1937) ("[a]n intention to pass such an ineffective statute is not to be imputed to the Legislature"). That the United States may be made a party to such an action is easily

---

[10] We are aware that the Supreme Court has fashioned a strict test for determining whether a state has waived its immunity to suit in federal court. See, e.g., Horizon Bank and Trust v. Flaherty, 309 F.Supp.2d 178, 186-87 (D.Mass. 2004), and cases discussed there. However, the strict federal test cannot replace a state's own, more-relaxed, formulation of sovereign immunity. Where, as here, the Supreme Judicial Court has modified the generally-applicable federal concept of a state's waiver of its immunity, the federal court must apply the state standard to determine whether sovereign immunity has been waived.

foreseeable—a person who has not paid income or employment taxes to the Commonwealth is very likely also to have defaulted on obligations under the federal internal revenue laws.

The necessary implication of the Commonwealth's waiver is that if the United States is a defendant and has a right to remove, in the absence of an express statutory limitation on the Commonwealth's waiver, the action should proceed in the federal court and the Commonwealth may not seek to extricate itself from a lawsuit to which its own legislature has consented.  This construction of waivers of each governmental entity's immunity not only makes sense, it also accommodates and recognizes the practical necessity of deciding such matters in a single lawsuit.[11]

> B.    *Under the Applicable Principle of Derivative Jurisdiction, Removal Does Not Void the Commonwealth's Waiver*

The construction for which we here argue is also consistent with the principle of derivative jurisdiction, which establishes the scope of the federal court's jurisdiction in a removed action.  The principle of derivative jurisdiction has ordinarily been employed to limit the types of cases that the federal court could hear – if the state court did not have jurisdiction, the federal court acquired none on removal.  See Minnesota v. United States, 305 U.S. 382, 389 (1939).  The issue presented here is:  If the state court did have jurisdiction, does the federal court lose it on removal?

Our very question was asked and was answered "no" by the Supreme Court in Arizona v. Maypenny, 451 U.S. 232 (1981).  In Maypenny, an officer of the Border Patrol was indicted in an Arizona court on a charge of assault with a deadly weapon for having fired his shotgun at an escaping fugitive.  The criminal case was removed to the

---

[11]  The Commonwealth has never asserted that its waiver of immunity is limited to actions in which the United States is not a party, or to those actions which the United States does not remove to federal court from the Commonwealth's courts.  Any such judicial construction of the Commonwealth's waiver would render the waiver ineffective, an impermissible construction under the holdings of the Supreme Judicial Court.

district court under 28 U.S.C. § 1442 because the act occurred while the defendant was acting in his official capacity as a Border Patrol agent.  After the jury returned a guilty verdict, the district court, acting on its own motion, vacated the jury verdict on the grounds of official immunity.  Arizona sought to exercise its state-law right to appeal the acquittal on the grounds that the district court had exceeded its authority.  The Ninth Circuit dismissed the appeal for lack of jurisdiction, holding that the prosecution could not appeal from an acquittal.  The Supreme Court granted certiorari, asserting in its opinion that "the sole question posed here is whether the respondent's removal of the state prosecution to federal court for trial alters the nature of the State's otherwise well-established right under state law."  Id. at 240.

After examining the effect, policies, and principles underlying removal under § 1442, the Court rejected the Court of Appeals' conclusion that "the fact of removal substantially alters the State's right to seek review."  Id. at 241.  The Court went on to hold that "the invocation of removal jurisdiction . . . does not revise or alter the underlying law to be applied."  Id. at 242.  Noting that jurisdiction on removal "is a purely derivative form of jurisdiction, neither enlarging *nor contracting* the rights of the parties,"  the Court held that Arizona's state-law created right to appeal was preserved upon removal.[12]  Id.  (emphasis added).

_____

[12]  In a footnote to that discussion, the Court noted that the relevant question is whether, where state-court jurisdiction is found to exist, the federal court loses such jurisdiction as a result of the removal.  Id. at n.17.  The Supreme Court's unequivocal answer to that question in Manypenny is: "No."  The amendment, in 1986, of 28 U.S.C. § 1441 to add Section 1441(e), providing that in diversity and federal question matters, the federal courts will have jurisdiction in removed actions even if the state court did not, does not undercut the principle of derivative jurisdiction.  Rather, that subsection simply expands the jurisdiction of the federal courts by erasing the restrictive effect of derivative jurisdiction as pronounced by the decision in Minnesota v. United States, 305 U.S. 382 (1939).  The continuing vitality of the principle of derivative jurisdiction was noted by the Supreme Court in an opinion handed down following the enactment of Section 1441(e).  In International Primate Protection League v. Administrators of Tulane Educational Fund, 500 U.S. 72, 78 n.4 (1991), the Supreme Court quoted the footnote 17 language from Manypenny, on which we rely here, to suggest the possibility that derivative jurisdiction would allow a suit over which the state court had good jurisdiction to continue in

Here, where the Superior Court had jurisdiction in the first instance to adjudicate the claims of all parties, including those of the Commonwealth against the fund, removal by the United States under Sections 1442 and 1444 neither alters nor revises the underlying state-law waiver of the Commonwealth's immunity. Thus, this Court, upon removal of the action by the United States, has the same jurisdiction and power to resolve the claims of the parties to the fund, resulting in the incidental discharge of their claims against the plaintiff vis-à-vis the interpled fund.

## V.    PRIOR DISTRICT COURT RULINGS

The Commonwealth cites to nine decisions from the United States District Court for the District of Massachusetts for the proposition that the Eleventh Amendment bars federal court jurisdiction over the Commonwealth in interpleader actions. These cases are either distinguishable or wrongly decided, particularly in light of the United States' additional argument that the *in rem* nature of the present action avoids the Eleventh Amendment issue.

### A.    *Three Cases Are Easily Distinguished*

The Commonwealth argues that Woods v. Woods, 02-40112-NMG (D.Mass. 2002), stands for the proposition that the district court has ruled that the Eleventh Amendment bars federal court jurisdiction over removed interpleader actions where the Commonwealth is joined as a party. First, Woods v. Woods was an action seeking a declaratory judgment, rather than an interpleader action, and the relief sought there could have been obtained in separate actions, against the Commonwealth in state court and against the United States (assuming that jurisdiction had otherwise been conferred) in federal court. That action was susceptible of being severed; but the very point of an interpleader is that all claims be resolved in a single action concerning property placed

---

federal court following a valid removal under Section 1442 even if the action could not originally have been commenced in the district court for want of standing under Article III.

in the custody of the court.  In <u>Woods</u>, the United States, after removal, had already moved for its own dismissal on sovereign immunity grounds prior to the Commonwealth's Eleventh Amendment motion.  The United States replied to, but did not oppose, that  motion, although the United States disagreed with the Commonwealth's stated grounds for dismissal.  The court granted the Commonwealth's unopposed motion to dismiss, and dismissed the entire case, effectively granting the motion of the United States as well.  Thus, the requisite adversity was lacking to warrant citing <u>Woods</u> as meaningful precedent.

The Commonwealth also cites <u>Plymouth Savings Bank v. Gonsalves, et al</u>, 02-01952-MLW (D.Mass. 2002) for the proposition that the district court has decided the Eleventh Amendment bars federal court jurisdiction over removed interpleader actions where the Commonwealth is joined as a party.  In <u>Plymouth Savings Bank</u>, the Commonwealth filed a Motion to Remand on June 3, 2002.  The United States did not respond to the Motion to Remand because the Commonwealth had informed counsel for the United States that it would be withdrawing its Motion to Remand and, instead, would file a Motion to Dismiss (to which the United States would then have responded).  However, the court granted the Commonwealth's Motion to Remand as unopposed one day before the Commonwealth filed a letter with the court stating that it wished to withdraw its Motion to Remand and, instead, file a Motion to Dismiss.  Neither the United States nor the Commonwealth sought to have the court reconsider its order on the Commonwealth's Motion to Remand because neither party had an interest in correcting the remand.  Once again, adversity and a genuine dispute were lacking, so it cannot be fairly said that the district court ruled against the United States in that case.

The Commonwealth further cites to <u>EMC Mortgage Corp. v. Richard J. Stadelmann, et al.</u>, 127 F.Supp.2d 249 (D. Mass. 2000).  This case was not an action removed by the United States.  There, a private citizen plaintiff brought an original

action against the Commonwealth in federal court. The court found that the action was barred by the Eleventh Amendment as against the Commonwealth of Massachusetts, and the Commonwealth was dismissed from the proceedings. This case was correctly decided, but it does not stand either for the proposition that the United States cannot remove to federal court an action in which a state is a party defendant, or that, once the action has been removed by the United States, the action or the Commonwealth must be dismissed. The district court's comments were plainly limited only to the effect of the Eleventh Amendment on suits brought by "private parties." In a footnote, the court recognized that the outcome would have been different if the United States, not the private party, had filed the proceeding in federal court. See EMC Mortgage, 127 F.Supp.2d at 251, n.1. Nowhere in this case did the court discuss the federal government's ability to remove to federal court a case in which the state is a party. The EMC Mortgage decision simply does not stand for the proposition for which it has been cited by the Commonwealth.

B.    *Six Other Cases Were Wrongly Decided*

The Commonwealth cites to Cape Ann Savings Bank v. Johnson, et al., 2002 WL 1839248 (D.Mass. 2002), 90 A.F.T.R.2d 2002-6333; First Massachusetts Bank v. Daoust, et al., 214 F.Supp.2d 79 (D.Mass. 2002); Fleet National Bank v. Kaplan, et al., 02-11175-RWZ (D. Mass. 2002); Marc Whitehouse v. Commonwealth, et al., 03-10358-PBS (D.Mass. 2003); GE Capital Mortgage Services, Inc. v. Estate of Lugo, 319 F.Supp.2d 127 (D.Mass. 2004); and Horizon Bank and Trust v. Flaherty, 309 F.Supp.2d 178 (D.Mass. 2004), *dismissed as moot*, 391 F.3d 98 (1st Cir. 2004), for the proposition that the Eleventh Amendment bars federal court jurisdiction over removed interpleader actions where the Commonwealth is joined as a party. While these cases are on point, the United States disagrees with the rulings. Further, we now advances a new *in rem* argument, first conceived after the Supreme Court's TSAC decision last May.

## VI.    EVEN IF THE COMMONWEALTH WERE ENTITLED TO BE DISMISSED FROM THIS ACTION, IT IS ENTITLED TO NO OTHER RELIEF

If this Court should determine that the Eleventh Amendment requires the dismissal of the Commonwealth from this action, the Court should not grant the second part of the Commonwealth's motion by dismissing the entire action.[13]  Judges Keeton and Zobel determined (in <u>Daoust</u> and in <u>Kaplan</u>) that the district court can proceed to determine the interests in the interpled fund without the Commonwealth being present. In <u>Horizon Bank</u>, Judge Young determined that the Commonwealth was not an indispensable party and denied the Commonwealth's motion to dismiss the entire case. Judge Young opined, and we agree, that the approach to be followed is "a pragmatic, case-specific examination of whether resolution of a case in the absence of a particular party comports with the Federal Rules' twin goals of fairness and efficiency."  309 F.2d at 191.  Judge Young determined that the Commonwealth was a necessary party.  <u>Id.</u> at 191-92.[14]  Judge Young then went on to analyze the question of "indispensability" in light of the four "gestalt" factors under Rule 19(b), Fed. R. Civ. P.  Judge Young determined that the district court could indeed "properly resolve claims as between the United States and the Commonwealth.  <u>Id.</u> At 194.  The Commonwealth's motion to dismiss the entire action was denied in <u>Horizon Bank</u>, with Judge Young observing that "[w]hatever evils proceeding to judgment or remanding might produce, dismissal of the

---

[13]  Additionally, as a procedural matter, we suggest that the Commonwealth may not first to seek its own dismissal, and then, if successful, seek dismissal of the entire action because it is no longer in the case.  This route makes absolutely no sense.  If the Commonwealth were dismissed on Eleventh Amendment (or any other) grounds, it would be out of the case.  It is elementary that as a non-party the Commonwealth would have no standing to seek further relief.

[14]  This determination is consistent with the express, or implicit, determinations of Judges Keeton, Zobel, and O'Toole in the previous cases presenting the same issue.

entire case multiplies them several-fold." 309 F.Supp.2d 195-96.[15]

## CONCLUSION

The United States has demonstrated that its removal of this interpleader action does not implicate the Eleventh Amendment, and that there is no basis for dismissal of either the Commonwealth or the entire action. The Commonwealth's motion must be denied.

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney

BARBARA HEALY SMITH
Assistant United States Attorney


/s/ Gerald C. Miller
LYDIA BOTTOME TURANCHIK
GERALD C. MILLER
Trial Attorneys, Tax Division
U.S. Department of Justice
Post Office Box 55
Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 307-6560


It is hereby certified that a copy of the above document has been served on each counsel of record, and each party appearing *pro se*, by First Class Mail on this 8th day of February, 2005.


 /s/ Gerald C. Miller
GERALD C. MILLER

---

[15] The prior decisions from the Massachusetts District Court, including Horizon Bank, all focus on discharge rather than distribution as the essence of interpleader. They view these cases as a contest between a nominal plaintiff and the Commonwealth over the issue of discharge. As our analysis in Part III, above, demonstrates, these cases are about the property and the parties' claims against it rather than about claims against each other. There are, in truth, no inter-party claims here and we urge this Court to take a fresh look at the issue.

Service List

Eileen Ryan McAuliffe
Commonwealth of Massachusetts
Department of Revenue
Post Office Box 9565
100 Cambridge Street
Boston, MA 02114-9565

Christine Ann Faro
Charles Rotondi
79 State Street
Newburyport, MA 01950

Michele A. Rooke
Doherty, Wallace, Pillsbury & Murphy
1414 Main Street, Suite 1900
Springfield, MA 01144

Timothy Sullivan
Andover Law, P.C.
451 Andover Street
North Andover, MA 01845

David Rosen
Harmon Law Offices
P.O. Box 610389
Newton Highlands, MA 02461

Hans Hailey
225 Friend Street
Boston, MA 02114

Gary Evans
8 Prospect Street
Georgetown, MA 01833

John Aquino
Anderson & Aquino
260 Franklin Street
Boston, MA 02110