**IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MASSACHUSETTS**

_____

|  |  |
|---|---|
| ) | |
| GMAC MORTGAGE CORPORATION, ) | |
|       **Plaintiff** ) | CIVIL ACTION NO. |
| **v.** ) | 04-12448-GAO |
| ) | (Formerly 2004-01855-B |
| JEFFREY L. BAYKO, SR., LISA J. BAYKO, ) | Essex County Sup. Ct. |
| HELEN E. BAYKO, MICHAEL J. BAYKO, ) |  Massachusetts) |
| BANKNORTH GROUP, HANS R. HAILEY, ) | |
| CHARLES D. ROTONDI, ) | |
| COMMONWEALTH OF MASSACHUSETTS ) | |
| DEPARTMENT OF REVENUE, THE ) | |
| UNITED STATES OF AMERICA, GARY EVANS, ) | |
| CHRISTINE ANN FARO, AND JOHN AQUINO, ) | |
|       **Defendants** ) | |

_____)

## COMMONWEALTH OF MASSACHUSETTS COMMISSIONER OF REVENUE'S REPLY TO UNITED STATES OPPOSITION TO COMMONWEALTH'S MOTION TO DISMISS ENTIRE CASE

The Commonwealth of Massachusetts Commissioner of Revenue ("Commonwealth"), a

defendant in the above-captioned action, files this memorandum in reply to the United States

Opposition to the Commonwealth's Motion to Dismiss Entire Case ("Opposition"), which

Opposition was filed on February 8, 2005.

### PROCEDURAL HISTORY

This is a civil action in interpleader in which plaintiff seeks an order determining, inter alia,

the right of the Commonwealth of Massachusetts to a surplus fund resulting from a foreclosure

of mortgage and sale of real estate by the plaintiffs.  The action was commenced on or about

October 21, 2004 in the Essex County Superior Court for the Commonwealth of Massachusetts

and was removed to the United States District Court for the District of Massachusetts on or about

November 18, 2004 by the defendant, the United States of America (the "United States"),

pursuant to 28 U.S.C. §§ 2410 and 1444.

On December 21, 2004, the Commonwealth filed a Motion to Dismiss the Entire Case on the grounds that (1) the Eleventh Amendment to the Constitution of the United States ("Eleventh Amendment") bars this action against the Commonwealth in this Court and (2) the Commonwealth is an indispensable party to this action.

## DISCUSSION

## I.  THE ELEVENTH AMENDMENT BARS FEDERAL COURT INTERPLEADER ACTIONS AGAINST THE COMMONWEALTH

### A.  The Commonwealth's Sovereign Immunity Is Not Abrogated By The United States Removal Of This Action To Federal Court

The United States first argues that the federal court has subject matter jurisdiction upon removal by the United States.   But whether the original jurisdiction of this Court is conferred by (1) a federal question or (2) the presence of the United States as a party, it does not overcome the Eleventh Amendment immunity of the Commonwealth.  The Eleventh Amendment bars a federal court interpleader action against the Commonwealth whether or not this Court has original jurisdiction over the complaint, except in those cases in which the United States asserts a claim against the State.  West Virginia v. United States, 479 U.S. 305, 311 (1987), and Horizon Bank & Trust Company v. Flaherty, 309 F.Supp.2d 178, 181-186 (D.Mass.2004).

Similarly, in Part II and Part III (B) of its Opposition, the United States argues that its right to remove the action to this Court is absolute and does not implicate the Eleventh Amendment. The Commonwealth does not contest the right of the United States to remove this action to federal court pursuant to 28 U.S.C. §§ 2410 and 1444.  Rather the Commonwealth contests the authority of the federal court, upon removal, to award relief in either the presence or absence of the Commonwealth.  The Commonwealth has not waived its Eleventh Amendment immunity from a suit, such as an interpleader, brought by a private party.

The United States argues that the federal government's removal of a case in which a State is a party is analogous to the impleader of the State in the cases of <u>Parks v. United States</u>, 784 F.2d 20, 23-24 (1st Cir.1986), and <u>Barrett v. United States</u>, 853 F.2d 124, 126-130 (2d Cir. 1988), and is consistent with it's right to join the Commonwealth as a defendant in an action originating in this Court.   While the United States cites no case law for this analogy, United States District Court Judge Robert E. Keeton addressed the same analogy by the United States in his July 26, 2002 Memorandum and Order in the case of <u>First Massachusetts Bank V. Kenneth L. Daoust,</u> 214 F.Supp. 2d 79 (D. Mass 2002), a copy of which was attached to the Commonwealth's Memorandum in Support of the Motion to Dismiss Entire Case filed on December 21, 2004. Judge Keeton held that " the United States attempt to characterize removal and third-party impleaders as situations in which the United States brings the state into federal court, blurs a critical distinction."  214 F.Supp.2d at 83.  Judge Keeton further stated:

> In the removal situation, the Commonwealth continues to find itself defending against the private citizen who commenced the suit; in the impleader situation, the Commonwealth must defend itself, as a third-party defendant, only against the United States.  The fact that courts have held that the Eleventh Amendment does not apply in the latter situation cannot be used as justification for the contention that it should not apply in the former.  The United States contention that it can find no cases barring removal to federal court based on the presence of a state as co-defendant is therefore something of a red herring.  The question about whether removal is allowed in such a situation is a fundamentally separate issue from whether that removal, effectuated to allow the federal court to hear the federal tax lien claims, then overrides the Eleventh Amendment rights of the co-defendant state.  <u>The United States right to removal does not and cannot preclude the Commonwealth from raising its</u> assertion of Eleventh Amendment protection. (Emphasis added.)  <u>Id</u> at 83-84.

In <u>Horizon Bank</u>, Chief Judge Young agreed with the reasoning set forth in <u>Daoust</u> and stated that the "United States' removal does not extinguish the Commonwealth's immunity from suit by a private party in federal court." <u>Horizon Bank</u>, 309 F.Supp.2d 178,184 (D.Mass.2004).  The Court should similarly reject this argument by the United States.

**B.   The Commonwealth's Waiver Of Its Immunity For State Court Interpleader Actions Does Not Waive Its Immunity From Actions Removed To Federal Court.**

In Part IV of its Opposition, the United States contends that "by waiving its sovereign immunity to be sued in interpleader actions [in state court], the Commonwealth's waiver is not limited solely to be sued in the Commonwealth's own courts", (United States Memorandum in Opposition, pages 14-16).   Thus, the United States argues a principle of derivative jurisdiction, citing Minnesota v. United States, 305 U.S.  382, 389 (1939), and Arizona v. Manypenny, 451 U.S. 232, 241 (1981).  As explained by Chief Judge Young in Horizon Bank, 309 F. Supp.2d at 186-189, both cases are distinguishable.  The issue in the Minnesota case concerned a petition for condemnation brought by the State of Minnesota, in state court, for construction of a highway over parcels of land held by the Chippewa Indian tribe pursuant to a treaty between the Chippewas and the United States and an Act of Congress granting the parcels of land to the Chippewas.   The United States removed the case to federal court, with the consent of the State of Minnesota.  The United States then moved to dismiss on the grounds that it had not consented to the suit brought by the State and that the state court had no jurisdiction of the action or over the United States.  The Supreme Court found that "If Congress did not grant permission to bring this condemnation proceeding in a state court, the federal court was without jurisdiction upon its removal.  For jurisdiction of the federal court on removal is, in a limited sense, a derivative jurisdiction.  Where the state court lacks jurisdiction of the subject matter or of the parties, the federal court acquires none…" The Supreme Court found that it had no occasion to consider the {issues} of substantive law, because the lower court had no jurisdiction of the suit and affirmed the decision of the Circuit Court of Appeals to dismiss a judgment by the district court granting the petition of the State for condemnation.

Similarly, in Arizona v. Manypenny supra, the Supreme Court applied the principle of derivative jurisdiction.  The Court held that the state of Arizona could appeal from an adverse judgment in district court, after removal by the respondent from the state court, if statutory authority to seek such review is conferred by state law.  The Supreme Court decided that because Arizona law conferred such authority, removal did not alter the nature of authority conferred, i.e., jurisdiction on removal "is a purely derivative form of jurisdiction, neither enlarging nor contracting the rights of the parties" Id at 240 and 241.  Arizona was accordingly allowed to appeal.

In his decision in  Horizon Bank, supra, Chief Judge Young stated:

> The United States argues that under Manypenny, "where . . .  relevant state-court jurisdiction is found to exist and the question is whether the federal court in effect loses such jurisdiction as a result of removal," the answer is "no."  Thus, the argument goes, if Massachusetts substantive law permits the Commonwealth's courts to adjudicate interpleader actions against the Commonwealth, a federal court can and must apply that substantive law upon removal, and the Commonwealth can no more assert its sovereign immunity here than it could in its own courts.  The most obvious problem with this argument is that it proves far too much.  The Supreme Court has made quite clear that a state may consent to suit in its own courts without extending that consent to federal courts.  See College Savings Bank v. Florida Prepaid Postsecondary Educ. Expense Bd., 527 U.S. 666, 675-676 (1999).  Yet, in virtually any class of cases for which the Commonwealth might consent solely to suit in its own courts, removal will be possible, and by the United States' argument, that possibility will transform consent to state court suit into consent to federal court suit.  College Savings Bank and the cases it cites thus demonstrate that the United States' argument cannot be right . . ..  Manypenny and Minnesota are more about choice of law than about judicial power . . ..  In neither case was there any relevant federal jurisdictional bar.  Assuming removal is proper, there are exceptionally few cases where a state court could exercise personal jurisdiction and subject matter jurisdiction, but where upon removal, a federal court could not exercise them.  Eleventh Amendment cases like this one, however, are among those few.  (Emphasis added.)  Id at 186-189.

The Eleventh Amendment was not an issue before the Supreme Court in Manypenny and Minnesota. Whatever federal jurisdiction is "derived" upon the removal of a state court action, an action brought by a private party against a State triggers the protection of the Eleventh Amendment.  The Eleventh Amendment provides that "the judicial power of the

United States shall not be construed to extend to any suit in law or equity commenced or prosecuted against one of the United States by citizens of another state . . ." The Eleventh Amendment does not distinguish between suits originating in or removed to federal court: any suit in law or equity by a private party is barred from being commenced or prosecuted. This action was not "commenced" by the United States but by a private corporation, GMAC Mortgage Corporation. While the United States has the absolute right to remove this action to federal court, pursuant to 28 U.S.C. §§ 2410 and 1444, its removal does not extinguish the Eleventh Amendment immunity of the Commonwealth from suit by a private party in federal court. See National Private Trucking Council v. Oklahoma State Tax Commission, 515 U.S. 582 (1995), ("We have long recognized that principles of federalism and comity generally counsel that courts should adopt a hands-off approach with respect to state tax administration . . .. it is upon taxation that the several States chiefly rely to obtain the means to carry on their respective governments, and it is of the utmost importance to all of them that the modes adopted to enforce the taxes levied should be interfered with as little as possible.")

Finally, the argument of the United States, that the statutory waiver of the Commonwealth's immunity from interpleader actions in state court constitutes a waiver of Eleventh Amendment immunity as well, has been rejected by the Massachusetts Supreme Judicial Court. The United States District Court for the District of Massachusetts and the Supreme Judicial Court has held that a waiver of sovereign immunity in state court is not a waiver of Eleventh Amendment immunity. See Horizon Bank, 309 F.Supp.2nd at 186 and Irwin v. Ware, 392 Mass. 745, 768, 467 N.E.2d 1292 (1984), (waiver of sovereign immunity in Massachusetts Tort Claims Act, M.G.L.c.258, does not constitute waiver of Eleventh Amendment immunity).

## II.  AN ACTION IN INTERPLEADER IS ONE IN PERSONAM

In Part III (A) of its Opposition, the United States argues that an interpleader action is an action "in rem" that is beyond the scope of Eleventh Amendment protection.  Relying on Tennessee Student Assistance Corp. v. Hood, 124 S.Ct. 1905 (2004), which concerned a discharge in bankruptcy, the United States asserts that this action in interpleader, "is so closely analogous to such a {bankruptcy} proceeding that the same result should be reached" as in Hood.  The Court should reject these arguments because (1) the First Circuit has already stated that an interpleader is one in personam, not one in rem, and (2) the interpleader at issue differs in material ways from the discharge in bankruptcy in Hood.

The First Circuit stated in Metropolitan Property and Cas. Ins. Co. v. Shan Trac, Inc., 324 F.3d 20 (1st Cir. 2003), that an action in interpleader is one in personam, not one in rem. In Metropolitan, an automobile insurer filed an interpleader under 28 U.S.C. § 1335 naming persons injured in an accident involving its insured and seeking a release from liability beyond its policy limits. The First Circuit affirmed the judgment of the district court in part but vacated language purporting to bind nonparties. The court stated that "[i]nterpleader actions are in personam, not in rem, see New York Life Ins. Co. v. Dunlevy, 241 U.S. 518, 521 (1916), and cannot resolve the rights of non-parties to anything." Metropolitan, 324 F.3d at 25.  While the courts of appeals are not uniform in deeming an interpleader an action in personam, and the United States seeks to distinguish or dismiss the Dunlevy decision, Metropolitan and Dunlevy remain the governing law in this circuit and should be applied in this case. See MaineGeneral Medical Center v. Shalala, 205 F.3d 493, 497 (1st Cir. 2000) ("panels are, for the most part, bound by prior panel decisions closely on point").

The Supreme Court, while not characterizing the action before it as in personam or in rem, has held that the Eleventh Amendment applies to an interpleader brought to decide the competing tax claims of two States against an individual estate. Cory v. White, 457 U.S. 88 (1982).  The United States argues that Cory is distinguishable because the plaintiff there sought "injunctive relief against the State" to restrain it "from applying" state law, while the case here, in contrast, is allegedly a "straightforward, post-foreclosure interpleader case." U.S. Opposition at 10 n.9.  But the judgment sought by the stakeholder here is no different in kind or effect from the relief sought in Cory.  Like the relief in Cory, the judgment sought here would bar the Commonwealth from any future effort to collect the state tax owed. Whether that bar takes the form of an injunction against collection or a declaration that the Commonwealth is not entitled to collect, it is the type of coercive judicial action that implicates the sovereign immunity of the States.  Worcester County Trust Co. v. Riley, 302 U.S. 292, 296 (1937) (interpleader against Commonwealth barred by Eleventh Amendment; suit against state officials restraining or "otherwise affecting their actions as state officers" implicates sovereign immunity; see also American Airlines v. Block, 905 F.2d 12, 14 (2d Cir. 1990) ("interpleader is an equitable remedy").

Even if Metropolitan, Dunlevy, and Cory do not control the point raised by the United States here, the Court should not rely on Hood to deem this action one in rem.  Hood is fundamentally premised on the "long-standing precedent" that "States, whether or not they choose to participate in the proceeding, are bound by a bankruptcy court's discharge order no less than other creditors." 124 S.Ct. at 1911.   An interpleader action does not invoke that precedent.  The specific adversary proceeding addressed in Hood was held by the Court to more resemble a motion under the bankruptcy rules than a traditional civil action.  This interpleader action, in contrast, resembles a civil action in the way that it hales the Commonwealth into court.

Furthermore, in Hood the Supreme Court linked in rem jurisdiction in bankruptcy to in rem

jurisdiction in admiralty, stating that "the States' sovereign immunity [does] not prohibit in rem

admiralty actions in which the State did not possess the res," and that "the discharge of a debt by

a bankruptcy court is similarly an in rem proceeding." 124 S.Ct. at 1910. The Supreme Court did

not imply that this analogy might be extended to defeat the immunity of a State whenever the

State is not in possession of a res, as in an interpleader action. Instead, the Supreme Court

indicated that even in rem jurisdiction in bankruptcy was subject to limitation: "Nor do we hold

that every exercise of a bankruptcy court's in rem jurisdiction will not offend the sovereignty of

the State." 124 S. Ct. at 1913 n.5. [1]

Finally, Hood is distinguishable from the interpleader in this case in other material ways.

Unlike a bankruptcy court, the interpleader court does not "have exclusive jurisdiction" over any

person's "property, wherever located."   Hood, 124 S.Ct. at 1910. An interpleader complaint is

not always filed by a debtor or creditor. A stakeholder-plaintiff is under no obligation to list any

other assets or all of the potential creditors to the surplus fund. The complaint does not

"constitute an order for relief." Id.  The only creditors notified of the proceeding are those who

are served with process as defendants under the civil rules. The jurisdiction of the District Court

is not "premised on the debtor and his estate" but rather on its process over the creditors named

as defendants.  The interpleader court lacks jurisdiction to "determine all claims that anyone,

---

[1] In addition, the United States Court of Appeals for the Eleventh Circuit in Georgia Higher Education Assistance Corporation v. Thomas Crowe,Et Als., 2004 U.S.App.Lexis 26872, 18 Fla. L. Weekly Fed.C 116 (December 23, 2004) a copy of which decision is attached hereto, recently applied the Supreme Court's decision in Hood, to two claims brought by a debtor in bankruptcy against the state of Georgia. The Eleventh Circuit stated  "The {Supreme}Court [in Hood] reasoned that a court's jurisdiction over a discharge of debt in bankruptcy is derived from its jurisdiction over the debtor's property, and that exercise of such in rem jurisdiction does not infringe state sovereignty." Id at 1913.  Where the scope of in rem jurisdiction in bankruptcy has thus been thus limited, this Court should decline the invitation of the United States to expand the scope of in rem jurisdiction to a wholly unrelated context; rather, it should apply Metropolitan, Dunlevy, and Cory and hold that an action in interpleader is one in personam.

whether named in the action or not, has to the property or thing in question," because the proceeding is not "one against the world." Id. at 1911; Metropolitan, 324 F.3d at 25. For these reasons, Hood is distinguishable and sovereign immunity applies to the interpleader at issue here.

## III.  THIS COURT CORRECTLY DISMISSED SIMILAR CASES IN THEIR ENTIRETIES.

The United States in Part V of its Opposition, argues that the recent decisions of this Court (O'Toole, J.) barring federal court jurisdiction over the Commonwealth in interpleader actions involving the United States were wrongly decided (United States Memorandum In Opposition, Page 18).

The United States in its Memorandum In Opposition cites the decision in Horizon Bank, supra.   In Horizon Bank, Chief Judge Young found that the Commonwealth was not an indispensable party and denied the Commonwealth's motion to dismiss the entire case. The Commonwealth disagrees with this aspect of Judge Young's decision. The District Court, in Horizon Bank, should have ruled (1) when a District Court determines whether a State is an indispensable party to an interpleader action in federal court, it must give controlling weight to the fact that full joinder of the parties is not feasible due to its sovereign immunity, or (2) even upon a balancing of the factors set forth in Fed.R.Civ.P.19 (b), the Commonwealth is an indispensable party to any action of interpleader in federal court in which the Commonwealth makes a claim for state taxes and it is immune from an adjudication of its claim relative to the claims of the private parties. "In determining whether a party is indispensable, a necessary party's immunity from suit is an important factor." 4 Moore's Federal Practice § 19.05{2}{c}. "Courts are reluctant to require the absentee to protect its own interest if intervention would result in the absentee's waiving an immunity to suit." Id. "In such a case, the court may well

conclude that the action should be dismissed." Id.; see Wichita and Affiliated Tribes of

Oklahoma v. Hodel,788 F.2d 765, 766 (D.C. Cir. 1986) (ability to intervene did not mitigate the

prejudice of proceeding in the absence of tribe; "It is wholly at odds with the policy of tribal

immunity to put the tribe to this Hobson's choice between waiving its immunity or waiving its

right to not have a case proceed without it.");  id. at 775 (if the opportunity to brief an issue as a

non-arty were enough to eliminate prejudice, non-joinder would never be a problem since the

court could always allow the non-joinable party to file amicus briefs.  Being a party to a suit

carries with it significant advantage beyond the amicus' opportunities, not the least of which is

the ability to appeal an adverse judgment."); First Federal Savings, No. 03-10168-GAO (D.

Mass. Oct.6.2003) ("{T}o permit the Commonwealth to intervene or participate as amicus_ is

simply to pressure the Commonwealth to do what it objects to doing (rightly under the Eleventh

Amendment), that is, to participate in the adjudication of claims in a federal court.").  In his

Amended Judgment in Horizon Bank, Chief Judge Young, in discussing this Court's decision in

First Federal Savings, stated that "there is much to be said for this reasoning", see Horizon Bank,

309 F.Supp.2d at 192.  This Court dismissed each of the Cape Ann actions in their entirety on the

grounds that the Commonwealth is an indispensable party to the interpleader and it should enter

the same judgment here.[2]

---

[2] The recent cycle of removal and dismissal reflected in the recurrence of this issue in numerous cases
before the United States District Court for the District of Massachusetts is especially troubling in light of
the fact that, for many years, the United States acquiesced in the adjudication of interpleader actions in
Massachusetts state courts and received distributions of interpleader funds from state courts. The United
States has by the express provisions of 28 U.S.C. § 2410, waived its immunity in both federal and state
court interpleader actions.  See the attached copy of the Joint Motion for Release of Funds filed on March
11, 1998, pursuant to a February 11, 1998 Judgment After Rescript, (copy is also attached hereto,) which
judgment was entered by the Massachusetts Appeals Court after an appeal from the Massachusetts
Superior Court decision in the case of Hayes v. Woods, Suffolk Superior Court, C.A. No. 93-00977D.
The Docket History of that case, a copy of which is attached hereto, reflects a May 26, 1994 state court
distribution to the United States, a defendant in the matter.  Also attached hereto is a copy of the July 5,
1989 Memorandum of Decision and Order in the matter of Guaranty First Trust Bank v. Praught,
Middlesex Superior Court C.A. No. 87-4722. which also reflects a distribution to the United States by the

# CONCLUSION

For the reasons stated above, and those in the Commonwealth's Motion to Dismiss Entire Case and the Memorandum in Support of the Motion, the Commonwealth requests that the Court dismiss the Commonwealth from this case on the basis of the Eleventh Amendment. In addition, the Court should dismiss the entire action, due to the absence of the Commonwealth as an indispensable party.

ALAN L. LEBOVIDGE
**COMMISSIONER OF REVENUE**

**By his attorney,**
**THOMAS F. REILLY**
**MASSACHUSETTS ATTORNEY GENERAL**

 **/s/ Eileen Ryan McAuliffe /s/**
 **Kevin W. Brown, General Counsel**
 **Eileen Ryan McAuliffe (BBO# 435260)**
 **Department of Revenue**
 **Litigation Bureau - P.O. Box 9565**
 **100 Cambridge Street**
 **Boston, MA  02114-9565**
 **(617) 626-3217**

**DATED: March 3, 2005**
188283/ERM

---

state court.  See also <u>Heritage Bank for Savings v. Doran</u>, 399 Mass. 855, 507 N.E. 2d 690 (1987) and <u>Everett Credit Union v Allied  Ambulance Services, Inc.</u>, 12 Mass.App.Ct. 343, 424 N.E. 2d 1142 (1981).



ALAN LEBOVIDGE
COMMISSIONER

KEVIN W. BROWN
GENERAL COUNSEL

*The Commonwealth of Massachusetts*
*Department of Revenue*
*Legal Division —Litigation Bureau*
*P.O. Box 9565*
*100 Cambridge Street*
*Boston, Massachusetts  02114-9565*

**March 3, 2005**

Mr. Tony Anastas, Clerk
U.S. District Court
John Joseph Moakley Courthouse
1 Courthouse Way, Suite 2300
Boston, Massachusetts 02210

Re:    GMAC Mortgage Corporation v. Jeffrey L. Bayko, Sr., et al,
       U.S. District Court C.A. No. 04-12448-GAO

Dear Mr. Anastas:

Enclosed please find the Defendant, the Commonwealth of Massachusetts Commissioner of Revenue ("Commonwealth's") Reply to the United States Opposition to the Commonwealth's Motion to Dismiss Entire Case ("Reply") for filing in the above-referenced action.

Copies of these documents have been served on the parties listed on the Certificate of Service attached hereto.

Thank you for you assistance.

Sincerely,

/s/ Eileen Ryan McAuliffe
Eileen Ryan McAuliffe
Counsel to the Commissioner
(617) 626-3217

Enclosure

188117/ERM

13

**CERTIFICATE OF SERVICE**

I, Eileen Ryan McAuliffe, hereby certify that I have served copies of the within Commonwealth of Massachusetts Commissioner of Revenue's Reply to the United States Opposition to the Commonwealth's Motion To Dismiss Entire Case on the following parties by first class U.S. mail postage prepaid:

David M. Rosen, Esquire
Harmon Law office
150 California Street
Newton Highlands, Massachusetts 02461-0389


Jeffrey L. Bayko, Sr.
C/O Gary Evans, Esq.
Evans, Evans &Bingham
8 Prospect Street
Georgetown, Massachusetts 01833


Lisa J. Bayko
C/O Charles Rotondi, Esq.
79 State Street
Newburyport, Massachusetts  01950


Helen E. Bayko
Michael J. Bayko
C/O Timothy Sullivan, Esq.
451 Andover Street
Suite 185
Andover, Massachusetts 01845

Attorney Lydia Bottome Turanchik
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 55
Ben Franklin Station
Washington, D.C. 20044


Attorney Barbara Healy Smith
Assistant U.S. Attorney
John Joseph Moakley U.S. Courthouse
One Courthouse Way, Suite 9200
Boston, Massachusetts 02210

Attorney Michele Rooke
Doherty, Wallace, Pillsbury & Murphy
One Monarch Street
1414 Main Street, Suite 190
Springfield, 01144-1900


Hans R. Hailey
225 Friend Street
Boston, Massachusetts 02114


Christine R. Faro
79 State Street
Newburyport, Massachusetts  01950


Charles Rotondi, Esq,
79 State Street
Newburyport, Massachusetts 01950


Gary Evans, Esq.
58 Main Street
Topsfield, Massachusetts 01983


John Aquino, Esq.
Anderson & Aquino, LLP
260 Franklin Street
Boston, Massachusetts 02110



                                        /s/ Eileen Ryan McAuliffe
                                        Eileen Ryan McAuliffe

DATED: March 3, 2005
188117/ERM



COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss

SUPERIOR COURT
C.A. NO. SUC93-00977-D

)
G. HOWARD HAYES, Individually,        )
and as Trustee of the MASHPEE         )
SELF-STORAGE NOMINEE TRUST;           )
J. BRUCE MACGREGOR; AND ROGER P.      )
WILLIAMS,                             )
              Plaintiffs              )
                                      )
v.                                    )
                                      )
PAUL J. WOODS, Individually           )
and as Trustee of the STEPHEN-        )
PAMELA REALTY TRUST, THE UNITED       )
STATES, DEPARTMENT OF INTERNAL        )
REVENUE SERVICE, THE DEPARTMENT       )
OF REVENUE OF THE COMMONWEALTH        )
OF MASSACHUSETTS,                     )
              Defendants              )
                                      )

RECEIVED

MAR 11 1998

SUPERIOR COURT
DEPARTMENT OF THE TRIAL COURT
FOR CIVIL BUSINESS

## JOINT MOTION FOR RELEASE OF FUNDS

Three parties[1] jointly request this court to release funds to
them which are currently held by this court since deposit of escrow
funds on March 2, 1993.  The parties have a judgment from the Appeals
Court for the Commonwealth of Massachusetts, Case No. 96-P-948, which
vacates the April 4, 1995 judgment of Suffolk Superior Court and
enters a new judgment.  The Appeals Court judgment declares that the
attorney's lien of Stephen V. Murphy has priority to the Notices of

----------
1.    'The parties are the Commonwealth of Massachusetts Department of
Revenue, Michael J. Markoff ("Markoff") and Stephen V. Murphy
(Murphy"), the attorneys who represented the defendant, Paul J. Woods,
in the underlying Barnstable District Court Collection action.  Both
Murphy and Markoff intervened in this action on July 20, 1993.

Massachusetts Tax Lien of the Department of Revenue for the
Commonwealth of Massachusetts and is in an amount covering Stephen V.
Murphy's fees and expenses, including the amount he incurred by
retaining Attorney Michael J. Markoff.  No appeals have been taken
from the Appeals Court judgment.

On August 1, 1994, this court ordered the distribution of
$74,363.41 from the Court-held fund to the other defendant in this
action, the United States, in full satisfaction of any and all claims
of the United States to said fund.

As of February 28, 1998, the amount owed to each of the parties,
reflecting the accrual of interest to defendants Stephen V. Murphy and
Michael J. Markoff at the rate of ten percent (10%) per annum from the
June 30, 1992 settlement of the underlying Barnstable District Court
action, is as follows:

|  | AWARD | INTEREST FROM 6/30/92 THROUGH 6/30/97 | INTEREST FROM 7/1/97 THROUGH 3/31/98 | TOTAL DUE THROUGH 3/31/98 |
|---|---|---|---|---|
| STEPHEN V. MURPHY: | $ 5,886.75 | $2,943.37 | $   441.45 | $ 9,271.57 |
| MICHAEL J. MARKOFF | 13,847.50 | 6,937.75 | 1,038.60 | 21,823.85 |

MASSACHUSETTS DEPARTMENT OF REVENUE:  BALANCE OF COURT-HELD FUND AFTER
PAYMENTS TO STEPHEN V. MURPHY AND MICHAEL J. MARKOFF.

The parties also request that if the payment of the court-held
fund is made after March 31, 1998, interest accruing after that date
shall be calculated by the clerk of the Court at the rate and in the
manner applicable to post-judgment interest.

Accordingly, the moving parties request this Court to order the distribution of the fund held in this action.

Respectfully submitted,

STEPHEN V. MURPHY,

Pro se,

STEPHEN V. MURPHY, ESQ.
13 Steeple
Post Office Box 247
Mashpee, MA  02649


MICHAEL J. MARKOFF

Pro se,

MICHAEL J. MARKOFF, ESQ.
184 Jones Road
Post Office Box 212
Falmouth, MA  02541-0212


MITCHELL ADAMS
COMMISSIONER OF REVENUE
COMMONWEALTH OF MASSACHUSETTS

By his attorney,

EILEEN RYAN MCAULIFFE
Counsel to the Commissioner
Department of Revenue
Litigation Bureau, Room 808
P.O. Box 9688
100 Cambridge Street
Boston, Massachusetts 02114
(617) 626-3217


4382/ERM

COMMONWEALTH OF MASSACHUSETTS
SUFFOLK SUPERIOR COURT
PUBLIC CIVIL DOCKET & HISTORY

SUCV93-00977                          As of 06/12/96

Hayes et al v Woods et al

```
-----------------------------------------------------------------------
ILE/RTRN DATE 02/16/93    CASE STATUS dappen    Disposd: appeal pending
  STATUS DATE 04/28/95        SESSION D         Civil D
  CASE ORIGIN 1             CASE TYPE D99        Misc equitable remedy
  LEAD CASE                  TRACK F   JURY n
------------------------- Tracking Deadlines --------------------------
      SERVICE 05/17/93       ANSWER 07/16/93     RULE 12/19/20 07/16/93
      RULE 15 07/16/93    DISCOVERY 12/13/93               RULE 56 01/12/94
    FINAL PTC 02/11/94   DISPOSITION 04/12/94
-----------------------------------------------------------------------
```

intiff
er P Williams
ive 02/16/93

Private Counsel 558826
Maureen E Curran
Conn, Kavanaugh, Rosenthal & Peisch
10 Post Office Square
4th floor
Boston MA 02109
Phone: 617-482-8200
Fax: 617-482-6444
Active 06/03/94 Notify

Private Counsel 561590A
Thomas E Kenney
Pierce & Mandell
1 Beacon Street
13th floor
Boston MA 02108
Phone: 617-720-2444
Fax: 617-367-1363
Active 08/16/93 Notify

Private Counsel 393260
Thomas E Peisch
Conn, Kavanaugh, Rosenthal & Peisch
10 Post Office Square
4th floor
Boston MA 02109
Phone: 617-482-8200
Fax: 617-482-6444
Active 08/12/93 Notify

Private Counsel 550933
Therese M LaRussa
Conn, Kavanaugh, Rosenthal & Peisch
10 Post Office Square

APP1

COMMONWEALTH OF MASSACHUSETTS
SUFFOLK SUPERIOR COURT
PUBLIC CIVIL DOCKET & HISTORY

SUCV93-00977.                                    As of 06/12/96

Hayes et al v Woods et al                         Page 2

                         4th floor
                         Boston MA 02109
                         Phone: 617-482-8200
                         Fax: 617-482-6444
                         Withdrawn 08/16/93

aintiff                  See above.
Bruce MacGregor          See above.
tive 02/16/93            See above.
                         See above.

aintiff                  See above.
Howard Hayes, Trustee    See above.
shpee Self-Storage Nominee Tr   See above.
tive 02/16/93            See above.

aintiff                  See above.
Howard Hayes             See above.
tive 02/16/93            See above.
                         See above.

fendant                  Private Counsel 548131
pt of Revenue of Comm of Mass   Salvatore M Giorlandino
rved: 02/24/93           Mass Atty General's Office
swered: 03/31/93         1 Ashburton Place
swered 03/31/93          Room 2019
                         Boston MA 02108 1698
                         Phone: 617-727-2200 2092
                         Fax: 617-727-3251
                         Active 05/15/95 Notify

                         Private Counsel 435260
                         Eileen Ryan McAuliffe
                         Mass Revenue Dept
                         100 Cambridge Street
                         Room 808 - Legal Dept
                         Boston MA 02204 7068
                         Phone: 617-727-7150
                         Active 03/22/93 Notify

fendant
 Internal Revenue Service
rved: 02/24/93
swered: 03/31/93
swered 03/31/93

APP2

COMMONWEALTH OF MASSACHUSETTS
SUFFOLK SUPERIOR COURT
PUBLIC CIVIL DOCKET & HISTORY

SUCV93-00977                          As of 06/12/96

Hayes et al v Woods et al                          Page 3

efendant                          Private Counsel 547590
ul J Woods Trustee                Michael J Markoff
ephen-Pamela Realty Trust         PO Box 212
swered: 05/20/93                  Falmouth MA 02541 0212
swered 05/20/93                   Phone: 508-548-5500
                                  Fax: 508-548-5520
                                  Active 05/20/93 Notify

efendant                          See above.
ul J Woods
swered: 05/20/93
swered 05/20/93

efendant/intervenor               See above.
ephen V Murphy
O Box 247
shpee MA 02649
O#363840
tive 07/20/93

efendant/intervenor               See above.
chael J Markoff
O Box 212
lmouth MA 02541
O#547590
tive 07/20/93

ias plaintiff name                See above.
shpee Self-Storage Nominee Tr     See above.
tive 02/16/93                     See above.
                                  See above.

ias defendant name
ephen-Pamela Realty Trust
tive 02/16/93

* * *   D O C K E T   * * *
--------------------------------------------------------------------------
TE    PAPER ENTRY
-----  -----  -------------------------------------------------------------
/16/93   1.0 Complaint
/16/93        Origin 1, Type D99, Track F.
/16/93   2.0 Civil action cover sheet re: complaint
/01/93   3.0 Motion of plffs to deposit funds into court
/02/93        Motion (P#3) allowed (Peter M Lauriat, Justice) Notice sent
              3/4/93

COMMONWEALTH OF MASSACHUSETTS
SUFFOLK SUPERIOR COURT
PUBLIC CIVIL DOCKET & HISTORY

SUCV93-00977

As of 06/12/96

Hayes et al v Woods et al

Page 4

* * *  D O C K E T  * * *

| ATE | PAPER | ENTRY |
|------|-------|-------|
| 3/02/93 | 4.0 | ORDER:It is hereby ordered that the plffs. shall deposit the funds, which are the subject of the current interpleader action, and which are currently being held in an interest bearing account immediately upon receipt of this order. Additionally, the plffs. shall continue to pay the monthly payments into court pursuant to the settlement agreement in the companion action, Wood v Hayes, C.A. 90-2520 Barnstable Superior Court. (Lauriat, J.). Notice sent 3/4/93 |
| 2/24/93 | 5.0 | SERVC RETRND: US Dept of Internal Revenue Ser (Defendant) By giving in hand to Paula Winn, at U.S. Atty's. Office 2/18/93 |
| 2/24/93 | 6.0 | SERVC RETRND: Dept of Revenue of Comm of Mass (Defendant) By giving in hand to Ms. M. Damour 2/18/94 |
| 2/24/93 | 7.0 | SERVC RETRND (summons): Attorney General by giving in hand to Sandra McDonald 2/18/93 |
| 3/12/93 | | $174,218.33 pd in to Court. |
| 3/31/93 | 8.0 | ANSWER of deft Commonwealth of Mass Commissiner or Revenue |
| 4/09/93 | | $3041.46 paid into Court. |
| 5/10/93 | 8.1 | ANSWER: US Internal Revenue Service |
| 5/14/93 | | $2498.36 paid into Court. |
| 5/20/93 | 9.0 | ANSWER: Paul J Woods Indiv & Trustee |
| 6/10/93 | | Case status changed to "Needs review for answers" at service deadline review |
| 6/10/93 | | $2715.55 paid into Court. |
| 7/12/93 | | $2868.74 paid into Court. |
| 7/20/93 | 10.0 | Motion of Michael J Markoff & Stephen V Murphy to intervene as party defts - Allowed, (White,J) Notice sent 7/26/93 |
| 7/20/93 | 11.0 | ANSWER of defts/Intervenors Michael J Markoff & Stephen V Murphy Filed by leave of court (White,J) |
| 8/10/93 | | Case status changed to "Needs discovery" at answer deadline review |
| 8/09/93 | | $2914.78 paid into Court. |
| 9/02/93 | | $2895.68 paid into Court. |
| 1/04/93 | | $3025.11 paid into Court. |
| 2/08/93 | | $3041.46 paid into Court. |
| 1/05/94 | | $3,027.00 paid into Court. |
| 2/02/94 | | $3,041.46 paid into Court. |
| 3/07/94 | | $3,027.14 paid into Court. |
| 4/19/94 | | $3041.46 paid into Court. |
| 5/05/94 | | $3041.46 paid into Court. |
| 5/26/94 | 12.0 | Stipulation for the entry of an order of distribution ato the Uniated States |

COMMONWEALTH OF MASSACHUSETTS
SUFFOLK SUPERIOR COURT
PUBLIC CIVIL DOCKET & HISTORY

SUCV93-00977

As of 06/12/96

Hayes et al v Woods et al

Page 5

* * *   D O C K E T   * * *

```
TE      PAPER ENTRY
------  -----  ------------------------------------------------------------
/03/94   13.0  Joint motion of all active parties to continue pretrial
               conference scheduled for June 21, 1994 (w/o opposition)
/13/94         Motion (P.13) Allowed (White,J) notice sent 6/29/94
/28/94   13.1  ORDER: The Clerk of the Court is directed to pay the sum of
               $74,363.41 to the United States forthwith from the fund relating
               to the above-captioned case and held in the Registry of the
               Court, with interest thereon from and after May 1, 1994 as set
               forth in said stipulation (White,J)
/13/94   14.0  Motion of intervenor defs Michael J Markoff & Stephen V Murphy
               for Summary Judgment with opposition
/13/94   15.0  Motion of Commissioner of Revenue for Summary Judgment with
               opposition
/01/94         $2878.66 paid into Court.
/30/94         $76,361.73 paid to The United States of America.
/06/94         $2,937.41 paid into Court.
/17/94   16.0  Agareed upon statement of facts
/28/94         $3041.46 paid into Court.
/28/94         $3041.46 paid into Court.
02/94          $2899.67 paid into Court.
27/94          $3041.46 paid into Court.
06/95          $3041.46 paid into Court.
01/95          $3041.46 paid into Court.
04/95    17.0  ORDER AND JUDGMENT Commissioner of Revenue's Motion for Summary
               Judgment is ALLOWED. There is no Massachussetts law cited to the
               Court on the question of the priority between a tax lien and an
               atty lien. THe court determines that priority should be based on
               whichever lien arose first; her it is the tax lien. See Mass.
               G.L. c62C s 50(a) ("The lien shall arise at the time the
               assessment is made or deemed to be made and shall continue until
               the liability for the amount assessed deemed to be assessed is
               satisfied"). The tax lien arose before the services of the
               Intervenor-Deft Markoff and Murphy were engaged. Judgment is to
               enter declaring the priority of the Massachusetts Tax Lien SO
               ORDERED (Roseman,J) entered on docket pursuant to Mass. R.
               Civ.P. 58(a) and notice sent to parties pursuant to Mass. R.
               Civ.P. 77(d)
26/95          $2,965.06 paid into Court.
28/95    18.0  Notice of appeal of Intervenor-def Michael J Markoff
28/95    19.0  Notice of appeal of Intervenor-def Steven V Murphy
28/95    20.0  Designation Pursuant to MARP 18(b) & Statement of Issues of
               deft/ Intervenor Michael J Markoff
```

APP5

COMMONWEALTH OF MASSACHUSETTS
SUFFOLK SUPERIOR COURT
PUBLIC CIVIL DOCKET & HISTORY

SUCV93-00977
As of 06/12/96

Hayes et al v Woods et al
Page 6

* * *   D O C K E T   * * *

```
.TE    PAPER  ENTRY
-----  -----  --------------------------------------------------------------
/04/95        Notice to Justice David M Roseman of filing of notice of appeal
/04/95        Notice of service of notice of appeal to: Maureen E Curran, Esq,
              Thomas E kenney, Esq, Thomas E Peisch, Esq and Therese M
              LaRussa, Esq, of Messrs Conn, Kavanaugh, Rosenthal & Peisch and
              Eileen Ryan- McAuliffe, Esq
/30/95        Notice of Assembly of record on appeal
/05/95        $2,964.58 paid into Court.
/03/95        $3041.46 paid into Court.
/20/96  21.0  Motion of deft Dept of Revenue to dismiss appeals (with
              opposition)
/20/96  22.0  Opposition of intervenor defts to motion of deft Dept of Revenue
              to dismiss appeals & cross-motion of intervenor defts to enlarge
              time for filing appeal for ten days after the entry of this
              Court's Order deciding this motion (w/o opposition)
/28/96        (P#21) Accepting as to the intervenors statment that they did
              not receive the notice of assembly of the record until on or
              about April 26, 1996 - the court finds excusable neglect and
              shall deny this motion to dismiss appeal and shall enlarge time
              for docketing the appeal to June 10, 1996 (Smith Jr, Justice)
              Notice sent 5/29/96
/12/96        Notice of assembly of record on appeal
```

* * *   C A L E N D A R   * * *

```
.E     COURT EVENT                  EVENT STATUS              SES  SCH DATE
-----  -------------------------    ---------------------     ---  --------
22/94  ADR: screening conference    Opt out of ADR             D   04/22/94
21/94  CNFRNC: final pre-trial      Pltf did not appear        D   06/21/94
13/94  HRNG: Rule56 motion          Rescheduled                D   09/13/94
19/94  HRNG: Rule56 motion          Rescheduled                D   09/21/94
28/94  HRNG: Rule56 motion          Held                       D   09/28/94
```

COPY   ATTEST:

_ASSISTANT CLERK_

APP6

COMMONWEALTH OF MASSACHUSETTS
COUNTY OF SUFFOLK
THE SUPERIOR COURT

DOCKET# SUCV93-00977

RE:  Hayes et al v Woods et al

TO:  Eileen Ryan McAuliffe
     Mass Revenue Dept
     100 Cambridge Street
     Room 808 - Legal Dept
     Boston MA 02204

NOTICE OF DOCKET ENTRY

You are hereby notified that on 04/04/95 the following entry
was made on the above referenced docket:

     ORDER AND JUDGMENT Commissioner of Revenue's Motion for Summary
     Judgment is ALLOWED. There is no Massachussetts law cited to the
     Court on the question of the priority between a tax lien and an
     atty lien. THe court determines that priority should be based on
     whichever lien arose first; her it is the tax lien per Mass.
     G.L. c62C s 50(a) ("The lien shall arise at the time the
     assessment is made or deemed to be made and shall continue until
     the liability for the amount assessed deemed to be assessed is
     satisfied"). The tax lien arose before the services of the
     Intervenor-Deft Markoff and Murphy were engaged. Judgment is to
     enter declaring the priority of the Massachusetts Tax Lien SO
     ORDERED (Roseman,J) entered on docket pursuant to Mass. R. Civ.P.
     58(a) and notice sent to parties pursuant to Mass. R. Civ.P.
     77(d)

Dated: 4th day of April, 1995

Michael Joseph Donovan
Clerk of the Courts

BY:
     James P Kelly, Asst Clerk
     Telephone: 617-725-8516

17

## COMMONWEALTH OF MASSACHUSETTS

NOTICE SENT: 4-4-95

SUFFOLK, ss.
M.E.C.(C,K,R&P)    E.R.M.(MRD)         SUPERIOR COURT
T.E.K.(C,K,R&P)    M.J.M.              CIVIL ACTION
T.E.P.(C,K,R&P)                        NO. 93-00977D
              (AC)

### G. HOWARD HAYES[1] and Others[2]

### VS.

### PAUL J. WOODS[3] and Others[4]

### ORDER

Commissioner of Revenue's Motion for Summary Judgment is
ALLOWED. There is no Massachusetts law cited to the court on the
question of the priority between a tax lien and an attorney lien.
The court determines that priority should be based on whichever
lien arose first; here it is the tax lien. See Mass. G. L. c. 62C
§50(a)("The lien shall arise at the time the assessment is made or
deemed to be made and shall continue until the liability for the
amount assessed or deemed to be assessed is satisfied"). The tax
lien arose before the services of the Intervenor-Defendant Markoff
and Murphy were engaged. Judgment is to enter declaring the
priority of the Massachusetts Tax Lien. SO ORDERED.

David M. Roseman
Justice of the Superior Court

DATED: March 28, 1995

---

[1] Individually and as Trustee of the Mashpee Self-Storage
Nominee Trust

[2] J. Bruce MacGregor; Roger P. Williams and G. Howard Hayes.

[3] Individually and as Trustee of the Stephen-Pamela Realty
Trust.

[4] The United States; Department of Internal Revenue Service;
Department of Revenue of the Commonwealth of Massachusetts.

JUDGMENT ENTERED ON DOCKET _____APRIL 4,_____ 19 95
PURSUANT TO THE PROVISIONS OF MASS.R.CIV.P. 5.
AND NOTICE SENT

COMMONWEALTH OF MASSACHUSETTS
COUNTY OF SUFFOLK
THE SUPERIOR COURT

DOCKET# SUCV93-00977D

RE:  Hayes et al v Woods et al



TO:  Salvatore M Giorlandino
     Mass Atty General's Office
     200 Portland Street
     Government Bureau/Trial Division
     Boston MA 02114-1698

---

NOTICE OF DOCKET ENTRY

You are hereby notified that on 02/11/98 the following entry
was made on the above referenced docket:

    JUDGMENT FOR DEFTS AFTER RESCRIPT (PURSUANT TO MASS.R.A.P. 28)
    That Mr. Murphy's lien has priority over the lien of Dept and is
    in an amount covering his fees and expenses, including  the
    amount he incurred by retaining Mr. Markoff entered on docket
    pursuant to Mass R. Civ.P. 58(b)and notice sent to parties
    pursuant to Mass. R. Civ. P 77(d)

Dated: 11th day of February, 1998

Michael Joseph Donovan
Clerk of the Courts

BY:
    (Unassigned)
    Telephone: 617-725-8200

**N.B. FOR CLERK'S USE ONLY**
JUDGMENT ENTERED ON DOCKET ___February 11,_____ 19 98
PURSUANT TO MASS.R.CIV.P.58(b) AND NOTICE SENT
TO PARTIES PURSUANT TO MASS.R.CIV.P.77(d) AS FOLLOWS:

24

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

# Commonwealth of Massachusetts

SUFFOLK, ss.

SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT
CIVIL ACTION

No. __93-0977_____

__G. HOWARD HAYES ET ALS_____ , Plaintiff(s)

v.

__PAUL J. WOODS ET ALS_____ , Defendant(s)

## JUDGMENT FOR DEFENDANT[S] AFTER RESCRIPT
### (PURSUANT TO MASS.R.A.P.28)

This action was appealed to the · *Appeals Court · ~~Supreme Judicial Court~~ · the issues having been duly heard and the _____Appeals_____ Court having duly issued a rescript, it is ordered and adjudged:

THAT MR. MURPHY'S LIEN HAS PRIORITY OVER THE LIEN OF THE DEPARTMENT AND IS IN AN AMOUNT COVERING HIS FEES AND EXPENSES, INCLUDING THE AMOUNT HE INCURRED BY RETAINING MR. MARKOFF.

Dated at Boston, Massachusetts, this ___10th_____ day of __February_____ 19 98

MICHAEL JOSEPH DONOVAN, Clerk/Magistrate

By: _____ , Asst. Clerk

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

NOTICE TO PARTIES: PURSUANT TO MASS.R.A.P.26(c) A PARTY DESIRING COSTS SHALL STATE THEM IN AN ITEMIZED AND VERIFIED BILL OF COSTS, WHICH SHALL BE FILED WITH THE CLERK OF THIS COURT, WITH PROOF OF SERVICE, WITHIN FOURTEEN (14) DAYS AFTER ENTRY OF THIS JUGMENT.

*Strike inapplicable words.

Form Mass.R.A.P. 7–5-81–1,000

A TRUE COPY OF JUDGEMENT DULY ENTERED ON ___2/11___ 19 98

COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, SS

44

SUPERIOR COURT
C.A. 87-4722

GUARANTY FIRST TRUST CO.
Plaintiff

vs.

NORMAN J. PRAUGHT, et. al.,
Defendants

MEMORANDUM OF DECISION AND ORDER

This memorandum of decision and order relates to an interpleader action brought by plaintiff. This court issued a preliminary decision on May 31, 1989 and requested the parties submit briefs detailing their claims against the interpleaded funds as of June 10, 1989. A hearing was held on June 9, 1989 during which the requested briefs were submitted. At the hearing, counsel for plaintiff submitted a motion for attorneys fees.

Discussion

Attorney fees may be awarded to a disinterested stakeholder at the discretion of the trial judge where equity warrants the distribution. See Chemical Bank v. Richmull Associates, 666 F. Supp. 616 (1987). The plaintiff in the present action initiated these proceedings without an interest in the eventual outcome of the distribution; equity warrants the award of reasonable attorney's fees after the distribution of the federal and state liens.

*(over →)*

2

Pursuant to this Court's previous order, the following distribution of funds is ordered in descending order of priority:

|  | Tax Year | Amount |
|---|---|---|
| 1. United States | 1980 | $ 7,940.63 |
| 2. United States | 1981 | 23,251.82 |
| 3. United States | 1982 | 7,471.35 |
| 4. Massachusetts | 1983 | 3,389.04 |
| 5. United States | 1983 | 14,273.44 |
| 6. Massachusetts | 1980,81 & 82 | 8,331.36 |
| 7. J.A. Marino | | 10,100.00 |
| 8. C.D. Boiler Works | | 8,750.00 |
| 9. Premier Roofing | | 16,600.31 |
| 10 Pereira | | 11,571.23 |
| 11 Capital Glass Co. | | 2,433.37 |
| 12 Capital Bldg. Specialty | | 3,173.96 |

## ORDER

It is hereby **ORDERED** that reasonable attorney's fees are to be awarded to the plaintiff. Plaintiff is **Ordered** to prepare a Memorandum detailing its legal expenses incurred in this action.

3

It is further **Ordered** that plaintiff is to submit to this Court an up-to-date accounting of the disputed stake plus earned interest as of August 17, 1989. A hearing will be held at that time and distribution ordered pursuant to the above schedule. All parties are **ordered** to attend.

Robert J. Hallisey
Justice of the Superior Court

7/3/89

Dated:                , 1989

Entered, July 5, 1989

Search - 1 Result - (crow) and date is 12/2004

Source: Legal > Federal Legal - U.S. > Circuit Court Cases - By Circuit > 11th Circuit - US Court of Appeals Cases ⓘ
Terms: (crow) and date is 12/2004 (Edit Search)

*2004 U.S. App. LEXIS 26872, \*; 18 Fla. L. Weekly Fed. C 116*

IN RE: THOMAS **CROW**, JENNIFER **CROW**, Debtors. GEORGIA HIGHER EDUCATION ASSISTANCE CORP., GEORGIA STUDENT FINANCE COMMISSION, Plaintiffs-Appellants, versus THOMAS A. **CROW**, JENNIFER **CROW**, Defendants-Appellees.

No. 04-10369

UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

2004 U.S. App. LEXIS 26872; 18 Fla. L. Weekly Fed. C 116

**December** 23, 2004, Decided
**December** 23, 2004, Filed

**PRIOR HISTORY:** [\*1] Appeal from the United States District Court for the Southern District of Georgia. D. C. Docket No. 03-00136-CV-11 & BKCY No. 02-13181 BKC-JS.

**DISPOSITION:** Affirmed in part, vacated in part and remanded.

## CASE SUMMARY

**PROCEDURAL POSTURE:** Defendants, two state agencies, appealed a judgment of the United States District Court for the Southern District of Georgia, which affirmed a bankruptcy court's denial of the agencies' motion to dismiss in plaintiff debtors' adversary proceedings brought against the agencies pursuant to the debtors' filing of a Chapter 7 petition for bankruptcy relief. The bankruptcy court had dismissed a third claim of the debtors.

**OVERVIEW:** The debtors claimed that student loan obligations were dischargeable and sought damages because of the agencies' attempt to collect in violation of the automatic stay of 11 U.S.C.S. § 362(a). The district court held that the adversary proceedings were not barred by the Eleventh Amendment. On appeal, the court held that the dismissal of the claim that the loans were dischargeable was properly denied based on a prior case of the United States Supreme Court, which held that the seeking of discharge was an in rem proceeding that did not implicate the Eleventh Amendment. The court reversed as to the automatic stay claim after finding that Congress' attempt under 11 U.S.C.S. § 106(a) to abrogate Eleventh Amendment immunity in proceedings under 11 U.S.C.S. § 362 was an unconstitutional overreaching of its bankruptcy clause powers under U.S. Const. art. I, § 8, cl. 4. The bankruptcy court had no authority to entertain the in personam claim against the agencies absent sovereign consent. The court found that the provision could not be validated under U.S. Const. amend XIV, § 5 because Congress could not legislatively elevate bankruptcy to the constitutional status of a privilege or immunity.

**OUTCOME:** The court affirmed the district court's judgment as to the discharge claim and vacated the judgment as to the automatic stay claim. The court remanded with instructions for the district court to vacate the bankruptcy court's judgment entered in the automatic stay claim and to dismiss the claim.

**CORE TERMS:** immunity, abrogate, sovereign immunity, motion to dismiss, validly, state agencies, adversary proceeding, abrogation, abrogated, purported, asserting, enacting, bankruptcy proceedings, statutory right, bankruptcy law, valid exercise, state agency,

student loan, implicate, authorize, personam, remedial, invalid

## LexisNexis(R) Headnotes ◆ Hide Headnotes

Bankruptcy Law > Creditor Claims & Objections > Governmental Claims > Sovereign Immunity
Bankruptcy Law > Discharge
Bankruptcy Law > Practice & Proceedings > Adversary Proceedings
Bankruptcy Law > Practice & Proceedings > Jurisdiction
Civil Procedure > State & Federal Interrelationships > Amendment 11
HN1± Despite the fact that current bankruptcy rules require a debtor to file an "adversary
    proceeding" against and serve a state agency to discharge student loan debt, such
    a proceeding does not implicate the Eleventh Amendment. A court's jurisdiction
    over a discharge of debt in bankruptcy is derived from its jurisdiction over the
    debtor's property, and that exercise of such in rem jurisdiction does not infringe
    state sovereignty.  More Like This Headnote

Bankruptcy Law > Creditor Claims & Objections > Governmental Claims > Sovereign Immunity
Bankruptcy Law > Practice & Proceedings > Adversary Proceedings
Bankruptcy Law > Practice & Proceedings > Jurisdiction
HN2± Where a debtor's claim seeks affirmative relief from the state through a coercive
    judicial process, the bankruptcy court's jurisdiction over it is premised on the
    persona of the state, not on the res of the debtor's property.  More Like This Headnote

Bankruptcy Law > Creditor Claims & Objections > Governmental Claims > Sovereign Immunity
Bankruptcy Law > Practice & Proceedings > Adversary Proceedings
Civil Procedure > State & Federal Interrelationships > Amendment 11
Constitutional Law > State Autonomy
HN3± The United States Court of Appeals for the Eleventh Circuit has joined with five of
    the six circuits in holding that 11 U.S.C.S. § 106(a)'s purported abrogation of
    Eleventh Amendment immunity in bankruptcy proceedings, which is clear and
    specific, is nonetheless invalid.  More Like This Headnote

Bankruptcy Law > Automatic Stay
Bankruptcy Law > Creditor Claims & Objections > Governmental Claims > Sovereign Immunity
Civil Procedure > State & Federal Interrelationships > Amendment 11
Constitutional Law > State Autonomy
Governments > State & Territorial Governments > Claims By & Against
HN4± The federal courts, including the bankruptcy courts, have no authority to entertain
    a claim under 11 U.S.C.S. § 362 claim against state agencies absent that
    sovereign's consent.  More Like This Headnote

Civil Procedure > State & Federal Interrelationships > Amendment 11
Constitutional Law > State Autonomy
Governments > State & Territorial Governments > Claims By & Against
HN5± See U.S. Const. amend XI.

Civil Procedure > State & Federal Interrelationships > Amendment 11
Constitutional Law > State Autonomy
Governments > State & Territorial Governments > Claims By & Against
HN6± Under U.S. Const. amend XI, a state is immune from suit by private parties in
    federal court absent a valid abrogation of its immunity by Congress or an express
    waiver by the state.  More Like This Headnote

Civil Procedure > State & Federal Interrelationships > Amendment 11
Constitutional Law > State Autonomy
*HN7* Congress successfully abrogates a state's Eleventh Amendment immunity only where two requirements are met. Congress must unequivocally express an intent to abrogate state immunity, and its legislative action must be pursuant to a valid exercise of power. Congress' intent to abrogate the States' immunity from suit must be obvious from 'a clear legislative statement. More Like This Headnote

Constitutional Law > Congressional Duties & Powers > Bankruptcy Clause
*HN8* See U.S. Const. art. I, § 8, cl. 4.

Civil Procedure > State & Federal Interrelationships > Amendment 11
Constitutional Law > Congressional Duties & Powers > Bankruptcy Clause
Constitutional Law > State Autonomy
*HN9* Congress may not abrogate state sovereign immunity by legislation passed pursuant to its bankruptcy powers under U.S. Const. art. I, § 8, cl. 4. More Like This Headnote

Civil Procedure > State & Federal Interrelationships > Amendment 11
Constitutional Law > State Autonomy
Constitutional Law > The Judiciary > Congressional Limits
*HN10* The Eleventh Amendment restricts the judicial power under Article III, and Article I cannot be used to circumvent the constitutional limitations placed upon federal jurisdiction. More Like This Headnote

Constitutional Law > Substantive Due Process > Privileges & Immunities
Constitutional Law > Substantive Due Process > Scope of Protection
*HN11* See U.S. Const. amend. XIV, § 5.

Constitutional Law > Substantive Due Process > Privileges & Immunities
Constitutional Law > Substantive Due Process > Scope of Protection
*HN12* U.S. Const. amend. XIV, § 5 is a positive grant of legislative power authorizing Congress to exercise its discretion in determining whether and what legislation is needed to secure the guarantees of the Fourteenth Amendment. However, Congress may pass only "appropriate" legislation under § 5, and must exercise its power in a "remedial" manner. Any suggestion that Congress has a substantive, non-remedial power under the Fourteenth Amendment is not supported by Supreme Court case law. More Like This Headnote

Constitutional Law > Substantive Due Process > Privileges & Immunities
Constitutional Law > Substantive Due Process > Scope of Protection
Governments > Legislation > Interpretation
*HN13* Courts should not quickly attribute to Congress an unstated intent to act under its authority to enforce the Fourteenth Amendment. Although it need not recite the words "§ 5" or "Fourteenth Amendment" to enact laws pursuant to U.S. Const. amend. XIV, § 5, to invoke § 5, Congress must identify conduct transgressing the Fourteenth Amendment's substantive provisions, and must tailor its legislative scheme to remedying or preventing such conduct. More Like This Headnote

Constitutional Law > Substantive Due Process > Privileges & Immunities
Constitutional Law > Substantive Due Process > Scope of Protection

Search - 1 Result - (crow) and date is 12/2004

Governments > Legislation > Interpretation
*HN14* A federal court will not presume that Congress intended to enact a law under a general Fourteenth Amendment power to remedy an unspecified violation of rights when a specific, substantive Article I power clearly enabled the law. More Like This Headnote

Bankruptcy Law > Creditor Claims & Objections > Governmental Claims > Sovereign Immunity
Bankruptcy Law > Discharge
Constitutional Law > Substantive Due Process > Privileges & Immunities
*HN15* Even if Congress has purported to pass 11 U.S.C.S. § 106(a) pursuant to its power under U.S. Const. amend XIV, § 5, it can not validly do so because conferring a statutory right to bankruptcy does not enforce the Privileges & Immunities Clause of the Fourteenth Amendment. The United States Supreme Court has expressly held that there is no constitutional right to a bankruptcy discharge, and § 5 does not authorize Congress to create new constitutional rights, It follows that Congress can not legislatively elevate bankruptcy to the constitutional status of a privilege or immunity. In addition, bankruptcy bears no resemblance to any of the rights the Supreme Court has defined as privileges and immunities. More Like This Headnote

Bankruptcy Law > Creditor Claims & Objections > Governmental Claims > Sovereign Immunity
Civil Procedure > State & Federal Interrelationships > Amendment 11
Constitutional Law > State Autonomy
Constitutional Law > Substantive Due Process > Privileges & Immunities
*HN16* Because Congress may not abrogate state sovereign immunity pursuant to its powers under U.S. Const. art. I, its Bankruptcy Clause powers, and because 11 U.S.C.S. § 106(a) has not been validly enacted pursuant to its powers under U.S. Const. amend. XIV, § 5, Congress' attempt to take from states in personam bankruptcy cases the protection that the Eleventh Amendment provides them is invalid. More Like This Headnote

**COUNSEL:** For Georgia Higher Education Assistance Corp., Georgia Student Finance Commission, Appellants: Oscar B. Fears, III., Office of the State of Georgia Attorney General, Atlanta, GA

For Thomas A. **Crow**, Jennifer **Crow**, Appellees: Todd Boudreaux Shepard, Plunkett, Hamilton, Boudreaux & Tisdale, LLP, Evans, GA.

**JUDGES:** Before ANDERSON and WILSON, Circuit Judges, and JORDAN *, District Judge.

* Honorable Adalberto Jordan, United States District Judge for the Southern District of Florida, sitting by designation.

**OPINION:**

PER CURIAM:

This appeal requires us to apply the Supreme Court's recent decision in Tennessee Student Assistance Corporation v. Hood, 541 U.S. 440, 124 S. Ct. 1905, 158 L. Ed. 2d 764 (2004), to two claims brought by a debtor in bankruptcy against two agencies of the State of Georgia. Although Hood disposes of the first of those claims, it does not affect the second one. As to that claim we must decide whether Congress' attempt in 11 U.S.C. § 106(a) to abrogate states' Eleventh Amendment immunity is valid. For the reasons that follow, we believe that it

Search - 5 Result - (crow) and date is 12/2004
Case 1:04-cv-12448-GAO    Document 43-2    Filed 03/03/2005    Page 21 of 25
Page 5 of 9

is not.

Thomas and Jennifer **Crow** filed a petition for relief under Chapter 7 of the United States Bankruptcy Code. In the course of the proceeding, they filed a complaint in the bankruptcy court against the Georgia Higher Education **[*2]** Assistance Corporation and the Georgia Student Finance Commission, two state agencies. The complaint contained three counts. Count one sought a determination that Thomas **Crow's** outstanding student loan obligations to these two state agencies were dischargeable. Count two sought damages from the agencies for their attempts to collect from the **Crows** after receiving notice of the Chapter 7 filing. Count three sought damages from them for their alleged violation of the Fair Debt Collection Practices Act.

The defendant state agencies filed a motion to dismiss, asserting that the adversary proceeding was barred by their Eleventh Amendment immunity. The bankruptcy court granted the motion as to count three, but denied it as to the first two counts after concluding that in 11 U.S.C. § 106(a) Congress had validly abrogated state sovereign immunity as expressed in the Eleventh Amendment. The agencies appealed the bankruptcy court's denial of their motion to dismiss to the district court, which affirmed. The agencies then appealed to us, asserting the Eleventh Amendment as a bar to the adversary proceeding.

In the meantime, the Supreme Court issued its decision in **[*3]** Tennessee Student Assistance Corporation v. Hood, 541 U.S. 440, 124 S. Ct. 1905, 158 L. Ed. 2d 764 (2004). In that case Pamela Hood instituted a Chapter 7 proceeding during which she filed and served a complaint in the bankruptcy court against the Tennessee Student Assistance Corporation, a state agency. Id. at ___, 124 S. Ct. at 1908-09. Her complaint sought discharge of her student loans. Id. The agency filed a motion to dismiss asserting Eleventh Amendment immunity. Id. at ___, 124 S. Ct. at 1909. The motion was denied, and the denial was affirmed by the Sixth Circuit. 319 F.3d 755, 767-68 (6th Cir. 2003).

The Supreme Court affirmed, but it did so without reaching the issue of whether the Bankruptcy Clause of the Constitution authorizes Congress to abrogate the Eleventh Amendment immunity of states. Instead, the Supreme Court held that, *HN1*⊣despite the fact that current bankruptcy rules require a debtor to file an "adversary proceeding" against and serve a state agency to discharge student loan debt, such a proceeding does not implicate the Eleventh Amendment. Hood, 541 U.S. at ___, 124 S. Ct. at 1909-15. **[*4]** The Court reasoned that a court's jurisdiction over a discharge of debt in bankruptcy is derived from its jurisdiction over the debtor's property, and that exercise of such in rem jurisdiction does not infringe state sovereignty. Id. at ___, 124 S. Ct. at 1911-13.

Hood is all we need to know in order to resolve the issue involving the denial of the motion to dismiss count one in this case, the count that sought discharge of the debt. Under Hood, the Eleventh Amendment is not implicated, and we therefore affirm the denial of the motion to dismiss that count.

The denial of the motion to dismiss count two, however, raises issues that go beyond the Hood decision. Count two sought a declaration that the defendant state agencies had violated 11 U.S.C. § 362(a) by trying to collect on **Crow's** debts, and monetary damages pursuant to § 362(h) for that violation. *HN2*⊣Because count two seeks affirmative relief from the state through a coercive judicial process, the bankruptcy court's jurisdiction over it is premised on the persona of the state, not on the res of the debtor's property. See Hood, 541 U.S. at ___, 124 S. Ct. at 1912. **[*5]** Because jurisdiction is in personam, Eleventh Amendment concerns are not obviated by Hood. As a result, we must determine whether Congress' attempt in 11 U.S.C. § 106(a) to abrogate Eleventh Amendment immunity in proceedings brought pursuant to § 362 is constitutional.

For reasons we will explain, today *HN3*we join five of the six circuits that have considered the issue in holding that § 106(a)'s purported abrogation of Eleventh Amendment immunity in bankruptcy proceedings, which is clear and specific, is nonetheless invalid in light of the Supreme Court's decision in Seminole Tribe of Florida v. Florida, 517 U.S. 44, 116 S. Ct. 1114, 134 L. Ed. 2d 252 (1996). See Nelson v. La Crosse County Dist. Attorney, 301 F.3d 820, 832 (7th Cir. 2002); Mitchell v. Franchise Tax Bd., 209 F.3d 1111, 1121 (9th Cir. 2000); Sacred Heart Hosp. of Norristown v. Pennsylvania, 133 F.3d 237, 243 (3d Cir. 1998); Dep't of Transp. & Dev. v. PNL Asset Mgmt. Co., 123 F.3d 241, 243 (5th Cir. 1997), amended by 130 F.3d 1138, 1139 (5th Cir. 1997); Schlossberg v. Maryland, 119 F.3d 1140, 1145-47 (4th Cir. 1997). **[*6]** n1 But see Hood v. Tenn. Student Assistance Corp., 319 F.3d 755, 767-68 (6th Cir. 2003), affirmed on other grounds, 541 U.S. 440, 124 S. Ct. 1905, 158 L. Ed. 2d 764 (2004). It follows that *HN4*the federal courts, including the bankruptcy courts, have no authority to entertain a § 362 claim against two agencies of the State of Georgia absent that sovereign's consent, see Ford Motor Co. v. Dep't of Treasury, 323 U.S. 459, 464, 65 S. Ct. 347, 351, 89 L. Ed. 389 (1945), overruled on other grounds, 535 U.S. 613, 623, 122 S. Ct. 1640, 1646, 152 L. Ed. 2d 806 (2002), and it has not consented.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n1 Though many of those decisions decided this issue in the context of an adversary proceeding to discharge debt - which Hood has since informed us does not implicate the Eleventh Amendment - the reasoning is nonetheless persuasive on the overarching question of whether Congress may abrogate Eleventh Amendment immunity in bankruptcy proceedings.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

The Eleventh Amendment **[*7]** provides:

> *HN5*The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. Amend. XI. *HN6*Under this constitutional provision, a state is immune from suit by private parties in federal court absent a valid abrogation of its immunity by Congress or an express waiver by the state. See, e.g., College Savs. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd., 144 L. Ed. 2d 605, 527 U.S. 666, 669-70, 119 S. Ct. 2219, 2223 (1999). Georgia not having waived its rights, the sole issue is whether Congress validly abrogated state sovereign immunity in 11 U.S.C. § 106(a).

*HN7*Congress successfully abrogates a state's Eleventh Amendment immunity only where two requirements are met. Congress must unequivocally express an intent to abrogate state immunity, and its legislative action must be "pursuant to a valid exercise of power." Green v. Mansour, 474 U.S. 64, 68, 106 S. Ct. 423, 425-26, 88 L. Ed. 2d 371 (1985). "Congress' intent to abrogate **[*8]** the States' immunity from suit must be obvious from 'a clear legislative statement.'" Seminole Tribe, 517 U.S. at 55, 116 S. Ct. at 1123. That is no problem in this case. Congress clearly stated its intent to abrogate state sovereign immunity

in § 106(a), which provides in relevant part: "Notwithstanding an assertion of sovereign immunity, sovereign immunity is abrogated as to a governmental unit" with respect to claims brought pursuant to 11 U.S.C. § 362.

The issue, then, is whether Congress' enactment of § 106(a) was "pursuant to a valid exercise of power." The **Crows** contend that Congress had the power to abrogate state sovereign immunity in enacting § 106(a) pursuant to its Article I bankruptcy power, under which HN8"Congress shall have power . . . To establish . . . uniform laws on the subject of Bankruptcies throughout the United States . . . ." Art. I, § 8, cl. 4. However, in Seminole Tribe the Supreme Court held that HN9Congress may not abrogate state sovereign immunity by legislation passed pursuant to its Article I powers. 517 U.S. at 72-73, 116 S. Ct. at 1131-32.

The **Crows** read Seminole Tribe narrowly, and would **[*9]** restrict the reach of the decision to the Article I powers that were involved in Seminole Tribe itself, which are the ones flowing from the Indian and Interstate Commerce Clauses. Under the **Crows'** theory those powers are positively less potent for present purposes than Congress' Bankruptcy Clause power, because those other powers do not stem from a source that contains a uniformity requirement as the Bankruptcy Clause does. That theory, however, runs counter to the Supreme Court's sharp statement in Seminole Tribe that HN10"the Eleventh Amendment restricts the judicial power under Article III, and Article I cannot be used to circumvent the constitutional limitations placed upon federal jurisdiction." 517 U.S. at 72-73, 116 S. Ct. at 1131-32. The Court did not qualify its emphatic statement that Article I cannot be used to get around the Eleventh Amendment, and we decline to do so here, because the Supreme Court has reiterated in a number of cases since then that "Seminole Tribe makes clear that Congress may not abrogate state sovereign immunity pursuant to its Article I powers." Florida Prepaid, 527 U.S. at 666, 119 S. Ct. at 2225; see also **[*10]** Bd. of Trustees of Univ. of Ala. v. Garrett, 531 U.S. 356, 364, 121 S. Ct. 955, 962, 148 L. Ed. 2d 866 (2001) ("Congress may not, of course, base its abrogation of the States' Eleventh Amendment immunity upon the powers enumerated in Article I."); Kimel v. Fla. Bd. of Regents, 528 U.S. 62, 79, 120 S. Ct. 631, 643, 145 L. Ed. 2d 522 (2000) ("Under our firmly established precedent then, if the ADEA rests solely on Congress' Article I commerce power, the private petitioners in today's cases cannot maintain their suits against their state employers.").

Although Seminole Tribe has closed the Article I abrogation avenue, Congress may still abrogate Eleventh Amendment immunity pursuant to § 5 of the Fourteenth Amendment, which provides that HN11"Congress shall have the power to enforce, by appropriate legislation, the provisions of this article." 517 U.S. at 59, 116 S. Ct. at 1125. The **Crows'** final argument is that Congress enacted § 106(a) pursuant to § 5 of the Fourteenth Amendment, because bankruptcy is a privilege or immunity under § 1 of the Fourteenth Amendment, meaning Congress could use § 5 to enforce § 1 and in that manner abrogate **[*11]** state sovereign immunity. We disagree.

"Correctly viewed, HN12§ 5 is a positive grant of legislative power authorizing Congress to exercise its discretion in determining whether and what legislation is needed to secure the guarantees of the Fourteenth Amendment." Katzenbach v. Morgan, 384 U.S. 641, 651, 86 S. Ct. 1717, 1723-24, 16 L. Ed. 2d 828 (1966). However, Congress may pass only "appropriate" legislation under § 5, and must exercise its power in a "remedial" manner. Florida Prepaid, 527 U.S. at 667-68, 119 S. Ct. at 2226. "Any suggestion that Congress has a substantive, non-remedial power under the Fourteenth Amendment is not supported by [Supreme Court] case law." City of Boerne v. Flores, 521 U.S. 507, 527, 117 S. Ct. 2157, 2167, 138 L. Ed. 2d 624 (1997).

HN13Courts "should not quickly attribute to Congress an unstated intent to act under its authority to enforce the Fourteenth Amendment." Pennhurst State Sch. & Hosp. v.

Holderman, 451 U.S. 1, 16, 101 C. Ct. 1531, 1539, 67 L. Ed. 2d 694 (1981). Although it need not "recite the words 'section 5' or 'Fourteenth Amendment'" to enact laws pursuant to § 5, E.E.O.C. v. Wyoming, 460 U.S. 226, 243 n.18, 103 S. Ct. 1054, 1064 n.18, 75 L. Ed. 2d 18 (1983), [*12] "to invoke § 5, [Congress] must identify conduct transgressing the Fourteenth Amendment's substantive provisions, and must tailor its legislative scheme to remedying or preventing such conduct," Florida Prepaid, 527 U.S. at 669, 119 S. Ct. at 2227. In light of this standard, the Crows' § 5 argument fails on three separate grounds.

First, Congress gave no indication that it enacted § 106(a) pursuant to anything other than its Article I bankruptcy power. See Sacred Heart, 133 F.3d at 244; PNL Asset Mgmt., 123 F.3d at 245; Schlossberg, 119 F.3d at 1146. As the Third Circuit put it:

> The conclusion seems logically inescapable that in passing the 1994 Act Congress exercised the same specifically enumerated Article I bankruptcy power that it has traditionally relied on in enacting prior incarnations of the bankruptcy law dating back to 1800 - 68 years before the passage of the Fourteenth Amendment. HN14 ⟵We will not presume that Congress intended to enact a law under a general Fourteenth Amendment power to remedy an unspecified violation of rights when a specific, substantive Article I power clearly enabled the law. [*13]

Schlossberg, 119 F.3d at 1146 (internal citation omitted).

Second, HN15⟵even if Congress had purported to pass § 106(a) pursuant to its § 5 power, it could not validly do so because conferring a statutory right to bankruptcy does not enforce the Privileges & Immunities Clause of the Fourteenth Amendment. The Supreme Court has expressly held that there is no constitutional right to a bankruptcy discharge, United States v. Kras, 409 U.S. 434, 446-47, 93 S. Ct. 631, 638-39, 34 L. Ed. 2d 626 (1973), and § 5 does not authorize Congress to create new constitutional rights, Downing v. Bd. of Tr. of Univ. of Ala., 321 F.3d 1017, 1021 (11th Cir. 2003). It follows that Congress could not legislatively elevate bankruptcy to the constitutional status of a privilege or immunity. In addition, bankruptcy bears no resemblance to any of the rights the Supreme Court has defined as privileges and immunities, see Twining v. New Jersey, 211 U.S. 78, 97, 29 S. Ct. 14, 19, 53 L. Ed. 97 (1908) (enumerating the rights protected by the privileges and immunities clause), and in any event only one of those rights, the right to travel, [*14] has been used to strike down a law in the last 70 years. See Saenz v. Roe, 526 U.S. 489, 511, 119 S. Ct. 1518, 1530, 143 L. Ed. 2d 689 (1999) (Rehnquist, J., dissenting).

If bankruptcy, a statutorily-conferred, non-constitutional right, were deemed a privilege or immunity, any statutory right Congress created would be a privilege or immunity, and Congress could use any exercise of Article I power to abrogate state sovereign immunity by claiming to act under § 5 of the Fourteenth Amendment. This would fly in the face of Seminole Tribe. See Sacred Heart, 133 F.3d at 244-45 (rejecting contention that bankruptcy is a privilege or immunity); see also Schlossberg, 119 F.3d at 1146-47 ("If the Fourteenth Amendment is held to apply so broadly as to justify Congress' enactment of the Bankruptcy Code as a requirement of due process, then the same argument would justify every federal enforcement scheme as a requirement of due process under the Fourteenth Amendment."); Mitchell, 209 F.3d at 1119 (rejecting a theory that § 106(a) could have validly abrogated sovereign immunity under the Due Process Clause of the Fourteenth [*15] Amendment); PNL Asset Mgmt., 123 F.3d at 245 (to allow Congress to abrogate sovereign immunity by determining that § 106(a) was passed pursuant to § 5 would "render Eleventh Amendment

state sovereign immunity meaningless and eviscerate the fundamental construct of federalism in our constitutional form of government").

Finally, even if Congress had purported to act under § 5 of the Fourteenth Amendment, and even if Congress otherwise could have done so, in enacting § 106(a) of the Bankruptcy Code Congress did not identify any pattern of state conduct violating bankruptcy law or any provision of the Fourteenth Amendment, as required by the Supreme Court in Florida Prepaid, 527 U.S. at 670, 119 S. Ct. at 2227. See H.R. Rep. No. 95-595 (1977), reprinted in 1978 U.S.C.C.A.N. 5963; H.R. Rep. No. 103-835, at 42 (1994); see also Mitchell, 209 F.3d at 1119-20. It follows that the enactment of § 106(a) was not remedial in the requisite sense and was not an appropriate exercise of its § 5 powers. See Florida Prepaid, 527 U.S. at 667-68, 119 S. Ct. at 2226; see also City of Boerne, 521 U.S. at 519, 117 S. Ct. at 2163-64. **[*16]** As a result, § 106(a) did not validly abrogate the Eleventh Amendment.

$^{HN16}$Because Congress may not abrogate state sovereign immunity pursuant to its Article I Bankruptcy Clause powers, and because § 106(a) was not validly enacted pursuant to its powers under § 5 of the Fourteenth Amendment, Congress' attempt to take from states in in personam bankruptcy cases the protection that the Eleventh Amendment provides them is invalid. For that reason, the bankruptcy court and the district court should have granted the motion to dismiss filed by the state agencies as to count two in this case. See Ford, 323 U.S. at 464, 65 S. Ct. at 351.

The judgment of the district court as to count one is AFFIRMED. Its judgment as to count two is VACATED, and the case is REMANDED with instructions for the district court to vacate the judgment of the bankruptcy court as to count two, which is due to be dismissed.

Source:  Legal > Federal Legal - U.S. > Circuit Court Cases - By Circuit > **11th Circuit - US Court of Appeals Cases** 🛈
Terms:  **(crow) and date is 12/2004**  (Edit Search)
View:  Full
Date/Time:  Tuesday, January 18, 2005 - 10:32 AM EST

About LexisNexis | Terms and Conditions

Copyright © 2005 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.



ALAN LEBOVIDGE
COMMISSIONER

KEVIN W. BROWN
GENERAL COUNSEL

*The Commonwealth of Massachusetts*
*Department of Revenue*
*Legal Division —Litigation Bureau*
*P.O. Box 9565*
*100 Cambridge Street*
*Boston, Massachusetts 02114-9565*

March 3, 2005

Mr. Tony Anastas, Clerk
U.S. District Court
John Joseph Moakley Courthouse
1 Courthouse Way, Suite 2300
Boston, Massachusetts 02210

Re:    GMAC Mortgage Corporation v. Jeffrey L. Bayko, Sr., et al,
       U.S. District Court C.A. No. 04-12448-GAO

Dear Mr. Anastas:

Enclosed please find for filing in the above-referenced action, the attachments to be filed with the defendant, the Commonwealth of Massachusetts Commissioner of Revenue (the Commonwealth's") Reply to the United States Opposition to the Commonwealth's Motion to Dismiss Entire Case ("Reply"). The Reply was filed with the Court electronically on March 3, 2005. A Copy of the Notice of Electronic Filing for the Commonwealth's Reply, Document Number 43, is attached hereto. Copies of these attachments have been sent to all the parties of record.

Thank you for you assistance.

Sincerely,

/s/ Eileen Ryan McAuliffe
Eileen Ryan McAuliffe
Counsel to the Commissioner
(617) 626-3217

Enclosure

188315/ERM

13